**This order is SIGNED.**





**Dated: June 21, 2016**

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
        armington.jeff@dorsey.com
        thomson.michael@dorsey.com
*Attorneys for Debtor Perseon Corporation*
    *and Proposed Attorneys for Debtor in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

**ORDER(A) AUTHORIZING ASSUMPTION OF ASSET PURCHASE AGREEMENT, (B)
AUTHORIZING BID PROTECTIONS, (C) AUTHORIZING BIDDING PROCEDURES
AND AUCTION, AND (D) SCHEDULING SALE HEARING AND APPROVING
NOTICE THEREOF**

Upon consideration of the motion (the "Motion")[1] of Perseon Corporation ("Perseon" or "Debtor"), debtor and debtor in possession in the above-captioned case (the "Debtor"), for entry of an order (this "Bidding Procedures Order") (I)(A) authorizing entry into that certain Asset Purchase Agreement ("APA") with MedLink Technologies, LLC (the "Stalking Horse Bidder"); (B) authorizing the proposed Bid Protections (as defined below) for the Stalking Horse Bidder; (C) authorizing the bidding procedures (the "Bidding Procedures"), substantially in the form attached hereto as Exhibit 1, and setting the time, date and place of the auction ("Auction") in connection with the sale (the "Sale") of the Debtor's Purchased Assets free and clear of all claims (as defined in section 101(5) of the Bankruptcy Code), as more fully described and except to the extent identified in the APA or the asset purchase agreement of any other Successful Bidder (as defined in the Bidding Procedures), as applicable; (D) approving the form of notice of the Auction (the "Auction Notice"), substantially in the form attached hereto as Exhibit 2; (E) setting a hearing (the "Sale Hearing") for the Sale on July 26, 2016 at 11:00 a.m.; and (II) granting certain related relief; and it appearing that the relief requested is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. § 157; and proper and adequate notice of the Motion and opportunity for objection having been given, with no objections having been filed, or all objections having been resolved, withdrawn, and/or overruled, as the case may be; and it appearing that no other notice need be given; and after due deliberation and sufficient cause therefore;

---

[1] Each capitalized term used but not defined herein shall have the meaning ascribed to such term in the Motion or in the APA, as applicable.

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Notice of the Motion, including the proposed entry of the Bidding Procedures Order, the Bidding Procedures, and the hearing to consider entry of this Bidding Procedures Order (the "Bidding Procedures Hearing") has been provided as set forth in the Motion.  The Debtor's notice of the Motion, the proposed entry of the Bidding Procedures Order, the Bidding Procedures, and Bidding Procedures Hearing was appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004 and 6006, and no other or further notice of, or hearing on, the Motion or this Bidding Procedures Order is required.

C.      Entry into the APA with the Stalking Horse Bidder is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest and, based on the information set forth in the Motion and presented to this Court, is an appropriate exercise of the Debtor's business judgment. The APA will enable the Debtor to secure an adequate consideration floor for the Auction and will provide a clear benefit to the Debtor's estate and all other parties-in-interest.

D.      The form of the APA is hereby approved and is appropriate and reasonably calculated to enable the Debtor and other parties-in-interest to easily compare and contrast the differing terms of the bids presented at the Auction.

E.      The Debtor has demonstrated a compelling and sound business justification for authorizing the payment of the Bid Protections set forth in Section 6.02 of the APA to the

---

[2]      Pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact, as appropriate.

Stalking Horse Bidder, as follows:

      a.     the Bid Protections are the product of negotiations between the Debtor and the Stalking Horse Bidder conducted in good faith and at arm's length, and the APA (including the Bid Protections) is the culmination of a process undertaken by the Debtor and its professionals to negotiate a transaction with a bidder who was prepared to pay the highest or otherwise best purchase price to date for the Debtor's assets to maximize the value of the Debtor's estate;

      b.     the Bid Protections are an actual and necessary cost and expense of preserving the Debtor's estate; and

      c.     the Bid Protections are fair, reasonable and appropriate in light of, among other things, the size and nature of the sale of the Purchased Assets under the APA, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder has provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the Debtor will receive the best possible price for its assets.

