Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor Perseon Corporation*
*and Proposed Attorneys for Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Judge R. Kimball Mosier |

## DEBTOR'S MOTION FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 503(c)(3), APPROVING DEBTOR'S KEY EMPLOYEE RETENTION PLAN FOR DOUG WILKES

Pursuant to 11 U.S.C. §§ 363(b) and 503(c)(3) (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Rules"), and the Local Rules of this Court, Perseon Corporation ("Perseon" or "Debtor"), the debtor in possession in the above captioned bankruptcy case, by and through its proposed counsel, submits this motion (the "Motion") for entry of an Order approving the Debtor's key employee retention plan (the "KERP") for Doug Wilkes, the Debtor's Director of Operations.  A copy of the Debtor's proposed KERP agreement

with Mr. Wilkes is attached hereto as **Exhibit A**.  In support of this Motion, the Debtor submits

the *Declaration of David Green* (the "Green Declaration").  In further support of the Motion, the

Debtor states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code sections

105(a), 363, and 503(c)(3), as well as Bankruptcy Rule 6004.

## BACKGROUND

### *Prepetition Background*

3.      Beginning in roughly 2013, Perseon began searching for either a strategic partner

or an acquirer of its assets.

4.      On April 1, 2015, Perseon sold the assets associated with its hyperthermia cancer

treatment systems to Pyrexar Medical, Inc. ("Pyrexar") in exchange for 19.9% of the Series A

Preferred Shares of Pyrexar and a percentage of revenues that Pyrexar would receive from sales

of the hyperthermia cancer treatment systems.

5.      In July and August of 2015, Perseon completed an offering of common stock and

warrants which netted approximately $4.3 million in proceeds to the company.

6.      On October 26, 2015, Perseon and Galil Medical, Inc. ("Galil") entered into an

agreement and plan of merger (the "Merger Agreement") pursuant to which Perseon agreed to

merge with and into a wholly owned subsidiary of Galil through a tender offer and merger (the "Merger").

7.    On December 22, 2015, Galil terminated the Merger Agreement.

8.    On December 23, 2015, Perseon terminated a substantial number of employees in order to materially reduce expenses.

9.    After Galil terminated the Merger Agreement, Perseon renewed its efforts to find either a strategic partner or a purchaser for its assets.

10.    With Perseon's financial condition deteriorating rapidly, in an effort to raise cash, on February 22, 2016, Perseon sold the shares it obtained from Pyrexar back to Pyrexar for a $1,000,000 purchase price.

11.    Prior to the Petition Date, Perseon attempted to obtain additional financing outside of bankruptcy, but was unable to do so.

*General Case Background*

12.    On May 23, 2016 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court") thereby commencing the above-captioned "Chapter 11 Case."

13.    No trustee, examiner, or official committee of unsecured creditors has been appointed in this case.  The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

14.    A detailed discussion of the Debtor's history, description of its business and the events that led to its need for bankruptcy relief are set forth in the *Declaration of Clinton E.*

*Carnell Jr. in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration") which has been filed with the Court.[1]

15.     On May 24, 2016, the Debtor filed *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6007: (I)(A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* [Docket No. 24] (the "Sale Motion").   The Sale Motion seeks Court approval of a sale of substantially all of the Debtor's assets through an asset purchase agreement (the "APA") to MedLink Technologies, LLC ("MedLink" or "Stalking Horse") for a total purchase price of $4,350,000.00, subject to higher and better offers at auction.

### *Mr. Wilkes Role with the Debtor*

16.     Mr. Wilkes is the Debtor's Director of Operations.   During the post-petition period, Mr. Wilkes has worked diligently with MedLink to facilitate the transaction contemplated under the APA.   Further, as the Debtor's Director of Operations, Mr. Wilkes has worked with Perseon's vendors and customers to execute all product shipping and receiving. Mr. Wilkes also spearheads Perseon's compliance with FDA requirements and maintains Perseon's stringent quality controls, and manages Perseon's employees and independent contractors.[2]   In addition, Mr. Wilkes has been coordinating the Debtor's efforts to get Perseon's

---

[1]     Docket No. 13.

[2]     *Green Declaration* at ¶ 3.

CE mark reinstated in Europe to allow the Debtor or the acquirer of the Debtor's assets to continue to sell Perseon products in the European marketplace.[3]

17.    Mr. Wilkes has received numerous other employment offers, but the Debtor is determined to retain Mr. Wilkes until the sale of the Debtor's assets is consummated or until his services are no longer required.   The Debtor believes that Mr. Wilkes' services would be irreplaceable at this juncture and would jeopardize the Debtor's ability to consummate the sale of its assets.   Accordingly, the Debtor seeks authority to implement an incentive plan to retain Mr. Wilkes.[4]

### *The Proposed KERP*

18.    After arms-length negotiation between the Debtor and Mr. Wilkes, the Debtor seeks authority to provide Mr. Wilkes with the KERP:

    a.    Increasing Mr. Wilkes' compensation by $1,000 per month to $7,500 per pay period beginning with the May 15, 2016 pay period for a minimum of six pay periods; and

    b.    Paying Mr. Wilkes a $15,000 bonus, payable only if Mr. Wilkes remains employed with the Debtor until his services are no longer required.[5]

19.    Mr. Wilkes was not appointed by Perseon's board as an officer or director and Mr. Wilkes does not report directly to the board.   Instead he reports to David Green, a consultant retained by the Debtor.[6]

---

[3]    *Id.* at ¶ 4.

