Michael R. Johnson, Esq. (A7070)
David H. Leigh, Esq. (A9433*)*
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84101
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  dleigh@rqn.com

　　　—and—

Jeffrey Chubak (*Pro Hac Vice to be Filed*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone:  (212) 490-4100
Email:  jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | **Case No. 16-24435 (RKM)** |
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Honorable R. Kimball Mosier |

---

### B.E. CAPITAL MANAGEMENT FUND LP'S
### OBJECTION TO DEBTOR'S APPLICATIONS TO EMPLOY
### DORSEY & WHITNEY AND SUNTRUST ROBINSON HUMPHREY
### PURSUANT TO BANKRUPTCY CODE SECTION 327(a)

---

　　　　B.E. Capital Management Fund LP ("B.E. Capital"), a creditor and equity security holder in this case, through counsel, respectfully objects to the applications of Perseon Corporation, as debtor and debtor in possession ("Debtor"), for orders authorizing the employment of Dorsey &

Whitney LLP ("Dorsey") and SunTrust Robinson Humphrey ("SunTrust") as attorneys and investment bankers for the Debtor. [ECF Nos. 14, 15 and 57] In support hereof, B.E. Capital respectively states as follows:[1]

## PRELIMINARY STATEMENT

1. The applications seek authorization to employ Dorsey and SunTrust pursuant to section 327(a) of the Bankruptcy Code, which requires that an estate professional both "not hold or represent or interest adverse to the estate" and be a "disinterested person." Neither professional satisfies the foregoing criteria. Both Dorsey and SunTrust have significant preference exposure which must be resolved before their employment applications can be approved. Moreover, SunTrust holds a contingent prepetition claim against the Debtor which precludes its employment.

## OBJECTION

**I.     SECTION 327(a).**

2. Section 327(a) provides:

> [T]he trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

3. Bankruptcy Code section 101(14) defines the term "disinterested person" as someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, or

---

[1] B.E. Capital's undersigned counsel recognizes the objection deadline with respect to Dorsey's application was June 24, 2016. However, as counsel was only engaged this week, no statutory committee has been appointed in this case, and the U.S. Trustee has not challenged the employment applications which are the subject hereof, B.E. Capital respectfully requests the opportunity to be heard.

in connection with, or interest in, the debtor, or for any other reason." *See also Rushton v. Woodbury & Kesler, P.C.* (*In re C.W. Mining Co.*), 440 B.R. 878, 888 (Bankr. D. Utah 2010) (the "term disinterested is broad enough to exclude an attorney with some interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules").

4. Likewise, the term "hold or represent an interest adverse to the estate," although not defined in the Bankruptcy Code, has been interpreted to mean:

> (1) to possess or assert any economic interest that would tend to lessen the value to the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under the circumstances that render such a bias against the estate.

*See Winship v. Cook (In re Cook)*, 223 B.R. 782, 789 (B.A.P. 10th Cir. 1998) (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987)).

5. The burden of establishing a proposed estate professional satisfies section 327(a)'s criteria rests with the applicant. *Interwest Business Equip., Inc. v. U.S. Trustee (In re Interwest Business Equip.)*, 23 F.3d 311, 318 (10th Cir. 1994).

## II. DORSEY AND SUNTRUST DO NOT SATISFY THE REQUIREMENTS OF SECTION 327(a).

### A. Dorsey Has Significant Preference Exposure.

6. The Debtor represented that on May 19, 2016, just four days before the petition date, it paid Dorsey $149,857, which amount "includes a $25,000 retainer." No indication has been provided concerning how the $124,857 balance was applied. Dorsey has <u>not</u> represented it waived prepetition legal fees owed by the Debtor. Given that the Debtor paid nearly $1 million in attorneys' fees and expenses to Dorsey during the year preceding the commencement of this

3

case, one can only assume the $124,857 balance was applied to outstanding invoices. [Dorsey Application at ¶14; Declaration of Steven Waterman at ¶9]

7. Moreover, Dorsey disclosed it was paid $766,199 during the year preceding the petition date on account of corporate services rendered, but has not identified the dates of specific payments. [*Id.*]

8. If any portion of the above-referenced $149,857 transfer was applied to outstanding invoices, or if any portion of the above-referenced $766,199 was paid during the non-insider preference period and applied to outstanding invoices, Dorsey has preference exposure and does not satisfy section 327(a)'s requirements so long as such exposure remains unresolved. As noted in *Roberts*, 46 B.R. at 849 (emphasis supplied):

