Michael R. Johnson, Esq. (A7070)
David H. Leigh, Esq. (A9433*)*
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah  84101
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
Email:  dleigh@rqn.com

—and—

Jeffrey Chubak (*Pro Hac Vice to be Filed*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone:  (212) 490-4100
Email:  jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re: | Case No. 16-24435 (RKM) |
|---|---|
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Honorable R. Kimball Mosier |

**B.E. CAPITAL MANAGEMENT FUND LP'S OBJECTION TO
DEBTOR'S MOTION FOR ORDER APPROVING ASSUMPTION
OF INSIDER EMPLOYMENT AGREEMENT, AS AMENDED**

B.E. Capital Management Fund LP ("B.E. Capital"), a creditor and equity security holder in this case, through counsel, respectfully objects to the motion [ECF No. 63] (the "Motion") of Perseon Corporation, as debtor and debtor in possession (the "Debtor"), for an order authorizing

the assumption of its amended Employment Agreement with Clinton E. Carnell, Jr. ("Carnell"). In support of this Objection, B.E. Capital respectfully states:

## PRELIMINARY STATEMENT

1. Carnell announced on Facebook that he moved to Paris, France on or about December 15, 2015, left his job as the Debtor's President and CEO on or about December 31, 2015, and started working at Alphaeon Corporation in Paris in or about January 2016.  [See Exhibit 1 attached hereto and incorporated herein by this reference]  In addition, on January 28, 2016, Alphaeon issued a press release announcing it hired Carnell as President of Europe, Middle East, and Africa. [See Exhibit 2 attached hereto and incorporated herein by this reference] Moreover, a cached version of Alphaeon's website lists Carnell as a member of its management team.  [See Exhibit 3 attached hereto and incorporated herein by this reference] Nevertheless, the Debtor's Schedules of Assets and Liabilities, filed May 23, 2016 [ECF No. 4], and other key documents filed by the Debtor, were verified by Carnell, and the Debtor represented Carnell "has been the Debtor's CEO and President since December 2014." [Motion at ¶24]

2. By the Motion, the Debtor seeks authorization to award Carnell: (a) a $600,000 administrative expense, $500,000 of which is payable following the closing of the contemplated sale of substantially all of the Debtor's assets, and $100,000 of which is payable upon confirmation of a plan (proposed by anyone, whether the Debtor or any other party in interest); and (b) a $250,000 unsecured claim (which would be paid in full if the Debtor is solvent) in exchange for nothing at all.  The foregoing proposed compensation equals roughly 20% of the purchase price for substantially all of the Debtor's assets.

3. The Motion should be denied.

4. If Carnell is in fact employed by the Debtor, the proposed compensation is clearly primarily intended to reward him for remaining with the Debtor through closing, which is anticipated to occur promptly following the July 26, 2016 sale hearing. However, the Debtor has made no effort to demonstrate it satisfies the requirements of Bankruptcy Code section 503(c)(1). Moreover, the compensation would be payable even if Carnell leaves the Debtor's employ prior to closing, so long as the sale subsequently closes, and therefore does not even pass muster under the business judgment rule.

5. If Carnell is not employed by the Debtor, the Employment Agreement is not executory and cannot be assumed. Moreover, in that case the Motion should be denied as the Debtor's decision to award the compensation proposed does not satisfy the requirements of the business judgment rule, and in fact merits an investigation concerning the Debtor's conduct.

## BACKGROUND

### I. CASE BACKGROUND.

6. The Debtor commenced this case on May 23, 2016.

7. On May 24, 2016, the Debtor filed a motion [ECF No. 24] seeking approval of an asset purchase agreement under which the Debtor agreed to sell substantially all of its assets to MedLink Technologies, LLC in exchange for $4.35 million plus the assumption of certain liabilities, subject to higher bids and Court approval.

8. This Court entered a bidding procedures order on June 22, 2016, and an auction and sale hearing have been scheduled for July 25 and 26, 2016, respectively [ECF No. 56 and 60]. Upon entry of a sale order, all conditions to closing in Section 8.01 of the asset purchase agreement will have been satisfied. Upon closing, the Debtor's sole responsibilities will be confirmation of a liquidating plan, claim administration, and the distribution of sale proceeds.

**II. BACKGROUND REGARDING CARNELL EMPLOYMENT AGREEMENT.**

9. Under Section 5 of Carnell's Employment Agreement, dated November 10, 2014 and attached to the Motion as Exhibit A, Carnell's compensation is comprised primarily of the following components:

- Base Salary. Section 5.1(a) provides "The Company shall pay [Carnell] an annual base salary at the rate of $350,000 … [Carnell's] annual salary, as in effect from time to time during the Term is referred to herein as the "Base Salary."

