Michael Johnson (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Fax: (801) 532-7534
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

—and—

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
Email: jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Honorable R. Kimball Mosier |

**B.E. CAPITAL MANAGEMENT FUND LP'S RESPONSE TO
SUPPLEMENTAL DECLARATION OF STEVEN T. WATERMAN IN
SUPPORT OF DEBTOR'S APPLICATION TO EMPLOY DORSEY & WHITNEY**

B.E. Capital Management Fund LP submits this response to the supplemental declaration of Steven T. Waterman, filed July 15, 2016 (the "Waterman Declaration"), in support of the application of Perseon Corporation (the "Debtor") to employ Dorsey & Whitney LLP ("Dorsey") pursuant to section 327(a) of the Bankruptcy Code, and respectfully states:

## **RESPONSE**

1. Dorsey represented in the Waterman Declaration that during the non-insider preference period, Dorsey received four payments from the Debtor, in satisfaction of invoices issued on seven different dates, at least three of which were issued during the 15-day period ending three days before the petition date. Dorsey acknowledges it likely has no preference defense with respect to the first payment, for $12,301. (Waterman Declaration ¶10.) However, Dorsey argues the remaining payments are not subject to avoidance because Dorsey has a valid contemporaneous exchange for new value defense with respect to the same. (*Id*. at ¶11.)

2. There are two problems with this argument.

3. First, this Court cannot make any determination with respect to the validity of any potential preference defense with only an incomplete, self-selected evidentiary record, supplied outside of the context of an adversary proceeding. *In re Pillowtex, Inc.*, 304 F.3d 246, 253 (3d Cir. 2002) ("The record does not show how much of the fee Jones Day received within the 90 days before the bankruptcy was for bankruptcy preparation, how much was for legal work done years earlier, and what the ordinary practice was in Jones Day's billings to Pillowtex and Pillowtex's payments. Jones Day did not make a proffer of such information. Instead, it … proposed" an alternative solution which the Third Circuit rejected).[1] The absence of a complete evidentiary record is of particular importance because if Dorsey's employment application is approved, any subsequent preference claim against Dorsey could be barred on res judicata

---

[1] Significantly, in *Pillowtex*, Jones Day disclosed each payment it received during the year preceding the petition date, and even that was considered insufficient. 304 F.3d at 248 ("As part of Jones Day's retention application, Jones Day set forth the date and amount of each payment that Pillowtex made to the firm during the year immediately preceding the filing for bankruptcy"). Dorsey, in contrast, has only supplied information with respect to payments received during the non-insider preference period.

2

grounds. *See*, *e.g.*, *BCPM Liquidating LLC v. PricewaterhouseCoopers LLP (In re BCP Mgmt., Inc.)*, 329 B.R. 265, 278 (Bankr. D. Del. 2005) (barring preference claim against professional employed under section 327(a) with respect to payments disclosed in employment application).

4. Second, even if Dorsey had provided a complete evidentiary record, which it has not done, Dorsey still has not satisfied its burden under section 547(g) of the Bankruptcy Code to establish the validity of its stated contemporaneous exchange for new value defense with respect to each of the March 31, April 30, and May 20 payments (the "Disputed Payments"). This defense, codified at section 547(c)(1), provides that an otherwise preferential payment may not be avoided to the extent such payment was:

> (A) intended by the debtor and the creditor to be a contemporaneous exchange for new value given to the debtor; and
>
> (B) in fact a substantially contemporaneous exchange.

No evidence was proffered concerning the intent of Dorsey and the Debtor at the time the Disputed Payments were made. Moreover, no evidence was proffered concerning whether such payments were made contemporaneously with the provision of legal services by Dorsey. Ordinarily, law firm invoices are issued during the weeks that follow the close of the month during which legal services were rendered. Dorsey has not explained how payments made to it weeks after an invoice has been issued can qualify as "contemporaneous" payment for services rendered weeks before the invoice was issued, regardless of the parties' intent at the time of payment.

5. Dorsey suggests, in a footnote, that it nevertheless has a valid contemporaneous exchange for new value defense with respect to the Disputed Payments because in *In re Roberts*, 46 B.R. 815, 850 (Bankr. D. Utah 1985), Judge Glen Clark stated, in dicta, "a law firm that bills

regularly and is paid in the ordinary course of its business and the business of the debtor" may qualify for a contemporaneous exchange for new value defense. (Waterman Declaration ¶11 n.1.)

6. This position should be rejected.

7. First, the above-quoted statement cannot be interpreted to trump the plain language of section 547(c)(1) (quoted above), which requires that a preference defendant satisfy two elements unrelated to the ordinary course of business between the parties.

