Michael Johnson (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Fax: (801) 532-7534
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

- and -

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
Email: jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| In re:<br><br>PERSEON CORPORATION,<br><br>Debtor. | Case No. 16-24435<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier |
|---|---|

**MOTION FOR ORDER CONVERTING CASE TO CHAPTER 7**

B.E. Capital Management Fund LP, through counsel, respectfully moves this Court for entry of an Order converting the above-captioned chapter 11 case to under chapter 7, and respectfully states as follows:

## PRELIMINARY STATEMENT

1. There is no dispute that Perseon Corporation (the "<u>Debtor</u>") has no reasonable likelihood of reorganizing now that an order approving the sale of substantially all of its assets has been entered, which sale is expected to close expeditiously. There can also be no dispute that the estate will suffer continuing loss in the form of administrative expenses and United States Trustee fees, regardless of whether a plan is confirmed in the near term. Pursuant to section 1112(b)(1) of the Bankruptcy Code, upon a determination that the foregoing requirements of section 1112(b)(4)(A) have been satisfied, this Court <u>must</u> convert this case to one under chapter 7, unless it determines that appointing a chapter 11 trustee or examiner is in the estate's best interest.

2. Conversion is also in the estate's best interest because no investigation concerning potential claims and causes of action against the Debtor's directors and officers would otherwise be undertaken, given the absence of a statutory committee.

## BACKGROUND

3. The Debtor commenced this case on May 23, 2016 in order to consummate the sale of substantially all of the Debtor's assets pursuant to section 363 of the Bankruptcy Code to a subsidiary of Scion Medical Technologies, LLC for $4.35 million, subject to higher bids and Court approval [ECF No. 13, ¶20].

4. The next day, the Debtor filed its sale motion [ECF No. 24].

5. On June 22, 2016, this Court entered a bidding procedures order [ECF No. 56].

6. On August 11, 2016, this Court entered an order approving the sale [ECF No. 160], and there remain no impediments to closing.

7. Absent conversion, the Debtor will need to obtain Court approval of a disclosure statement and propose, solicit, and confirm a liquidating plan, which will inevitably provide for the appointment of a liquidating trustee who would be responsible for administering claims, making distributions, and closing this case, and whose compensation and professionals would be paid by the estate, and the exculpation and release of the Debtor's directors and officers. Liquidating plans also typically provide for the establishment of an oversight committee, and the payment of its professional fees as well.

## ARGUMENT

### I. SECTION 1112(b)

8. Section 1112(b)(1) provides "the court <u>shall</u> convert a case under this chapter to a case under chapter 7 … for cause unless the court determines that the appointment … of a trustee or an examiner is in the best interests of creditors and the estate." (Emphasis supplied.)

9. Section 1112(b)(4) provides a non-exhaustive list of factors that constitute "cause." Section 1112(b)(4)(A) provides the term includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

### II. CAUSE EXISTS UNDER SECTION 1112(b)(4)(A)

#### A. The Debtor Has No Reasonable Likelihood of Rehabilitation

10. The leading bankruptcy treatise interprets "rehabilitation" in section 1112(b)(4)(A) as follows:

> [T]he second part of the test under section 1112(b)(4)(A) requires a reasonable likelihood of "rehabilitation," not "reorganization." Thus, the standard under section 1112(b)(4)(A) is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort. Rehabilitation is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.

*In re Brutsche*, 476 B.R. 298, 301 (Bankr. D. N.M. 2012) (quoting 7 Collier on Bankruptcy ¶1112.04[6][a][ii] (16th ed.), and noting consummation of a liquidating plan is not a rehabilitation). *See also In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D. N.M. 2010); *In re Vaughan Co., Realtors*, No. 10-10759, 2013 WL 2244285, at *5 (Bankr. D. N.M. May 21, 2013) (same).

11. Upon closing of the Scion transaction, as contemplated by the sale order, the Debtor will have no assets around which to reorganize and no business to maintain. Thus, the Debtor has no reasonable likelihood of rehabilitation.

