Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
        thomson.michael @dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor in Possession,*
*BSD Medical Corporation fka Perseon Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

**DEBTOR'S OBJECTION TO MOTION FOR ORDER**
**CONVERTING CASE TO CHAPTER 7**

BSD Medical Corporation fka Perseon Corporation ("BSD" or "Debtor"), the debtor in possession in the above captioned Chapter 11 bankruptcy case, by and through its counsel, hereby files this "Objection" to the *Motion for Order Converting Case to Chapter 7* [Docket No. 162] (the "Motion to Convert"), filed by B.E. Capital Management Fund LP ("B.E."). The Court

should deny the Motion to Convert because there is no cause to convert this case and any such conversion would not be in the best interests of creditors or the Debtor's estate. In further support of this Objection the Debtor states as follows.

## BACKGROUND

1. On May 23, 2016 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court") thereby commencing the above-captioned "Chapter 11 Case."

2. No trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case. The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On the Petition Date the Debtor filed its Statement of Financial Affairs and Schedules [Docket No. 4].

4. On May 24, 2016, the Debtor filed *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6007: (I)(A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* [Docket No. 24] (the "Sale Motion"), which sought Court approval of the Debtor's entry into a sale transaction for the bulk of the Debtor's assets pursuant to the Asset Purchase Agreement ("APA") attached to the Sale Motion.

5. On June 16, 2016, representatives from the Debtor and Debtor's counsel attended the § 341 meeting of creditors (the "341 Meeting") at the Office of the United States Trustee for

2

the District of Utah (the "UST").  Following the 341 Meeting, the UST elected not to appoint a creditors' committee in this Chapter 11 Case.

6. On June 22, 2016, the Court entered its entered its *Order (a) Authorizing Assumption of Asset Purchase Agreement, (b) Authorizing Bid Protections, (c) Authorizing Bidding Procedures and Auction, and (d) Scheduling Sale Hearing* [Docket No. 56] (the "Bidding Procedures Order"), which, among other things, authorized the Debtor to assume the APA, and approved the bidding procedures and auction process proposed by the Debtor.

7. On July 19, 2016, the Debtor filed its May and June 2016 Monthly Operating Reports [Docket Nos. 121 and 122], and subsequently filed amended versions of those reports in response to informal discussions with creditors regarding classification of certain payments [Docket Nos. 185 and 186].

8. On August 2, 2016, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Authorizing Debtor to Reinstate Salary Pursuant to Debtor's Employment Agreement with Clinton E. Carnell Jr.* [Docket No. 148] (the "Salary Reinstatement Order"), which authorized the Debtor to reinstate compensation for the Debtor's CEO pursuant to his employment agreement for the work performed by the CEO during this Chapter 11 Case.  B.E. has appealed the Salary Reinstatement Order.

9. On August 3, 2016, the Court entered its *Order Granting Application of the Debtor for Entry of an Order Authorizing the Retention and Employment of Dorsey & Whitney LLP as Counsel for the Debtor in Possession* [Docket No. 150] (the "Dorsey Retention Order"), which granted Dorsey & Whitney, LLP's ("Dorsey") employment application and found that Dorsey is a "disinterested person" following Dorsey's return to the Debtor of amounts disputed by B.E. as preferences.  B.E. has appealed the Dorsey Retention Order.

3

10. On August 11, 2016, the Court entered its *Order Authorizing Sale of Assets* [Docket No. 160] (the "Sale Order"), which approved of the sale of the bulk of the Debtor's assets to Scion Medical Technologies, LLC ("Scion"), pursuant to the terms of the APA.

11. On August 12, 2016, B.E. filed the Motion to Convert.

12. On August 15, 2016, the Debtor filed its monthly operating report for July [Docket No. 166].

13. On August 19, 2016, B.E. filed two notices of transfer of claims that it purchased after the Petition Date, a claim held by Flexpak, Inc. in the amount of $2,293.85 and a claim BACS Consulting Group, Inc., in the amount of $56,495.36, respectively [Docket Nos. 176 and 177]. According to its filings, B.E. holds claims in the amount of $58,789.21. B.E. has also allegedly purchased equity in the Debtor after the Petition Date.

14. On August 22, 2016, the Debtor consummated the sale of the bulk of its assets to Scion [Docket No. 178].

15. Pursuant to 11 U.S.C. § 1121(b), the Debtor has the exclusive right to file a plan through September 20, 2016.

## OBJECTION

B.E. has not established cause to convert this Chapter 11 Case. B.E.—a lone unsecured creditor which purchased two general unsecured claims from the Debtor's trade creditors after the Petition Date—filed the Motion to Convert the day after this Court entered the Sale Order, based solely on the fact that liquidating the Debtor's assets has, and prosecuting plan confirmation will, cost money. Yes, administering a chapter 11 estate, achieving plan confirmation, and litigating against B.E.'s motions, objections, and appeals in various fora will cost the Debtor's estate money. However, converting this Chapter 11 Case to Chapter 7 and

4

appointing a trustee who will retain additional professionals will delay and likely reduce payments to the Debtor's creditors. Accordingly, conversion is not in the best interests of the Debtor's estate or its creditors.