      F.     The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate and are designed to maximize the value of the Debtor's estate.

      G.     The Debtor has demonstrated a compelling and sound business purpose for requiring the Stalking Horse to make a bid deposit and for granting the Stalking Horse a senior secured, super-priority lien in the collateral securing the bid deposit and has demonstrated a compelling and sound business purpose for using the Stalking Horse's bid deposit to fund the

Debtor's operations throughout the pendency of this case.

H.    The Auction Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary), the Sale Hearing, and any and all objection deadlines, and such Auction Notice having been provided as set forth in the Motion, no other or further notice is required.

I.    No finding or ruling is made in this Bidding Procedures Order as to the adequacy of any proposed transaction, it being intended that such approval will be sought at the Sale Hearing.

J.    The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate and creditors, and all other parties-in-interest in the Debtor's chapter 11 case.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    The Motion is **GRANTED** as set forth below.

2.    All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived or settled as announced at the Bidding Procedures Hearing, or resolved by stipulation signed by the Debtor and filed with this Court, are overruled on their merits.

3.    The Debtor is authorized to enter into the APA and all of its terms (including the Bid Protections set forth in Section 6.02 of the APA) are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed sale of the Purchased Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the APA.

4.      The Bidding Procedures, in the form annexed hereto as <u>Exhibit 1</u>, are hereby APPROVED, and fully incorporated into this Bidding Procedures Order, and shall apply with respect to the proposed sale of the Purchased Assets.  The Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

5.      The Stalking Horse Bidder is deemed to be a Qualified Bidder under the Bidding Procedures and shall be permitted to participate and bid at the Auction.

6.      The Auction Notice, substantially in the form attached hereto as <u>Exhibit 2</u>, is deemed good and sufficient notice of the Bidding Procedures, the Auction and the Sale Hearing, and the associated objection periods are reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction and Sale Hearing.

7.      The Debtor is authorized (i) to conduct the Auction with respect to all or some of the Purchased Assets. The Auction, if any, shall be conducted at the office of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685 (the "<u>Auction Site</u>") at 10:00 a.m. (prevailing Mountain time) on July 25, 2016 (the "<u>Auction Date</u>"), or at such other place and time or later date as determined by the Debtor.  The Debtor shall notify each bidder that has submitted a Competing Bid and expressed its intent to participate in the Auction as set forth in the Bidding Procedures. The Debtor is authorized, subject to the terms of this Bidding Procedures Order, to take all actions necessary, in the discretion of the Debtor to conduct and implement such Auction.

8.      The Debtor may (i) select, in its business judgment, pursuant to the Bidding Procedures, the highest and/or otherwise best offer(s) and the Successful Bidder(s), and (ii) reject any bid that, in the Debtor's business judgment, is (a) inadequate or insufficient, (b) not in

6

conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules or the Bidding Procedures, or (c) contrary to the best interests of the Debtor and its estate, creditors, interest holders or parties-in-interest.

9.      The failure to specifically include or reference any particular provision, section or article of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

10.     The Bid Protections set forth in the APA, including the (i) Break-Up Fee and (ii) the Initial Overbid Increment (collectively defined herein as the "Bid Protections"), are a reasonable inducement for the Stalking Horse Bidder's offer to purchase the Purchased Assets on the terms set forth in the APA and compensation for the risks and lost opportunity costs incurred by the Stalking Horse Bidder.

11.     Payment to the Stalking Horse Bidder of the Break-Up Fee (i) is an actual and necessary cost and expense of preserving the Debtor's estate within the meaning of section 503(b) of the Bankruptcy Code entitled to super-priority status, (ii) is of substantial benefit to the Debtor's estate, (iii) is reasonable and appropriate, including in light of the size and nature of the proposed sale of the Purchased Assets and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed sale of the Purchased Assets is subject to higher or better offers, (iv) was negotiated on an arm's-length basis and in good faith, and (v) is necessary to ensure that Stalking Horse Bidder will continue to be bound to the offer contained in the APA.