[4]    *Id.* at ¶ 5.

[5]    *Id.* at ¶ 6.

20.    The amount of compensation contemplated in the KERP was determined by Mr.

Green and is based on his business judgment and Mr. Wilkes' level of compensation.[7]

## RELIEF REQUESTED

21.    The Debtor requests entry of an Order granting the Motion and pursuant to

Sections 363(b) and 503(c)(3) of the Bankruptcy Code and Rule 6004 authorizing the Debtor to

implement the KERP and make payments thereunder on the terms described above.

## BASIS FOR RELIEF REQUESTED

22.    Section 101(31)(B) defines "insider" for the purposes of a corporation and states:

(31) The term "insider" includes—

. . .

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director, officer, or person in control of the debtor . . . .[8]

23.    Despite his title as "Director of Operations," Mr. Wilkes is not a director, or

control person, and was not appointed as an officer of the Debtor, nor is he related to any

director, officer, or control person.[9]  Accordingly, Mr. Wilkes is not an "insider" of the Debtor.

---

[6]    *Id.* at ¶ 7.

[7]    *Id.* at ¶ 8.

[8]    11 U.S.C. § 101(31)(B).

[9]    *Green Declaration* at ¶ 9.

24.     Section 503(c)(1) and (2) place restrictions on transfers or severance payments to

a debtor's insiders, and are not applicable to the proposed KERP payments to Mr. Wilkes.

25.     Section 503(c)(3) governs payments to non-insider employees out of the ordinary

course of business and states:

> (c) Notwithstanding subsection (b), there shall neither be allowed,
> nor paid—
>
> . . .
>
> (3) other transfers or obligations that are outside the ordinary course
> of business and not justified by the facts and circumstances of the
> case, including transfers made to, or obligations incurred for the
> benefit of, officers, managers, or consultants hired after the date of
> the filing of the petition.[10]

26.     Courts have found that the language "justified by the facts and circumstances of

the case" is akin to the business judgment standard applied under Section 363(b).[11]

27.     The Court in *In re Dana Corp. (Dana II)*, identified several factors to assess in

determining whether a compensation proposal is an exercise of the debtor's sound business

judgment, which have been widely adopted by other courts.[12]   Those factors include the

following:

---

[10]     11 U.S.C. § 503(c)(3).

[11]     *See e.g.*, *In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ; *In re Borders Group, Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) ; *In re Dana Corp. (Dana II)*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006).

[12]     *See e.g.*, *In re Patriot Coal Corp.*, 492 B.R. 518 (Bankr. E.D. Mo. 2013) (approving both an insider incentive plan and a non-insider retention plan under section 503(c)(3)); *In re Residential Capital, LLC (ResCap II)*, 491 B.R. 73 (Bankr. S.D.N.Y. 2013) (applying *Dana II* factors in approving both a non-insider KERP and an incentive plan for insiders); *In re Global Aviation Holdings, Inc.*, 478 B.R. 142 (Bankr. E.D.N.Y. 2012) (approving non-insider KERP); *In re Velo Holdings, Inc.*, 472 B.R. 201 (Bankr. S.D.N.Y. 2012) (applying *Dana II* factors and concluding that debtors exercised sound judgment in their KERP plan); *In re Borders Group, Inc.*, 453 B.R. 459, 474-77 (Bankr. S.D.N.Y. 2011) (applying the *Dana II* factors in approving a key employee incentive plan under section 503(c)(3)).

a.   Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, *is the plan calculated to achieve  the desired performance?* (emphasis added)

b.   Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

c.   Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

d.   Is the plan or proposal consistent with industry standards?

e.   What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

f.   Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?[13]

28.   Here, the KERP meets all of these factors.  First, under the KERP, the Debtor will only pay Mr. Wilkes' retention bonus if he stays until his services are no longer required by the Debtor.[14]  Second, the modest amount paid to Mr. Wilkes, $1,000 in additional salary per month and $15,000 as a bonus if Mr. Wilkes stays until his services are no longer required, is reasonable in light of the fact that if Mr. Wilkes leaves before his services are no longer needed, the Debtor will have to rely on estate professionals to complete the necessary work at a far

---

[13]   *Dana II*, 358 B.R. at 576-77 (internal citations omitted).

[14]   *Green Declaration* at ¶ 10.

greater expense to the Debtor's estate.[15]   Third, although the proposed KERP applies solely to Mr. Wilkes, the Debtor has determined that he is the only full time employee whose retention is necessary to complete the sale transaction.[16]   Fourth, the KERP is consistent with industry standards.[17]   Fifth, the Debtor's independent consultant, David Green investigated the need for a plan and determined that Mr. Wilkes is essential to maintaining operations and ensuring that the Debtor's sale of assets is successful.[18]   Finally, the Debtor's independent consultant, David Green, created the incentive compensation.[19]

29.    Accordingly, the Debtor submits that the KERP is in the best interests of the Debtor's estate and the Debtor's creditor constituents.