> If … the law firm is owed by a petitioning client, on the date of filing, a prepetition debt for legal fees … then the law firm would be a creditor of the debtor … and, therefore, would run afoul of the 'no adverse interest' and 'disinterestedness' requirements of Section 327(a). <u>In such a circumstance, the conflict of interest would not be eliminated if the law firm obtained from the client a prepetition payment of these fees and costs because such a payment would likely constitute a preference that may be avoided for the benefit of other creditors</u>, thus involving the law firm in a conflict of interest as the holder of an interest adverse to the estate in violation of Section 327(a).
>
> To avoid this predicament, a law firm could waive all fees and costs incurred for services unrelated to the bankruptcy case, thus eliminating its status a creditor of the debtor in possession.

*See also In re Pillowtex, Inc.*, 304 F.3d 246, 253 (3d Cir. 2002) (bankruptcy court abused its discretion by approving Jones Day's retention application with conditions in the retention order that would require the firm to refund any payments subsequently determined to be preferential).

9. Dorsey attempts to avoid this issue by breaking out bankruptcy-related attorneys' fees and expenses from attorneys' fees and expenses incurred for corporate services. However, under section 327(a) it is irrelevant if attorneys' fees and expenses were incurred for one or

4

another type of legal service; the relevant inquiry is whether a 90-day payment was applied to an antecedent debt.

10.    To dispel doubt concerning its disinterestedness, Dorsey should be required to disclose its *Pillowtex* analysis, which should include <u>each</u> payment received by it during the year preceding the commencement of this case and how each such payment was applied. In addition, Dorsey should be required to return potentially preferential transfers and waive the resulting claims.[2]

### B.    SunTrust is a Creditor with Significant Preference Exposure.

11.    SunTrust holds a claim of at least $625,000 against the Debtor, contingent only on a sale of substantially all the Debtor's assets closing, which is expected to occur in roughly two weeks. [*See* SunTrust Application at ¶22; Declaration of Stephen Blumenreich ("<u>Blumenreich Decl.</u>") at ¶5][3]    Indeed, the Debtor scheduled SunTrust as holding a $925,000 contingent, unliquidated claim under an "Unmatured Investment Banking Contract." Absent waiver of this

---

[2]    Because no statutory committee has been appointed, Dorsey cannot compromise its preference exposure following arm's length negotiations with an estate representative. Thus, the only workable solution is for Dorsey to return 100% of potentially avoidable transfers.

[3]    Under SunTrust's engagement letter with the Debtor, dated February 27, 2016, as amended by letter, dated June 14, 2016, SunTrust is entitled to a $700,000 fee at closing if the Debtor consummates a sale for substantially all of its assets for a purchase price of $5.5 million or less. If the sale price exceeds $5.5 million, SunTrust is entitled to a $925,000 fee. (SunTrust Application ¶22; Blumenreich Decl. ¶5.) The stalking horse bidder's purchase price is $4.35 million plus the assumption of certain liabilities. SunTrust also holds contingent indemnification claims.

In addition, SunTrust's February 27 letter provides it "will be paid a non-refundable cash retainer of $75,000.00, upon execution of this agreement." The letter further provides this retainer "shall be applied toward payment of any Transaction Consideration," which term includes SunTrust's fee. Nevertheless, SunTrust's June 14 amendment provides "[t]he Company acknowledges that the non-refundable cash retainer of $75,000 … has been fully earned by SunTrust." No explanation was provided concerning when/how the $75,000 was earned, why it should not be applied to SunTrust's fee, or why the Debtor's agreement to treat the $75,000 as fully earned is not itself an avoidable transfer. The Debtor also failed to list the $75,000 payment in its Statement of Financial Affairs [ECF No. 4] even though February 27, 2016 falls in the non-insider preference period.

5

claim, SunTrust is a creditor and is therefore not disinterested. *See Michel v. Federated Dep't Stores, Inc. (In re Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1320 (6th Cir. 1995); *see also* Maxim B. Litvak, James H.M. Sprayregen, James A. Stempel, Laura Davis Jones, and Debra I. Grassgreen, Retention and Compensation of Investment Bankers in Bankruptcy Cases – When Certain Investment Banking Services are Performed Prepetition, 23 AM. BANKR. INST. J. 30 (April 2004) ("investment bankers who perform work for the debtor prepetition have prepetition claims, though they may be contingent, against the debtor. So long as such claims are in existence, the investment bankers are not disinterested and cannot be retained"); *In re Ginaldi¸* 463 B.R. 314, 319 (Bankr. E.D. Pa. 2011) (real estate broker holding a contingent claim under prepetition listing agreement not disinterested).[4]