- Bonus. Section 5.2 provides (a) on November 10, 2015, the Debtor "shall pay [Carnell] a bonus of $150,000;" and (b) "On [November 10, 2016], and subject to the terms and conditions of a bonus program to be determined by the Board of Directors, after reasonable consultation with [Carnell], [Debtor] shall pay [Carnell] a performance bonus of $150,000, or a pro rata portion thereof."

- Severance. Section 6.3(a) provides if Carnell is terminated without cause, he shall have the right to receive a severance payment in "an amount equal to his Base Salary for a period of two (2) years."[1]

10. The Debtor states on December 23, 2015, Carnell agreed to "defer" his compensation. [See Declaration of Timothy McQuay ("McQuay Decl.") at ¶¶10, 17] That is incorrect. The Debtor's Form 8-K, dated December 23, 2015, signed by Carnell on behalf of himself and the Debtor, states on such date the Debtor and Carnell "agreed … that as part of the Company's plan to materially reduce expenses, Mr. Carnell will no longer receive a salary for his services to the Company as President and Chief Executive Officer." [See Exhibit 4 attached hereto and incorporated herein by this reference] An agreement no to receive a salary is a waiver, not a deferral.

---

[1] Section 6.6(a) provides if a "Change in Control" occurs, which term includes the sale of substantially all of the Debtor's assets, and Carnell is terminated during the two months prior or six months following the same, then in addition to severance Carnell is entitled to (under Section 6.3(a)), all of his options shall vest for a defined period. Significantly, the agreement does not award Carnell monetary compensation upon the occurrence of a Change in Control.

4

11. Because the Employment Agreement provides Carnell's severance shall be two times his base salary "as in effect from time to time" (not two times $350,000) Carnell is not entitled to any severance (if he is/was terminated). In addition, because bonuses were part of Carnell's fixed compensation he is not entitled to bonus payments either.

12. Nevertheless, the Debtor's schedules incorrectly state that Carnell is owed a $700,000 "change of control" fee under his Employment Agreement, as well as a $73,562 pro rated 2016 bonus. Carnell's scheduled claim is not marked contingent, disputed, or unliquidated and is presumptively valid under FED. R. BANKR. P. 3003(b)(1). In addition, in the Motion, the Debtor stated that Carnell was not paid his 2015 bonus either, suggesting he is "owed" that amount as well. [McQuay Decl. at ¶¶24.b-25]

**III.   THE AMENDMENT.**

13. By the Motion, the Debtor seeks entry of an order authorizing the assumption of the Employment Agreement, as modified by an undated, postpetition amendment ("Amendment") drafted by Carnell. [Amendment § 6]

14. The Amendment's practical effect would be to substitute Carnell's objectionable, scheduled severance and bonus claims with Court-approved administrative and unsecured claims that would also reallocate the priority of any severance portion in a manner inconsistent with precedent. *See Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526 (10th Cir. 1988). Specifically, Section 4 of the Amendment provides:

> Section 5.1 [regarding base salary] is hereby deleted and replaced with the following:
>
> 5.1 In consideration of [Carnell's] services with respect to furthering the completion of a transaction for the sale of the Company [Carnell] shall be entitled to:
>
> a.   a success bonus equal to … $600,000 ("Success Bonus"), and

    b. an additional amount equal to $250,000, which shall not depend upon the completion of a Sale ("Executive Compensation").

    c. The Success Bonus shall be deemed earned … upon the completion of a Sale satisfying nay of the following criteria …

        iv. The sale … of all or substantially all the assets of the Company …

    d. The Success Bonus shall be a claim entitled to administrative priority [and] will be paid as follows:

        i. … $300,000 … shall be paid upon the closing of any Sale …

        ii. … $100,000 … to be paid on or about October 1, 2016 …

        iii. … $100,000 … to be paid on or about December 1, 2016; and

        iv. … $100,000 … to be paid on or about the date of the Court's confirmation of any plan in the Bankruptcy Case.

    e. The Executive Compensation … shall be treated as a general unsecured claim.

Sections 5 and 10 of the Amendment would also delete Sections 5.2 and 6.3 of the Employment Agreement (governing severance and bonuses, respectively).[2]

---

[2] The Amendment includes a variety of irrelevant provisions intended to detract from the Motion's intended purpose. For example, Sections 11-12 of the Amendment would incorporate non-compete and non-solicitation provisions, even though the Debtor will have no business upon closing; Section 3 redefines Carnell's responsibilities to the Debtor as President/CEO, even though he will have no business responsibilities upon closing and need not even be employed at closing to be eligible to receive the proposed compensation; etc.