8. Second, Dorsey does not even argue it qualifies for the ordinary course of business defense under section 547(c)(2)(A), which defense must be established, under the above-quoted language from *Roberts*, as a prerequisite to a law firm qualifying for a contemporaneous exchange for new value defense. Nor has Dorsey proffered any evidence that it qualifies for an ordinary course of business defense with respect to the Disputed Payments. Paragraph 9 of the Waterman Declaration states that some invoices paid during the non-insider preference period were paid late,[2] and some were paid early.[3] "Just as payments that are made after the due date may be considered out of the ordinary course, payments may likewise be out of the ordinary course of business if they are early, that is before the due date, and the defendant does not produce evidence that early payment was the norm between the parties prior to the preference period." *Burtch v. Prudential Real Estate and Relocation Servs. (In re AE Liquidation, Inc.)*, No. 10-55543, 2013 WL 3778141, at *6 (Bankr. D. Del. July 17, 2013)

---

[2] The February 11 invoice for $15,559 was paid more than 30 days after the invoice date.

[3] The March 9 invoice for $22,509 was paid 22 days after the invoice date; the April 15 and May 5 invoices for $19,819 and $65,184, respectively, were paid 15 days after the relevant invoice date; the May 16 invoice for $97,197 was paid four days after the invoice date; and the May 20 invoice for $1,000 was paid the same date the invoice was issued.

4

(quoting 5 COLLIER ON BANKRUPTCY ¶504.04[2] (16th ed.)); *see also Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, No. 08-1690, 2010 WL 462249, at *4-5 (Bankr. S.D.N.Y. Nov. 4, 2010) (early payments not within the ordinary course of business between the parties when the pre-preference period average gap between the invoice and payment date was 35 to 95 days); *R.M. Taylor, Inc. v. Employers Ins. of Wausau,* 245 B.R. 629, 635-37 (Bankr. W.D. Mo. 2000) (avoiding early payments as preferences). Without evidence of the parties' baseline of dealing (*i.e.*, historic, pre-preference period payment practice), it is impossible to evaluate the validity of any ordinary course of business defense, and in turn, any contemporaneous exchange for new value defense under *Roberts*.

9. The *Roberts* decision explained exactly how a debtor's counsel should insulate itself against a disinterestedness problem resulting from the debtor's payment of prepetition invoices: "obtain a pre-service retainer to cover work [for prepetition services rendered] and deduct from this retainer the sums owed as they come due. This deduction could take place either as the legal work is accomplished or at the end of regular billing periods." 46 B.R. at 850. Dorsey did not do this. It stated it received a $25,000 advance payment retainer, but did not disclose when that payment was received, and further acknowledged it billed the Debtor well in excess of $25,000 for prepetition bankruptcy services.

10. To remedy the disinterestedness problem resulting from Dorsey's preference exposure, Dorsey should be required to return all potentially preferential transfers to the estate and waive the resulting section 502(h) claim.[4]

---

[4] Dorsey revealed in the Waterman Declaration that it has total preference exposure of $233,569. That amount is 56% greater than the amount disclosed in the Debtor's Statement of Financial Affairs, Dorsey's employment application, and the accompanying declaration ($149,857), all of which did not disclose the March 28, March 31, and April 30 payments and understated the amount of the May 20 payment by

5

11. Dorsey has proposed that it should be allowed to cure any disinterestedness problem resulting from its preference exposure by "disgorg[ing] the amount of the arguably preferential transfer to the Debtor's estate <u>by adding [such amount] to the amount of Dorsey's retainer … and to forego any unsecured claim relating to that sum</u>." (Waterman Declaration ¶12.) In effect, Dorsey asks this Court for permission to retroactively substitute its section 502(h) claim for an increased retainer. This proposal must be rejected. The definition of "disinterested person" requires that Dorsey not be a creditor as of the petition date. Any preference exposure would result in Dorsey being a creditor on account of its section 502(h) claim. Accordingly, to qualify for employment under section 327(a), that claim must be waived. "Disgorging" the claim by crediting it to Dorsey's retainer is not equivalent to a waiver, and further, would result in Dorsey receiving superior treatment on account of its substituted section 502(h) claim relative to other creditors if creditors are not paid in full. Notably, Dorsey has not cited any authority whatsoever supporting this novel proposal.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

---

nearly $15,000. B.E. Capital is troubled by these inconsistencies. Dorsey has not verified whether its section 329(a) disclosure is likewise inaccurate.

## CONCLUSION

To qualify for employment under section 327(a), Dorsey should be required to disgorge the $233,569 paid to it during the non-insider preference period, except that portion of its $25,000 retainer which was not consumed as of the petition date, and to waive the resulting section 502(h) claim.

DATED this 18th day of July, 2016.

**RAY QUINNEY & NEBEKER P.C.**

/s/ David H. Leigh
Michael Johnson (A7070)
David H. Leigh (A9433)

- and -

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
Email: jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*