### B. The Estate is Experiencing Continuing Loss

12. It is black letter law that debtors experiencing negative cash flow satisfy the first element of section 1112(b)(4)(A). *See Loop Corp. v. United States Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004) (negative cash flow … alone is sufficient to establish 'continuing loss to or diminution of the estate'"); *In re Johnston*, 149 B.R. 158, 161 (B.A.P. 9th Cir. 1992) (granting motion to convert where debtor had no business revenues); *ARS Analytical*, 433 B.R. at 862 ("Projected future revenues were $–0– for some indefinite future. Projected expenses going forward would be $48,000 per month plus attorney and reorganization fees. These all demonstrate a 'continuing loss'"); 7 Collier on Bankruptcy ¶1112.04[5][a][i] (16th ed.) ("If the

debtor is operating with a sustained negative cash flow ... this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss to ... the estate'").

13.   This is true, notwithstanding the fact that "this interpretation of § 1112(b)(1) amounts to a *per se* rule allowing a creditor ... to force conversion to Chapter 7 whenever a debtor seeks to liquidate under Chapter 11." *Loop*, 379 F.3d at 516. As noted by the Eighth Circuit:

> We are convinced that this interpretation is correct, notwithstanding Loop's concern that a liquidating debtor will "inevitably" have a negative cash flow. The purpose of § 1112(b)(1) is to "preserve estate assets by preventing the debtor in possession from gambling on the enterprise at the creditors' expense when there is no hope of rehabilitation." *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). In the context of a debtor who has ceased business operations and liquidated virtually all of its assets, any negative cash flow— including that resulting only from administrative expenses— effectively comes straight from the pockets of the creditors. This is enough to satisfy the first element of § 1112(b)(1) ...
>
> [I]t is difficult to imagine a liquidating debtor who will not meet the criteria for cause described in § 1112(b)(1).

*Id.* (emphasis added). *See also In re BH S&B Holdings, LLC*, 439 B.R. 342, 348 (Bankr. S.D.N.Y. 2010) ("courts in this district have converted or dismissed chapter 11 cases on facts similar to those in *Loop*").

14.   In the instant case, the Debtor is experiencing negative cash flow. In just the last week of May and the month of June, the Debtor accrued professional fees of nearly $200,000.[1]

---

[1] The Debtor's first operating report, covering May 23-31, 2016 [ECF No. 121], states that during such period the Debtor blew through its $25,000 advance payment retainer with Dorsey & Whitney and accrued an additional $35,000 in professional fees, mostly to Dorsey & Whitney (Form 2-E). The Debtor's second operating report, covering the month of June [ECF No. 122], provides during such period, the Debtor accrued professional fees of over $100,000, again, mostly to Dorsey & Whitney (Form 2-E), and made disbursements of roughly $250,000 (Form 2-B/F).

The Debtor likely spent even more in July, given that July included hearings on contested motions, including the sale motion, and the Debtor's representation that it is working to get a plan and disclosure statement on file. Plan confirmation would likewise require the estate to incur additional professional fees, both pre- and post-confirmation.

15. The Debtor's professionals may be providing legitimate services, but they are nevertheless running up bills for the estate, at stakeholders' expense, which is all that matters for the purpose of evaluating if the first element of section 1112(b)(4)(A) has been met. As noted in *Brutsche*, 487 B.R. at 305, "professional services come at a cost ... which cost needs to be factored in the calculation of gains and losses for the estate. And the hard fact is that these costs are rapidly mounting expenses for the estate that help put the estate in the position of continuing substantial losses." *See also Loop*, 379 F.3d at 516 ("any negative cash flow—including that resulting only from administrative expenses—effectively comes straight from the pockets of creditors"); *In re Angel Fire Water Co., LLC*, No. 13-10868, 2015 WL 251570, at *4 (Bankr. D. N.M. Jan. 20, 2015) ("The Debtor has no income, cash, or business operations, but continues to incur monthly expenses such as U.S. Trustee fees, attorney fees ... The Court concludes that there is a continuing diminution of Debtor's estate"); *In re FRGR Managing Member LLC*, 419 B.R. 576, 581 (Bankr. S.D.N.Y. 2009) ("As to the first prong, it is apparent [debtor's] actions are causing a diminution to the estate. FRGR continues to incur quarterly U.S. Trustee fees as well as legal fees, causing continuing loss to the estate").