### A. B.E. has Not Established Cause to Convert This Chapter 11 Case.

11 U.S.C. 1112(b)(1)-(2) states:

> (b)(1)   Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause* unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2)   The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A)   there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B)   the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—
> (i)   for which there exists a reasonable justification for the act or omission; and
> (ii)   that will be cured within a reasonable period of time fixed by the court.[1]

"Under Bankruptcy Code § 1112(b), a court can dismiss a chapter 11 case or convert it to a case under chapter 7 'for cause' so long as it is in the best interests of both the creditors and the

---

[1] 11 U.S.C. § 1112(b) (emphasis added).

5

estate."[2]  As stated by the Tenth Circuit Court of Appeals, "[u]nder section 1112(b) of the Bankruptcy Code, a bankruptcy court has broad discretion to convert a Chapter 11 case to a Chapter 7 proceeding or to dismiss a case for several causes . . . ."[3]  A party seeking to convert a case must establish "cause" by a preponderance of the evidence.[4]  A non-exhaustive list of those causes is enumerated in Section 1112(b)(4).  The Motion to Convert argues for conversion based on only one of the sixteen enumerated "causes" – substantial or continuing loss to or diminution of the estate.  Below is a list of the other "causes" for conversion that are relevant in this case, and a brief explanation of the Debtor's compliance with such requirements (in *italics*):

> (4)  For purposes of this subsection, the term "cause" includes—
>
> (B)   gross mismanagement of the estate; *B.E. has not made any allegations of mismanagement of the Debtor's estate*.
>
> (E)   failure to comply with an order of the court; *the Debtor has complied with all Orders issued by this Court*.
>
> (F)   unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; *the Debtor is current on filing its monthly operating reports and current on all SEC filings*.
>
> (G)   failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; *the Debtor attended the 341 Meeting on June 16, 2016*.
>
> (H)   failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); *the Debtor has provide all information requested by the UST*.

---

[2]   *In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009).

[3]   *In re Preferred Door Company, Inc.*, 990 F.2d 547, 549 (10th Cir. 1993).

[4]   *In re Woodbrook Assocs.*, 19 F.3d 312, 317 (7th Cir. 1994).

    (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; *the Debtor is either current on or has obtained extensions to file all tax returns*.

    (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; *the Debtor's exclusive period to file a disclosure statement and proposed plan expires on September 20, 2016, and the Debtor has not requested any extension of exclusivity*.

    (K) failure to pay any fees or charges required under chapter 123 of title 28. . . . *the Debtor has paid its filing fees to the clerk and is current on payment of its quarterly fees to the UST*.[5]

The cases cited by B.E. are not binding and not relevant to the situation here, where the Debtor's asset sale closed after the Motion to Convert was filed, and the Debtor is moving expeditiously toward filing a disclosure statement and seeking consensual confirmation of a plan.

In *In re Brutsche*,[6] the court granted a motion to convert that was joined by numerous secured and unsecured creditors after the court had entered orders denying the debtor's use of cash collateral and granting stay relief because the debtor's real estate assets, none of which had been sold, were rapidly declining in value.[7] In *In re ARS Analytical, LLC*,[8] the court granted a motion to convert after the debtor filed a plan that failed to pay administrative claims and violated the absolute priority rule, and the debtor did not provide financial information to creditors.[9] In *In re Loop*, the United States Trustee sought conversion months after the debtor

---

[5]  11 U.S.C. § 1112(b)(4).

[6]  476 B.R. 298 (Bankr. D.N.M. 2012).

[7]  *Id*. at 300, 301, and 304.

[8]  433 B.R. 848 (Bankr. D.N.M. 2010).