12.     The Bid Protections are hereby approved and, where applicable, shall be paid to the Stalking Horse Bidder as set forth in Section 6.02 of the APA.

13.    Pursuant to sections 105, 363, 364, 503, 506 and 507 of the Bankruptcy Code, the Debtor is hereby authorized to pay, without further order of this Court, the Break-Up Fee pursuant to the terms and conditions set forth in the APA and the Bidding Procedures.

14.    The Break-Up Fee shall be the sole remedy of the Stalking Horse Bidder if the APA is terminated under circumstances where the Bid Protections are payable. Anything to the contrary notwithstanding, the Debtor shall not modify or amend the Bidding Procedures where the effect would be to waive any requirement that is included in the Bid Protections.

15.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment.

16.    The Debtor is authorized and empowered to take such actions as may be necessary to implement and effect the terms and requirements established under this Bidding Procedures Order.

17.    A Sale Hearing to approve the sale of the Purchased Assets to any Successful Bidder(s) shall be held on **July 26, 2016 at 11:00 a.m.** (prevailing Mountain Time), unless otherwise continued upon request by the Debtor (after consultation with the Stalking Horse Bidder) or otherwise ordered by the Court. Objections, if any, to the Sale must be filed by **July 11, 2016 at 4:00 p.m.** (prevailing Mountain Time) (the "Sale Objection Deadline") and served on: (a) counsel to the Stalking Horse, Troutman Sanders, LLP, 5 Park Plaza, Suite 1400, Irvine, CA 92614, Attn: Penelope Parmes, email: penelope.parmes@troutmansanders.com (b) proposed counsel to the Debtor, Dorsey & Whitney LLP, 136 South Main St., Suite 1000, Salt Lake City, UT 84101, Attn: Steven T. Waterman; (c)  the Office of the United States Trustee for the District of Utah; and (d) counsel to any statutory committee established by the U.S. Trustee or the Court

by personal service, regular mail, electronic mail or facsimile, to be received no later than the Sale Objection Deadline.

18.    This Bidding Procedures Order shall be binding upon and inure to the benefit of the Stalking Horse Bidder, the Successful Bidder, and their respective affiliates, successors, and assigns, and the Debtor, including any trustee or other fiduciary appointed for the Debtor's estate, whether in this chapter 11 case or any subsequent bankruptcy case or upon dismissal of this chapter 11 case.

19.    The fourteen-day stay of effectiveness of this Order under Bankruptcy Rules 6004(h) and 6006(d) is hereby waived.  This Bidding Procedures Order shall be effective and enforceable immediately upon its entry on the docket in the Debtor's chapter 11 case.

20.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Break-Up Fee, the APA, the Bidding Procedures and the implementation of this Bidding Procedures Order.

---

(END OF ORDER)

# **EXHIBIT 1**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the sale (the "**Sale**") of the "**Assets**" as defined below of Perseon Corporation, on behalf of itself and as debtor in possession (the "**Debtor**") in connection with the chapter 11 case pending in the United States Bankruptcy Court for the District of Utah (the "**Bankruptcy Court**"), case number 16-24435.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE DEBTOR'S ADVISORS, AS FOLLOWS:**

**Dorsey & Whitney LLP**, Steven T. Waterman (waterman.steven@dorsey.com).

**A.     Asset Purchase Agreement and Sale**

In connection with the Sale, the Debtor and a MedLink Technologies, LLC (the "**Stalking Horse**") have entered into that certain Asset Purchase Agreement (the "**APA**"), pursuant to which the Stalking Horse will purchase the following Assets from the Debtor in exchange for an aggregate purchase price of $4,350,000.00 (the "**Purchase Price**"):[1]