---

[15]    *Id.* at ¶ 11.

[16]    *Id.* at ¶ 12.

[17]    *Id.* at ¶ 13.

[18]    *Id.* at ¶ 14.

[19]    *Id.* at ¶ 15.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of an Order approving the

KERP and authorizing the Debtor to make any payments thereunder.

DATED this 22nd day of June, 2016.

**DORSEY & WHITNEY LLP**

*/s/ Steven T. Waterman*
Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington

*Proposed Attorneys for Debtor Perseon
Corporation*

# **EXHIBIT A**

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: waterman.steven@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor Perseon Corporation
    and Proposed Attorneys for Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| PERSEON CORPORATION., | Chapter 11 |
| Debtor. | The Honorable R. Kimball Mosier |

## DECLARATION OF DAVID GREEN IN SUPPORT OF DEBTOR'S MOTION FOR ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 503(c)(3), APPROVING DEBTOR'S KEY EMPLOYEE RETENTION PLAN FOR DOUG WILKES

I, David Green, hereby declare as follows:

1.      I am over the age of 18 and am mentally competent.  I make this Declaration (the

"Declaration") in support of the *Debtor's Motion for Order, Pursuant to Bankruptcy Code*

*Sections 363(b) and 503(c)(3), Approving Debtor's Key Employee Retention Plan for Doug Wilkes* (the "Motion").[1]

2.     I have personal knowledge of the facts stated in this Declaration.  If called as a witness, I could and would testify competently to these facts, except where matters are stated on information and belief.  As to those facts, I am informed and believe that they are true and correct.

3.     Mr. Wilkes is the Debtor's Director of Operations.  During the post-petition period, Mr. Wilkes has worked diligently with MedLink to facilitate the transaction contemplated under the APA.  Further, as the Debtor's Director of Operations, Mr. Wilkes has worked with Perseon's vendors and customers to execute all product shipping and receiving. Mr. Wilkes also spearheads Perseon's compliance with FDA requirements and maintains Perseon's stringent quality controls, and manages Perseon's employees and independent contractors.

4.     In addition, Mr. Wilkes has been coordinating the Debtor's efforts to get Perseon's CE mark reinstated in Europe to allow the Debtor or the acquirer of the Debtor's assets to continue to sell Perseon products in the European marketplace.

5.     Mr. Wilkes has received numerous other employment offers, but the Debtor is determined to retain Mr. Wilkes until the sale of the Debtor's assets is consummated or until his services are no longer required.  I believe that Mr. Wilkes' services would be irreplaceable at this juncture and would jeopardize the Debtor's ability to consummate the sale of its assets. Accordingly, the Debtor seeks authority to implement an incentive plan to retain Mr. Wilkes.

---

[1]     Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

6.      After arms-length negotiation between the Debtor and Mr. Wilkes, the Debtor seeks authority to provide Mr. Wilkes with the KERP:

     a.   Increasing Mr. Wilkes' compensation by $1,000 per month to $7,500 per pay period beginning with the May 15, 2016 pay period for a minimum of six pay periods; and

     b.   Paying Mr. Wilkes a $15,000 bonus, payable only if Mr. Wilkes remains employed with the Debtor until his services are no longer required.

7.      Mr. Wilkes was not appointed by Perseon's board as an officer or director and Mr. Wilkes does not report directly to the board.  Instead he reports to me.

8.      The amount of compensation contemplated in the KERP was determined by me and is based on his business judgment and Mr. Wilkes' level of compensation.

9.      Despite his title as "Director of Operations," Mr. Wilkes is not a director, or control person, and was not appointed as an officer of the Debtor, nor is he related to any director, officer, or control person.

10.     Under the KERP, the Debtor will only pay Mr. Wilkes' retention bonus if he stays until his services are no longer required by the Debtor.

11.     The modest amount paid to Mr. Wilkes, $1,000 in additional salary per month and $15,000 as a bonus if Mr. Wilkes stays until his services are no longer required, is reasonable in light of the fact that if Mr. Wilkes leaves before his services are no longer needed, the Debtor will have to rely on estate professionals to complete the necessary work at a far greater expense to the Debtor's estate.

3

12.     Although the proposed KERP applies solely to Mr. Wilkes, I have determined that he is the only full time employee whose retention is necessary to complete the sale transaction.

13.     I believe that the KERP is consistent with industry standards.

14.     I investigated the need for a plan and determined that Mr. Wilkes is essential to maintaining operations and ensuring that the Debtor's sale of assets is successful.

15.     Finally, I created the incentive compensation scheme.

16.     Accordingly, I believe that the KERP is in the best interests of the Debtor's estate and the Debtor's creditor constituents.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

_____

David Green