12.     Further, the Debtor disclosed in its Statement of Financial Affairs that SunTrust was paid $225,000 for a "Fairness Opinion" on March 2, 2016, which falls within the non-insider preference period. SunTrust was also paid a $75,000 retainer during the non-insider preference period (*see* note 3, *supra*), and was paid $30,300 on account of expenses it incurred on various

---

[4]     Ordinarily, investment bankers seek to avoid this issue by unambiguously seeking retention under Bankruptcy Code section 328(a). *See*, *e.g.*, *Circle K Corp. v. Houlihan, Lokey, Howard & Zukin, Inc. (In re Circle K Corp.)*, 279 F.3d 669, 674 (9th Cir. 2001). However, the Debtor sought to retain SunTrust under section 327(a). Even had SunTrust unambiguously sought retention solely under section 328(a), its application should still be denied. As noted by Professor Stephen Lubben:

> While courts sometimes talk about "retention under § 328(a)," there really is no such thing. Rather, retention must be under § 327 or § 1103, as the plain language of 328(a) itself suggests. The implication: cases like *Circle K* are misguided, because 328 simply provides authority to retain a professional under 327 or 1103 under something other than a traditional hourly rate structure. As I read it, 328(a) simply provides that the compensation structure is to be set *ex ante*, and not revisited unless the final sentence of 328(a) applies. In short, no fair using 20/20 hindsight to change the terms of retention …

Professional Retention & Compensation under the Code, Credit Slips Blog (Nov. 23, 2009), available at http://www.creditslips.org/creditslips/2009/11/professional-retention-compensation-under-the-code.html ("Lubben, Credit Slips").

6

undisclosed dates.[5]  SunTrust's preference exposure of at least $300,000 renders it non-disinterested, as noted above.

13.  The Debtor also asks this Court to "further authorize the Debtor's assumption of the Engagement Agreement" pursuant to Bankruptcy Code section 365(a) and approve the Debtor's retention of SunTrust pursuant to section 363(b).  However, these sections are not substitutes for section 327(a)'s requirements: the statute applies to all "professionals" retained by a debtor in possession and nowhere does the Debtor argue that SunTrust does not qualify as such. *In re Channel 2 Assocs.*, 88 B.R. 351 (Bankr. D. N.M. 1988) ("§ 365 cannot be used to circumvent the requirements of § 327.  Even if the contract were executory, the debtor seeks to pay a professional person.  Compensation for professionals is governed by § 330, which requires § 327 Court approval"); Lubben, Credit Slips ("Retention under § 363(b) should not be permitted … I don't see how using the generic provision (363) can be justified in the face of the rather elaborate system [established by the Bankruptcy Code for employing/compensating professionals].  And § 330 by its terms seems to suggest that the only avenues for retention are 327 and 1103").

## CONCLUSION

For the foregoing reasons, SunTrust's employment application should be denied.  And Dorsey's employment application should be denied as well unless it discloses its *Pillowtex* analysis and returns all potentially preferential transfers to the estate.

---

[5]  The Debtor scheduled SunTrust as holding a $925,000 claim, as noted above.  However, if the proposed sale to the stalking horse bidder is consummated SunTrust should only be entitled to $700,000 less $75,000.  *See* note 3, *supra*.

DATED this 8th day of July, 2016.

        RAY QUINNEY & NEBEKER P.C.

        /s/ Michael Johnson
        Michael Johnson
        David H. Leigh

        - and -

        Jeffrey Chubak
        STORCH AMINI & MUNVES PC
        140 East 45th Street, 25th Floor
        New York, New York 10017
        (212) 490-4100

        *Attorneys for B.E. Capital Management Fund LP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2016, a true and correct copy of the foregoing *B.E. Capital Management Fund LP's Objection to Debtor's Applications to Employ Dorsey & Whitney and Suntrust Robinson Humphrey Pursuant to Bankruptcy Code Section 327(a)* was electronically filed with the Clerk of Court using the ECF system, and was served via e-mail as follows:

- **Jeffrey M Armington**  armington.jeff@dorsey.com, asmus.natasha@dorsey.com;ventrello.ashley@dorsey.com
- **Kenneth L. Cannon**  kcannon@djplaw.com, khughes@djplaw.com
- **Anna W. Drake**  drake@millertoone.com
- **John T. Morgan tr**  john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Penelope Parmes**  Penelope.Parmes@troutmansanders.com
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**  waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

/s/ Dianne Burton

1379532