# OBJECTION

## I. IF CARNELL IS EMPLOYED BY THE DEBTOR, THE MOTION SHOULD BE DENIED.

### A. The Motion Seeks Approval of an Illegal Retention Bonus.

1. Section 503(c)(1).

15. Bankruptcy Code section 503(c) prohibits retention payments to insiders, absent satisfaction of certain criteria. The section provides:

> [T]here shall neither be allowed, not paid –
>
> (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing that person to remain with the debtor's business, absent a finding by the court based on the evidence in the record that –
>
> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
>
> (B) the services provided by the person are essential to the survival of the business; and
>
> (C) either –
>
> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or
>
> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred.

7

16. Courts are required to be "vigilant" to ensure motions seeking approval of insider compensation are not "disguised" retention plans that are "primarily intended to reward its participants for retaining their positions with the debtor." *In re Alpha Natural Res.*, 546 B.R. 348, 357 (Bankr. E.D. Va. 2016). Further, "[t]he burden of proof rests with the Debtors to prove by a 'preponderance of the evidence that [an insider compensation plan] is … not primarily retentive.'" *Id.* (quoting *In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012)).

        2.    <u>The Amendment is Primarily Intended to Reward Carnell for Seeing the Sale Through Closing</u>.

17. The Success Payment becomes payable upon the occurrence of defined future events, one the closing of the asset purchase agreement later this month (and the passage of time), and another plan confirmation. In *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006), the court rejected a request for court approval of similar compensation on section 503(c)(1) grounds:

> The Completion Bonus includes an amount payable to the Executives upon the Debtors' emergence from chapter 11, regardless of the outcome of these cases. Without tying this portion of the bonus to anything other than staying with the company until the Effective Date, this Court cannot categorize a bonus of this size and form as an incentive bonus. Using a familiar fowl analogy,[3] this compensation scheme walks, talks and is a retention bonus.
>
> [3] If it walks like a duck (KERP) and quacks like a duck (KERP), it's a duck (KERP).

*See also In re Hawker Beechcraft, Inc.*, 479 B.R. 308, 314 (Bankr. S.D.N.Y. 2012) (denying approval of insider incentive plan on the grounds that it "pays a bonus for consummating a plan that is likely to occur").

8

18. Because the Success Payment comprises over two-thirds (71%) of proposed additional compensation to be awarded under the Amendment, and the Debtor has not bothered offering evidence that it satisfies section 503(c)(1)'s requirements, the Motion should be denied in its entirety. *See In re Residential Capital, LLC*, 478 B.R. at 169 (denying approval of proposed incentive plan on the grounds that "Debtors have failed to carry their burden to show that vesting 63% of the KEIP [key employee incentive plan] Awards based solely upon the Closings is not primarily retentive in nature").

3. <u>The Debtor Admitted the Amendment's Purpose is to Retain Carnell</u>.

19. The Motion states the Amendment's purpose is to ensure Carnell will see the sale through closing, and compensate him for past services rendered during the period he agreed to waive his salary. Specifically, the Amendment's fourth and fifth recital paragraphs state:

> WHEREAS, [the Debtor's] Board … recognizes that Mr. Carnell's continuing efforts during the Bankruptcy Case have been … essential to continuing the Debtor's operations during the pendency of the Bankruptcy Case and to consummating and closing the sale transaction contemplated under the APA; and
>
> WHEREAS, [the Debtor's] Board … has decided to enter into this Amendment … to compensate Mr. Carnell for his irreplaceable efforts after the Petition Date to consummate the sale of the Debtor's assets and to preserve the value of those assets pending any sale.

*See also* McQuay Decl. at ¶¶19-21, 23, 26 (same)][3]

---

[3] The Motion is internally inconsistent with regard to whether the Debtor seeks to compensate Carnell for post-petition acts undertaken in furtherance of the sale or pre- and post-petition acts. *Compare* Amendment Recital at ¶¶4-5 (compensation is for "irreplaceable efforts after the Petition Date") with Motion at ¶28, McQuay Decl. at ¶19 (compensation is for efforts during the past six months). Regardless, the compensation does not pass muster under section 503(c)(1).

Further, the declaration states that absent Carnell's "deferral" of his salary he would be paid more than the Debtor seeks to pay under the Motion (McQuay Decl. at ¶¶24-25, 27, 30.) That is not true. *See supra*, ¶¶10-11.