### C. Whether the Debtor Can Confirm a Plan in the Near Term is Irrelevant

16. Whether or when the Debtor can confirm a plan is irrelevant to the issue of whether this case should be converted.

17. Although section 1112(b)(2) affords courts discretion to deny a motion to convert if "there're is a reasonable likelihood that a plan will be confirmed ... within a reasonable period of time" and "unusual circumstances" exist, pursuant to section 1112(b)(2)(B) this carveout is inapplicable where, as here, the motion seeks conversion for cause under section 1112(b)(4)(A). *Brutsche*, 476 B.R. at 306 (citing *ARS*, 433 B.R. at 865 n.25) ("The statute is explicit that the Court may not rely on unusual circumstances to refuse to convert or dismiss if it finds cause under §1112(b)(4)(A)").

18. Moreover, whether a debtor can confirm a plan is irrelevant because cases are subject to conversion even post-confirmation. *See In re Lacy*, 304 B.R. 439, 444 (D. Col. 2004) ("Section 1112(b) provides express authority for dismissal or conversion of a Chapter 11 case, including post-confirmation conversion"); *In re Greenfield Drive Storage Park*, 207 B.R. 913, 918 (B.A.P. 9th Cir. 1997) ("Even if the case had been properly closed under § 350 the case could thereafter be reopened to convert the case to chapter 7"); *In re Jordan Mfg. Co.*, 138 B.R. 30, 36 (Bankr. C.D. Ill. 1992) (same). Thus, to avoid conversion the Debtor would need to establish it will be cash flow positive even post-confirmation (excluding distributions pursuant to a plan).

### III. CONVERSION IS IN THE ESTATE'S BEST INTEREST

19. Any chapter 11 plan would inevitably seek to release the Debtor's directors and officers. Indeed, that is the principal reason why debtors seek to confirm liquidating plans, as opposed to converting, following consummation of section 363 sales.[2] However, the self-

---

[2] *See* George W. Shuster, Jr. & Katelyn H. Rood, "Plan Issues: Plan Sales vs. Section 363 Sales: Pros and Cons," AM. BANKR. INST., 18TH ANNUAL NE. BANKR. CONF. (July 21-24, 2011) (072111 ABI-CLE 145) ("Finally, there may be ... benefits of a Chapter 11 plan that make it a worthwhile process for

7

interested decision to release directors and officers should not automatically be accepted as in the estate's best interest, particularly where, as here, no statutory committee has been appointed to undertake an investigation into their prepetition conduct and the Debtor has scheduled a directors and officers' liability policy. Indeed, the only way that such decision could objectively be made is if a trustee was appointed and he/she reached that conclusion following an independent investigation.

## CONCLUSION

B.E. Capital respectfully requests that this Court convert this case to one under chapter 7.

DATED this 12th day of August, 2016.

        **RAY QUINNEY & NEBEKER P.C.**

        /s/ David H. Leigh
        Michael Johnson (A7070)
        David H. Leigh (A9433)

        - and -

        Jeffrey Chubak (admitted *pro hac vice*)
        **STORCH AMINI & MUNVES PC**

---

consummating a sale, as compared to a 363 Sale that may be followed by ... conversion ... For example, the releases and exculpations that may be available under a Chapter 11 plan for principals, advisors, and others, may be an incentive to pursue the plan process" following a sale).

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2016, a true and correct copy of the foregoing *Motion for Order Converting Case to Chapter 7* was electronically filed with the Clerk of Court using the ECF system, and was served via e-mail as follows:

- **Jeffrey M Armington**   armington.jeff@dorsey.com, asmus.natasha@dorsey.com;ventrello.ashley@dorsey.com
- **Matthew M. Boley**   mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- **Kenneth L. Cannon**   kcannon@djplaw.com, khughes@djplaw.com
- **Jeffrey Chubak**   jchubak@samlegal.com
- **David F. Crosby**   dcrosby@nixonpeabody.com
- **Anna W. Drake**   drake@millertoone.com
- **Michael R. Johnson**   mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- **David H. Leigh**   dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- **John T. Morgan tr**   john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Penelope Parmes**   Penelope.Parmes@troutmansanders.com
- **E. Scott Savage**   ssavage@sywlaw.com
- **Sage M. Sigler**   sage.sigler@alston.com
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**   waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

I further herby certify that on this 12th day of August, 2016, I mailed a true and correct copy of the foregoing *Motion for Order Converting Case to Chapter 7* by first class U.S. mail, postage prepaid, to the persons and entities whom have filed with the Court a specific request for notice requesting that notice be given to them in this case:

**David Green**
2174 Preston Street
Salt Lake City, UT 84106

/s/ Dianne Burton