[9]  *Id.* at 863–66.

had sold substantially all of its assets and tried in vain to negotiate a liquidating plan.[10]  Even though the *Loop* debtor's asset sale had closed months before the United States Trustee filed the conversion motion, the bankruptcy court still waited to rule on conversion and gave the debtor one last opportunity to seek confirmation of a liquidating plan.[11]  When it became clear that confirmation was impossible and the creditors' committee joined the United States Trustee, the bankruptcy court ordered conversion.[12]  In *FRGR*,[13] the court granted a motion to convert that was brought by the United States Trustee in a case where the debtor had no operating assets, no money, and an estate that was already administratively insolvent.[14]

From the inception of this Chapter 11 Case, the Debtor has been transparent about its intention to sell its assets through the Sale Motion and to expeditiously seek confirmation of a liquidating plan through which holders of allowed claims will be paid in accordance with their statutory priorities under the Bankruptcy Code.  Here, unlike the situation in every case cited to in the Motion to Convert, the Debtor's sale of assets to Scion closed last week, the Debtor has not tried in vain to prosecute an unconfirmable plan, this estate is not administratively insolvent, and, based on the Debtor's efforts to sell its assets, holders of allowed claims should receive a substantial recovery.  Therefore, B.E. has not established cause to convert this Chapter 11 Case.

---

[10]   *See Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 513-14 (8th Cir. 2004).

[11]   *Id.*

[12]   *Id.* at 514.

[13]   419 B.R. at 578.

[14]   419 B.R. at 578, 584-85.

**B. The Debtor has Not Experienced a Substantial or Continuing Loss to or Diminution of its Estate.**

The only argument B.E. makes to support conversion is that the estate has experienced a continuing loss, but a simple examination of the Debtor's monthly operating reports proves otherwise. To date, the Debtor has operated profitably in bankruptcy. In May 2016, the Debtor had a positive cash flow of $13,797.88.[15] In June 2016, the Debtor had a positive cash flow in the amount of $982,141.86, although $850,000 of this amount came from the buyer's bid deposit.[16] In July 2016, the Debtor had a positive cash flow in the amount of $35,636.81.[17]

The Debtor has incurred expenses to administer its Chapter 11 estate, to seek out higher and better offers for its assets, to seek Court-approval of the sale of its assets through a transaction that the buyer insisted be consummated in bankruptcy, and to consummate such sale, but those efforts have yielded a substantial recovery that will inure to the benefit of the Debtor's creditors. Any loss complained of by B.E. has resulted from the liquidation process, not from business operations, and such loss cannot be a basis to convert this Chapter 11 Case.[18]

**C. Conversion is Not in the Best Interests of Creditors**

Other than speculation about the contents of the Debtor's yet-to-be-filed plan,[19] B.E. provides no support for its conclusion that conversion is in the best interests of the Debtor's creditors or its estate. Conversion of this Chapter 11 Case, and appointment of a Chapter 7

---

[15]  *See* Docket No. 185 at p. 2.

[16]  *See* Docket No. 186 at p. 2.

[17]  *See* Docket No. 166 at p. 2.

[18]  *See In re Union County Wholesale Tobacco & Candy Co.*, 8 B.R. 439, 441 (Bankr. D.N.J. 1981) (denying motion to convert where loss and diminution of the estate was related to the liquidation of the debtor's assets).

[19]  *See* Motion to Convert at pp. 7-8.

9

trustee who will necessarily retain additional professionals, will delay payments to holders of allowed claims and will needlessly add another layer of administrative expenses. The interests of creditors will be better served by giving them the opportunity to participate in the plan process and vote on the Debtor's plan, instead of allowing a vocal minority to attempt to make decisions on their behalf.

## CONCLUSION

The Court should deny the Motion to Convert because B.E. has not established cause to convert this Chapter 11 Case and because conversion is not in the best interests of the Debtor's creditors or its estate.

DATED this 2nd day of September, 2016.

**DORSEY & WHITNEY LLP**

*/s/ Jeffrey M. Armington*
Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor in Possession, BSD Medical Corporation fka Perseon Corporation*

**CERTIFICATE OF SERVICE – BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on the 2nd day of September I electronically filed the foregoing **DEBTOR'S OBJECTION TO MOTION FOR ORDER CONVERTING CASE TO CHAPTER 7** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, as identified below, are registered CM/ECF uses and will be served through the CM/ECF system.

- Jeffrey M Armington    armington.jeff@dorsey.com, asmus.natasha@dorsey.com;ventrello.ashley@dorsey.com
- Matthew M. Boley    mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- Kenneth L. Cannon    kcannon@djplaw.com, khughes@djplaw.com
- Jeffrey Chubak    jchubak@samlegal.com
- David F. Crosby    dcrosby@nixonpeabody.com
- Anna W. Drake    drake@millertoone.com
- Matthew A. Gold    courts@argopartners.net
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- David H. Leigh    dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- John T. Morgan tr    john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- Penelope Parmes    Penelope.Parmes@troutmansanders.com
- E. Scott Savage    ssavage@sywlaw.com
- Sage M. Sigler    sage.sigler@alston.com
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov
- Steven T. Waterman    waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

                                              DORSEY & WHITNEY LLP

                                              */s/ Jeffrey M. Armington*