(a)     all inventory, finished goods, raw materials, work in progress, Quality Systems and all associated records and documentation, packaging, supplies, parts and other inventories of the Business;

(b)     all Contracts set forth on Section 2.01(b) of the Disclosure Schedules (the "Executory Contracts"), and the Intellectual Property Agreements set forth on Section 2.01(b) of the Disclosure Schedules (collectively, the "Assigned Contracts");

(c)     all accounts or notes receivable of the Business;

(d)     Know-How of the Business in Seller's records and possession, and all Intellectual Property Assets, including but not limited to the Intellectual Property Assets listed on Section 2.01(d) of the Disclosure Schedules;

(e)     all approvals, permits, licenses and other authorities from the FDA related to the Business;

(f)     all furniture, fixtures, equipment, supplies and other tangible personal property of the Business listed on Section 2.01(f) of the Disclosure Schedules (the "Tangible Personal Property");

(g)     all Permits listed on Section 2.01(g) of the Disclosure Schedules;

---

[1]     All capitalized terms used herein and not defined shall have the meanings ascribed to them in the APA and the description of the Assets herein is qualified entirely by the terms of the APA.

(h)     all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i)     copies of all (i) books and records, including books of account, ledgers and general, financial and accounting records for the period beginning January 1, 2015 to the date hereof, other than books and records set forth in Section 2.02(c), and (ii) machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any Governmental Unit), sales material and records, strategic plans, internal financial statements and marketing and promotional surveys, material and research, that primarily relate to the Business or the Purchased Assets; and

(j)     all goodwill associated with any of the assets described in the foregoing clauses.

The ability to undertake and consummate the Sale pursuant to the APA shall be subject to competitive bidding as set forth herein and approval by the Bankruptcy Court.

**B.     The Bidding Procedures**

**1.     *Provisions Governing Qualifications of Bidders***

Unless otherwise ordered by the Bankruptcy Court, prior to **4:00 p.m. prevailing Mountain Time on July 11, 2016** (the "**Bid Deadline**"), each party that wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Debtor:

(a)     a written disclosure of the identity of each party, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets;

(b)     adequate assurance information, including (i) adequate information (in the Debtor's reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed transaction;

(c)     an executed confidentiality agreement in form and substance satisfactory to the Debtor, which will inure to the benefit of any purchaser of the Assets;

(d)     a $850,000.00 bid deposit; and

(e)     a letter summarizing the key terms of the Bidders bid, and the terms and conditions of the Qualified Bidder Agreement being submitted simultaneously therewith.

2

A Potential Bidder that the Debtor determines in its reasonable business judgment is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**."  The Debtor will provide access to due diligence only to those parties it believes, in the exercise of its reasonable business judgment, are pursuing a proposed transaction in good faith.

2.      *Due Diligence*

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor deems appropriate, in its reasonable discretion.

The due diligence period will extend through and include the date of the Auction (defined below); *provided*, *however*, that any Competing Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

3.      *Provisions Governing Competing Bids*

A bid will be considered a competing bid (a "**Competing Bid**") only if the bid is submitted by a Qualified Bidder and complies with all of the following:

(a)      satisfies all of the requirements provided for in Section 6.02 of the APA, including that such bid shall be no less than $100,000 higher than Buyer's initial bid plus the break-up fee of $217,500.00 more than the Purchase Price;

(b)      is accompanied by an asset purchase agreement identifying with specificity the Assets upon which such Bidder is submitting its bid and the liabilities and obligations to be assumed by the Bidder (as the case may be, the "**Qualified Bidder Agreement**"), including a copy of such Qualified Bidder Agreement marked to show all changes from the APA;

(c)      discloses any connection or agreements with the Debtor, the Stalking Horse, any other known Potential Bidder and/or any officer, director or equity security holder of the Debtor;

(d)      includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the date that is ten business days after the commencement of the Sale;

(e)      contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

3

(f)       includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Qualified Bidder Agreement;