20. These justifications make clear the proposed payments are primarily retentive in nature. *See In re GT Advanced Techs., Inc.*, No. 14-11916, 2015 WL 5737181, at *7 (Bankr. D. N.H. Sept. 30, 2015) ("the repeated statements of counsel and the Declarants regarding the importance of keeping these particular Insiders on board weigh heavily in [the Court's] conclusion that the KEIP is primarily designed to retain the Insiders and not to incentivize them").

        4.     The Debtor Has Not Even Explained Why Carnell's Retention is Necessary.

21. At no point does the Debtor explain how, specifically, Carnell's services are required to see the sale through closing. No evidence was proffered concerning why MedLink would terminate its asset purchase agreement after putting down an $850,000 deposit (APA § 2.07) or what Carnell would be doing between the hearing date on the Motion (July 12) and the sale hearing (July 26) that is so critical to ensuring MedLink does not walk away, or why such services would be worth $850,000. Nor does the Debtor state how much time has been expended by Carnell pre- or post-petition to undertake tasks in furtherance of the sale.

**B.    The Motion Should be Denied as it Seeks to Award Compensation for No Consideration.**

22. Alternatively, the Motion should be denied because the Amendment does not even require that Carnell actually see the transaction through closing to be eligible for the Success Bonus or Executive Compensation. Rather, $500,000 of the Success Bonus is payable following closing regardless of whether Carnell is employed by the Debtor at (or before) closing, and the $100,000 balance is payable upon plan confirmation, regardless of whether Carnell does or has done anything in furtherance of confirmation. Likewise, the Executive Compensation is not linked to Carnell's providing any future services. Accordingly, the Motion should be denied on the grounds that it does not pass muster under the business judgment rule and is inconsistent

with the Debtor's obligation to maximize estate value. *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985). To the extent the Debtor alleges such compensation is required to induce Carnell to see the transaction through closing, it should be treated as an illegal retention payment.

## II. IF CARNELL IS NO LONGER EMPLOYED BY THE DEBTOR, THE MOTION SHOULD BE DENIED, AND AN INVESTIGATION IS IN ORDER.

23. If Carnell is no longer working for the Debtor the Employment Agreement is no longer executory and cannot be assumed. *See Olah v. Baird (In re Baird)*, 567 F.3d 1207, 1210 (10th Cir. 2009) (quoting Vern Countryman, Executory Contracts in Bankruptcy: Part 1, 57 MINN. L. REV. 439, 460 (1973)) (contract is executory if "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach"). Alternatively, the decision to pay someone who no longer works for the Debtor does not satisfy even the most generous interpretation of the business judgment rule. *In re Summit Land Co.*, 13 B.R. 310, 314 (Bankr. D. Utah 1981) (in order for a debtor to assume/reject an executory contract, it must first demonstrate assumption/rejection would benefit the estate).

24. Moreover, if Carnell is no longer employed by the Debtor, further investigation is in order concerning whether the Debtor and its counsel are taking advantage of the absence of a statutory committee to run this case for the benefit of former directors/officers at the expense of the Debtor's stakeholders.

## CONCLUSION

The Motion is plainly an attempt to unwind the consequences of Carnell's having waived his entitlement to severance and bonus compensation in December 2015. The Debtor should not be allowed to do so at the expense of its stakeholders, and the Motion should be denied.

11

DATED this 8th day of July, 2016.

        RAY QUINNEY & NEBEKER P.C.

        /s/ Michael Johnson
        Michael Johnson
        David H. Leigh

        - and -

        Jeffrey Chubak
        STORCH AMINI & MUNVES PC
        140 East 45th Street, 25th Floor
        New York, New York 10017
        (212) 490-4100

        *Attorneys for B.E. Capital Management Fund LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2016, a true and correct copy of the foregoing *Objection to Debtor's Motion for Order Approving Assumption of Insider Employer Agreement, as Amended* was electronically filed with the Clerk of Court using the ECF system, and was served via e-mail as follows:

- **Jeffrey M Armington**   armington.jeff@dorsey.com, asmus.natasha@dorsey.com;ventrello.ashley@dorsey.com
- **Kenneth L. Cannon**   kcannon@djplaw.com, khughes@djplaw.com
- **Anna W. Drake**   drake@millertoone.com
- **John T. Morgan tr**   john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Penelope Parmes**   Penelope.Parmes@troutmansanders.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**   waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

/s/ Dianne Burton

1379493