(g)      includes a duly authorized and executed copy of a Qualified Bidder Agreement (including all exhibits and schedules thereto) and proposed Sale Order, together with copies marked to show any amendments and modifications to (a) the APA and (b) the Sale Order proposed by the Stalking Horse;

(h)      includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(i)       includes an acknowledgement and representation that the Qualified Bidder:  (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the Assets or the completeness of any information provided except as expressly stated in the APA or Qualified Bidder Agreement; (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid and (e) has (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid;

(j)       is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, in an amount equal to $850,000.00 (the "**Deposit**");

(k)      is accompanied by a letter (a) stating with specificity the Assets such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are substantially the same as or better than those of the Stalking Horse's bid pursuant to the terms of the APA (the "**Stalking Horse Bid**"), to the extent the bid is on the same terms and conditions as the Stalking Horse Bid, (c) stating that its offer is a *bona fide* offer that it intends to

consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(l)     contains such other information as is requested by the Debtor in its sole business judgment; and

(m)     is received prior to the Bid Deadline.

The Debtor will notify each Qualified Bidder after the Bid Deadline as to whether or not *any* bids constitute Competing Bids with respect to any Assets and whether *such* Qualified Bidder's bid constitutes a Competing Bid. The Debtor retains the right to waive or modify the terms of the Bidding Procedures when determining which bids may be deemed Competing Bids.

**4.     *Bid Deadline***

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the Debtor at the following address so as to be actually received not later than the Bid Deadline of **4:00 p.m. prevailing Mountain Time on July 21, 2016**:

**Dorsey & Whitney LLP**
136 South Main Street
Suite 1000
Salt Lake City, UT 84101-1655
Attn: Steven T. Waterman, Esq.
Email: waterman.steven@dorsey.com
*Proposed Attorneys for Debtor Perseon*
*Corporation*

The Bid Deadline may be extended by the Debtor.

**5.     *Evaluation of Competing Bids***

A Competing Bid will be valued based upon several factors including, without limitation: (a) the amount of such bid; (b) the Assets included in such bid, (c) the risks and timing associated with consummating such bid; (d) any proposed revisions to the APA and/or the Sale Order; and (e) any other factors deemed relevant by the Debtor in its reasonable business judgment.

**6.     *No Auction if No Competing Bids***

If the Debtor receives no Competing Bid, the Debtor will not hold the Auction and instead shall request at the Sale Hearing (defined below) that the Bankruptcy Court approve the APA.

7.      *Auction Process*

If the Debtor receives at least one Competing Bid for the Assets, the Debtor will conduct an auction at **10:00 a.m. prevailing Mountain Time on July 25, 2016** (the "**Auction**") at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685, or such other location as will be timely communicated to all Qualified Bidders. The Auction will be conducted in accordance with the following procedures:

(a)      Only the Debtor and any Qualified Bidder that submitted a Competing Bid, and the respective advisors to each of the foregoing, will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b)      Each Qualified Bidder will be required to confirm in writing that it has not engaged in any collusion with respect to the bidding at the Auction.

(c)      As soon as practicable prior to the Auction, each Qualified Bidder that timely submitted a Competing Bid must inform the Debtor whether it intends to attend the Auction; *provided that* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Competing Bid nevertheless will remain fully enforceable until the selection of the Successful Bidder and the Back-Up Bidder.

(d)      As soon as practicable prior to the Auction, the Debtor, in its reasonable discretion, will determine which Competing Bid is the highest and/or otherwise best Competing Bid for the Assets (the "**Highest and/or Best Bid**"), and will provide copies of the Highest and/or Best Bid to the other Qualified Bidders.

(e)      To the extent that there is at least one Competing Bid for the Assets, the bidding at the Auction will continue in increments of at least $100,000 over the Highest and/or Best Bid (each successive bid, an "**Overbid**"); *provided*, *however*, that the Debtor may consider other economic factors when determining whether a Competing Bid for the Assets is a higher and/or better Competing Bid.  An Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts an alternate Competing Bid as the Highest and/or Best Bid.  During the course of the Auction, the Debtor shall, after submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects, in the Debtor's view, the Highest and/or Best Bid.

(f)      When bidding on individual Asset Classes concludes, the Debtor shall determine the Highest and/or Best Bid (the "**Winning Bid**").

(g)      The Debtor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the

Bankruptcy Court entered in this case and (b) disclosed to each Qualified Bidder at or prior to the Auction.

(h)    Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by each Overbid, the Debtor will give effect to any additional costs to be assumed by a Qualified Bidder and any additional costs or risks which may be imposed on the Debtor by any such Overbid.

Each Qualified Bidder and the Stalking Horse shall be deemed to have (i) consented and submitted to the core jurisdiction of the Bankruptcy Court, (ii) waived and released any and all disputes or objections relating to the marketing or solicitation process, the Auction and the construction and enforcement of such party's contemplated transaction documents, and (iii) consented to the jurisdiction of the Bankruptcy Court in all respects in connection with such matters included in clause (ii) and its bid.

## 8.    *Selection of Successful Bid*

Prior to the conclusion of the Auction, the Debtor will review and evaluate each Competing Bid in accordance with these Bidding Procedures and determine in its reasonable business judgment which offer is the highest and/or otherwise best offer from among the Competing Bids (a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid. The determination of the Successful Bid by the Debtor at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

As soon as practicable after the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bids and (b) the Debtor will file a notice with the Bankruptcy Court identifying the Successful Bidder and the Successful Bids, which will include copies of the APA or applicable Qualified Bidder Agreement and proposed Sale Order, in each case in the forms agreed to between the Debtor and the Successful Bidder, and marked to show all amendments and modifications, if any, made to the APA submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and the Sale Order.

The Debtor will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid as set forth in the Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing. The presentation of a particular Competing Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtor's acceptance of the Competing Bid. The Debtor will be deemed to have accepted a Competing Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court pursuant to entry of the Sale Order.

## 9.    *Return of Deposits*

All Deposits will be returned to each Qualified Bidder not selected by the Debtor as the Successful Bidder no later than ten business days after the commencement of the Sale.

### 10.    *Forfeit of Deposits*

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtor's estate without any further order of the Bankruptcy Court. The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtor and its estate may have against such Successful Bidder, including, but not limited to, the terms of any Successful Bidder Agreement and any orders entered by the Bankruptcy Court in connection therewith.

### 11.    *Back-Up Bidder*

If an Auction is conducted, the Qualified Bidder with the second highest and/or otherwise best Competing Bid at the Auction for the Assets, as determined by the Debtor in the exercise of its business judgment, will be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is ten business days after the commencement of the Sale. Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the Assets, and the Debtor will be authorized, but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court.

## C.    The Sale Hearing

The Debtor will seek entry of an order (the "**Sale Order**") from the Bankruptcy Court approving the Sale at a hearing (the "**Sale Hearing**") on July 26, 2016 to request that the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of the APA or Qualified Bidder Agreement, as applicable.

8

# **EXHIBIT 2**

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: waterman.steven@dorsey.com
       armington.jeff@dorsey.com
       thomson.michael@dorsey.com

*Attorneys for Debtor Perseon Corporation
and Proposed Attorneys for Debtor in Possession*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## AUCTION NOTICE

## AND

## NOTICE OF SALE HEARING

**Auction Date: July 25, 2016 at 10:00 a.m. (Mountain Time)**
**Sale Hearing Date: July 26, 2016 at 11:00 a.m. (Mountain Time)**

---

**PLEASE TAKE NOTICE** that on _____, 2016, the Court entered its *Order (A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof* (the "Order"), which approved the *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6007: (I)(A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B)*

1

*Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* (the "<u>Motion</u>")[1] filed by Perseon Corporation, on behalf of itself and as debtor in possession in the above-captioned case (the "<u>Debtor</u>").

**PLEASE TAKE FURTHER NOTICE THAT YOUR RIGHTS MAY BE AFFECTED. You should read this Notice, as well as the Motion, and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

**PLEASE TAKE FURTHER NOTICE** that the Order approved, among other things, the Bidding Procedures attached to the Order as <u>Exhibit 1</u>, which governs selection of a Successful Bidder for the Assets through the Auction.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Asset Purchase Agreement, by and between the Debtor and MedLink Technologies, LLC (the "<u>Stalking Horse</u>") is attached to the Motion as <u>Exhibit A</u> (the "<u>APA</u>").

**PLEASE TAKE FURTHER NOTICE** that the Motion seeks Court approval to sell the "Purchased Assets" to MedLink Technologies, LLC for a total "Purchase Price" of $4,350,000.00 subject to overbid at Auction.

**PLEASE TAKE FURTHER NOTICE** that any bidder that desires to make a bid in the Auction must deliver written copies of its bid to the Notice Parties (as defined below) so as to be received by Notice Parties not later than **4:00 p.m. prevailing Mountain Time on July 21, 2016** (the "<u>Bid Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that the Auction will be held at **10:00 a.m. prevailing Mountain Time on July 25, 2016** at the offices of Dorsey & Whitney LLP, 136 South Main Street, Suite 1000, Salt Lake City, UT 84101-1685.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider, among other things, the APA or a sale agreement for the purchase of the Assets with the party submitting the highest and/or otherwise best bid at the Auction, as determined by the Debtor (a "<u>Successful Bidder</u>") will be held at **11:00 a.m. prevailing Mountain Time on July 26, 2016** before The Honorable R. Kimball Mosier, United States Bankruptcy Judge, in his courtroom, Room 369, 350 South Main Street, Salt Lake City, UT 84101, or as soon thereafter as the Debtor may be heard (the "<u>Sale Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "<u>Notice Parties</u>": (a) counsel to the any statutory committee in this Chapter 11 Case at [_____] Attn: [_____], email: [_____]; (b) counsel to the Debtor, Dorsey & Whitney LLP, 136 South Main St. Suite 1000, Salt Lake City, Utah 84101 Attn: Steven T. Waterman, email:  waterman.steven@dorsey.com; and (c) the Office of the

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Bidding Procedures as applicable.

United States Trustee for the District of Utah, 405 South Main St. #300, Salt Lake City, UT 84111 (collectively, the "Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that if you do not want the Court to grant the relief requested in the Motion, or if you want the Court to consider your views on the Motion, then you or your attorney must do each of the following:

(1)     On or before **4:00 p.m. prevailing Mountain Time on July 11, 2016** (the "Objection Deadline"), file a written objection specifically delineating the nature of your objection at:

> Clerk of the Court
> United States Bankruptcy Court
> 350 South Main Street, Room 301
> Salt Lake City, UT 84101

If you mail your objection to the Court for filing, you must mail it early enough so that the Court will receive it on or before the Objection Deadline specified above. You must also serve a copy on the Notice Parties at the addresses specified above.

(2)     Attend the Sale Hearing on the Motion at **11:00 a.m. prevailing Mountain Time on July 26, 2016** before the Honorable R. Kimball Mosier, in his courtroom, Room 369, of the Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101. Failure to attend the hearing will be deemed a waiver of your objection.

**PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE ORDER AND BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED SALE TRANSACTION.**

**PLEASE TAKE FURTHER NOTICE** that this Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtor encourages parties-in-interest to review such documents in their entirety. The Motion, Order, Bidding Procedures and any other pleadings may be found for a fee at the Court's website (http://www.utb.uscourts.gov/) for registered users of the Public Access to Court Electronic Records (PACER) System.

DATED this __th day of ____, 2016.

**DORSEY & WHITNEY LLP**

/s/ _____
Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor Perseon Corporation*
*and Proposed Attorneys for Debtor in Possession*