Michael Johnson (A7070)
David H. Leigh (A9433)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Fax: (801) 532-7534
Email: mjohnson@rqn.com
Email: dleigh@rqn.com

- and -

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI & MUNVES PC**
140 East 45th Street, 25th Floor
New York, New York 10017
Tel: (212) 490-4100
Fax: (212) 490-4208
Email: jchubak@samlegal.com

*Attorneys for B.E. Capital Management Fund LP*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka Perseon Corporation, | Chapter 11 |
| Debtor. | Honorable R. Kimball Mosier |

## REPLY IN FURTHER SUPPORT OF B.E. CAPITAL'S MOTION TO CONVERT

B.E. Capital Management Fund LP, a creditor and interested party, through counsel, respectfully submits this reply in further support of its motion to convert, and respectfully states:

## PRELIMINARY STATEMENT

1. It is undisputed that the Debtor has no reasonable likelihood of rehabilitation. Therefore, the question before this Court is a simple one: now that the Debtor has sold

substantially all of its assets, is it suffering continuing loss? The Debtor says no, pointing out that its pre-closing monthly operating reports ("MORs") reveal its collections from the petition date through July exceeded its expenses during such period. This argument, however, ignores the fact that the Debtor has now sold its business and all outstanding receivables which resulted in the foregoing revenues, so from and after closing it will not have any revenues to offset the administrative expenses it acknowledges it will continue to incur. Accordingly, cause exists under section 1112(b)(4)(A), and conversion is required under section 1112(b)(1).

## REPLY

**I. THE DEBTOR IS SUFFERING CONTINUING LOSS NOW THAT ITS SALE HAS CLOSED**

2. In its motion, B.E. Capital argued this case should be converted because the Debtor will inevitably be cash flow negative from and after the closing of its section 363 sale, given its continued accrual of administrative expenses. (Motion ¶¶1, 12-15.)

3. The Debtor does not dispute that it has accrued professional fees and expenses of well over $100,000/month. In fact, its amended May and June MORs confirmed it accrued nearly $200,000 in professional fees in just 37 days, and its July MOR states it accrued over $134,000 in professional fees that month. (Form 2-E.)[1]

---

[1] The Debtor also acknowledged it agreed to pay administrative expenses to Clinton Carnell, in the form of annual base salary ($30,000/month) and accrued postpetition, guaranteed bonus for 2016 ($76,438) on top of his travel expenses ($22,000 for July). (Debtor Obj. ¶8; July MOR, Form 2-E.) Wages are administrative expenses under Bankruptcy Code section 503(b)(1)(A)(i), and accrued post-petition, guaranteed bonus is likewise afforded administrative priority under *Isaac v. Temex Energy, Inc. (In re Amarex)*, 853 F.2d 1526, 1532 (10th Cir. 1988). The Debtor has now moved to reject Carnell's Employment Agreement, effective as of the petition date [ECF No. 202], and B.E. Capital was advised Carnell has been terminated today as well. Carnell's termination, in turn, triggered a $700,000 severance obligation under Section 6.3 of his Employment Agreement (annexed thereto), which in turn qualifies as both a "continuing" and "substantial" loss under section 1112(b)(4)(A). The retroactive relief sought by the Debtor would have no effect on the above-referenced administrative expenses (severance, base salary, guaranteed bonus, travel expenses) as under Bankruptcy Code section 502(g)(1), rejection only fixes the date for calculating damages and does not modify contractual obligations or payments made.

4.     The Debtor argues this Court should ignore accrual of the foregoing administrative expenses because prior to closing, it collected enough from business operations and receivables to offset its professional fee obligations.

5.     This argument fails, however, because in evaluating if cause exists, courts consider if any of the section 1112(b)(4) factors are presently satisfied, not whether any such factors were or were not satisfied in the past, as evidenced by the fact that the section 1112(b)(4) factors themselves are written in the present, not the past, tense. *See In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D. N.M. 2010) (measuring present value of projected future revenues ($0) against its expenses in concluding that the debtor was suffering "continuing loss"); *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (S.D.N.Y. 2007) (evaluating if cause under section 1112(b)(4)(B) (gross mismanagement) exists by "focus[ing] on the debtor's current management, not … past management"); *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) ("the focus is on the debtor's current activities, not [the] past"); 7 Collier on Bankruptcy ¶1112.04[5][a][i] (16th ed.) ("If the debtor is [not was] operating with a sustained negative cash flow … this fact is sufficient to support a finding that the debtor is experiencing a 'continuing loss'"). The Debtor's pre-closing cash flow from operations has no bearing on whether the Debtor is presently suffering continuing loss because the Debtor no longer has any business operations or receivables, all of which were sold to the stalking horse purchaser at closing.[2] Indeed, that is precisely why B.E. Capital waited until all conditions to closing were satisfied before filing its motion.

---

[2] Section 2.01 of the asset purchase agreement attached to the sale order provides for the transfer of "all of the assets, properties and rights of the Seller, to the extent that such assets, properties and rights exist as of the Closing Date [including] all accounts or notes receivable of the Business."

3

6. At the September 8, 2016 status conference, the Debtor represented that it is working on reducing administrative expenses on a go-forward basis. Notably, however, the Debtor does not dispute it will continue to incur administrative expenses, both pre- and post-confirmation, in substantial amounts. In fact, the Debtor represented it intends to seek Court approval of the employment of yet another professional (an accounting firm), despite the fact that it is experiencing negative cash flow with no sign of abatement.

7. That stakeholders need not wait until the Debtor accrued substantial post-sale administrative expenses before seeking conversion, as argued by the Debtor (Debtor Obj. pp.7-8), is evidenced by the fact that section 1112(b)(4)(A)'s first element is satisfied where a debtor incurred "substantial loss" or where it is suffering "continuing loss." If "continuing loss" were interpreted as requiring "substantial loss," the former term would be duplicative of the latter, a result at odds with basic principles of statutory interpretation. *See* Antonin Scalia & Bryan Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (Thomson West 2012) ("If possible, every word and every provision is to be given effect … None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence").[3]

8. Moreover, the Debtor's transparency about its plan to sell assets under section 363 is irrelevant to the instant motion. (Debtor Obj. p.8.) The estate should not have to continue paying administrative expenses just because the Debtor did not realize consummation of a section 363 sale left it vulnerable to the forced conversion of this case, as noted in *Loop Corp. v.*

---

[3] Even if "continuing loss" somehow meant "substantial loss," that element would be satisfied. (*See* note 1, *supra.*)

4

*United States Trustee*, 379 F.3d 511, 516 (8th Cir. 2004), regardless of whether the exclusive period for proposing a plan expired.[4]

9.  Finally, that B.E. Capital has not sought conversion for cause under section 1112(b)(4)(B)-(P) (Debtor Obj. pp.6-7) is of no matter, given the existence of cause under section 1112(b)(4)(A). As noted in *In re TCR of Denver, LLC*:

> The Court … concurs with the Tenth Circuit's analysis that where, as here, the introductory phrase to a statute [section 1112(b)(4)] uses the word "includes" supports a disjunctive reading of the subparts contained therein. This conclusion is also supported by the scant legislative history to section 1112(b)(4). It is clear that Congress amended section 1112(b) to make it broader, more strict as to debtors, and more encompassing. For example, the legislative history for section 1112(b) reflects that versions of this section leading to the enactment are entitled "Expanded Grounds for Dismissal or Conversion and Appointment of the Trustee." Congress could not have possibly intended to add additional elements constituting 'cause' and contemporaneously require that all the elements need be satisfied to dismiss a case if it intended expanded bases for dismissal of a case.

338 B.R. 494 (Bankr. D. Col. 2006) (citing *United States v. Munguia-Sanchez*, 365 F.3d 877, 880 (10th Cir. 2004)).

## II. CONVERSION IS MANDATORY UPON A DETERMINATION THE DEBTOR IS SUFFERING CONTINUING LOSS

10. In its motion, B.E. Capital argued conversion is mandatory upon a determination that both elements of section 1112(b)(4)(A) are satisfied. (Motion ¶¶1, 8.) In response, the Debtor and SunTrust Robinson Humphrey argue this Court has discretion to deny conversion. (Debtor Obj. p.6; SunTrust Obj. ¶¶13-14.)

---

[4] The Debtor does not dispute *Loop*'s conclusion, but instead suggests that this Court take a "wait and see" approach and "g[i]ve the debtor [the] opportunity to seek confirmation of a liquidating plan," as in *Loop*. (Debtor Obj. p.8.) That is not an option, given that BAPCPA amended section 1112(b) after *Loop* was decided by requiring that courts decide motions to dismiss within fifteen days of the hearing on the same.

5

11. However, pre-BAPCPA case law cited by the Debtor emphasizing the discretion afforded by section 1112(b) is irrelevant to the instant contested matter, given that the net effect of BAPCPA and the Bankruptcy Technical Corrections Act of 2010 was to modify section 1112(b)(1) as follows:

> Except as provided in **paragraph (2) and** subsection (c) ~~of this section~~, on request of a party in interest ~~or the United States trustee or bankruptcy administrator~~, and after notice and a hearing, the court ~~may~~ **shall** convert a case under this chapter to a case under chapter 7 ~~of this title~~ or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause~~, including~~ … **unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate**.[5]

12. By replacing the word "may" with "shall," Congress eliminated judicial discretion concerning the conversion determination upon a showing of cause under section 1112(b)(4)(A), which has been carved out from the exemption affording judicial discretion under section 1112(b)(2) where a reasonable likelihood exists that a debtor will confirm a plan. *In re Riverbend Community, LLC*, No. 11-11771, 2012 WL 1030340, at *3 n.6 (Bankr. D. Del. 2012) ("Congressional intent that 'shall' really does mean 'must' in the convert or dismiss provision is readily apparent. In 2005, Congress removed the word 'may' from Section 1112(b) and substituted 'shall' if a moving party establishes 'cause.' [BAPCPA citation.] Congress clearly intended to make conversion or dismissal mandatory upon proof of 'cause'"); 7 COLLIER ON BANKRUPTCY ¶1112.04[4] (16th ed.) ("the statute does not … provide unfettered discretion in determining whether cause exists. If one of the enumerated examples of cause set forth in

---

[5] A redlined copy of the Bankruptcy Code indicating the changes implemented by BAPCPA can be found at https://www.skadden.com/sites/default/files/publications/Publications1029_0.pdf. A copy of the 2010 act can be found at https://www.congress.gov/111/plaws/publ327/PLAW-111publ327.pdf.

section 1112(b)(4) is proven by the movant by a preponderance of the evidence, the court <u>must</u> find that movant has established cause").[6]

13. The decision to allow creditors to force conversion for cause under section 1112(b)(4)(A) was plainly not inadvertent, given the express carveout in section 1112(b)(2). Moreover, such carveout is eminently reasonable as it, *inter alia*, protects creditors targeted for unfair treatment by a debtor. For example, the structured dismissal which is the subject of *Czyzewski v. Jevic Holding Corp.* (Sup. Ct. Case No. 15-649), on appeal from *Official Comm. of Unsecured Creditors v. CIT Group/Business Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173 (3d Cir. 2015), never would have been implemented had the WARN Act claimants simply cross-moved to convert for cause under section 1112(b)(4)(A) in response to the *Jevic* debtors' motion for a structured dismissal.

14. Post-BAPCPA case law cited by SunTrust is likewise inapposite. Both cases it relies upon—*1031 Tax Group* and *In re Orbit Petroleum*—held the bankruptcy court had discretion to deny conversion only to the extent the movant sought conversion for cause <u>other than under section 1112(b)(4)(A)</u>. Thus, in the former case, Judge Martin Glenn held section 1112(b)(2) afforded him discretion to deny conversion for cause under section 1112(b)(4)(B) (gross mismanagement). 374 B.R. at 93. In the latter case, Judge Mark McFeeley held section 1112(b)(2) afforded him discretion to deny conversion for cause under section 1112(b)(4)(F) (failure to file monthly operating reports) and section 1112(b)(4)(K) (failure to pay quarterly

---

[6] Section 1112(b)'s construct is consistent with chapter 11's purpose, which is to permit liquidating debtors to sell their assets as a going concern, whether under a plan or pre-confirmation pursuant to section 363, so as to avoid a forced sale. *See, e.g., Case v. L.A. Lumber Prods. Co.*, 308 U.S. 106, 124 (1939) ("One of the purposes of § 77B [chapter 11 predecessor] was to avoid the consequences to debtors and creditors of foreclosures … and forced sales"). Once such sale has been consummated, though, there is little point in remaining in chapter 11. Indeed, despite having been invited to do so the Debtor has not articulated what its contemplated liquidating plan would accomplish that would not be achieved by conversion.

7

fees) and for reasons not enumerated in section 1112(b)(4) (*e.g.*, failure to pay secured claims). 395 B.R. 145, 148 (Bankr. D.N.M. 2008).[7]

15. Indeed, Judge Glenn expressly acknowledged he had <u>no</u> discretion to deny conversion for cause under section 1112(b)(4)(A). *1031 Tax Group*, 374 B.R. at 93 n.17 ("The exception to conversion under § 1112(b)(2) is inapplicable … because the creditors seek conversion based on the loss and diminution of estate assets and absence of a reasonable likelihood of rehabilitation").[8]

### III.  CONVERSION IS IN THE ESTATE'S BEST INTERESTS

16. Although conversion is mandatory upon a showing of cause under section 1112(b)(4)(A), B.E. Capital nevertheless argued that conversion is in the estate's best interests as well because the Debtor's plan would inevitably provide for the forfeiture of estate causes of action and directors' and officers' liability policy proceeds. (Motion ¶¶2, 19.)

17. The Debtor does not dispute it intends to release its directors and officers under its not-yet-filed plan, but instead argues B.E. Capital's motion should be denied because conversion would not be in the estate's best interest, as a chapter 7 trustee would need to retain

---

[7] The movants in both cases sought conversion for cause under section 1112(b)(4)(A), but those requests were denied because they had not established the absence of a reasonable likelihood of rehabilitation. *1031 Tax Group*, 374 B.R. at 93; *Orbit*, 395 B.R. at 148-49 (rejecting argument that reorganization plan that would recapitalize debtor did not qualify as a "rehabilitation"). Here, there is no dispute the Debtor cannot rehabilitate now that it sold substantially all of its assets. *See*, *e.g.*, In re BH S&B Holdings, LLC, 439 B.R. 342 (Bankr. S.D.N.Y. 2010) (also decided by Judge Glenn) ("the Debtors' intention to liquidate … demonstrates that there is no likelihood of rehabilitation").

[8] SunTrust also argues B.E. Capital's motion should be denied because conversion would prejudice its ability to collect "Sale Expenses." (SunTrust Obj. ¶¶15-17.) That is not true. To get paid its Sale Expenses SunTrust would need to file an application for the same (*id.* at ¶11), and the appointment of a chapter 7 trustee would have no bearing on the merits of that application. Regardless, there is no exception to the requirements of section 1112(b)(1) where an investment banker thinks it might be prejudiced by conversion.

professionals, and further, his/her appointment would delay payment to creditors. (Debtor Obj. pp.9-10.)

18. The Debtor's argument is wrong for several reasons.

19. First, the Debtor incorrectly presumes the best interests test in Bankruptcy Code section 1129(a)(7) applies to the instant question (whether this Court must convert this case). Under section 1129(a), that test is only relevant to the question of whether a plan proposed by a party in interest can be confirmed. No portion of section 1112(b) incorporates the best interests test by reference.

20. Second, conversion need not delay distributions or result in additional administrative expenses. A chapter 7 trustee could engage counsel on a contingency basis to investigate and pursue causes of action, make an initial distribution to creditors from sale proceeds, and make a subsequent distribution if/when the Debtor's insurance policy is monetized. Indeed, a chapter 7 trustee would have good reason to pursue this course, given that his/her statutory commission under Bankruptcy Code section 326 is not payable until a distribution has been made.

21. Third, even if the Debtor were to elect not to release its directors and officers under its contemplated plan, plan confirmation would nevertheless likely result in needless forfeiture of the Debtor's directors and officers' liability policy, a potentially valuable asset. *See*, *e.g.*, *Terry v. Fed. Ins. Co. (In re R.J. Reynolds-Patrick Co. Mem. Hosp.)*, 315 B.R. 674, 680-81 (Bankr. W.D. Va. 2003) (coverage for causes of action asserted by liquidating trustee unavailable under insured-vs.-insured exclusion because "[t]he [Liquidating] Trustee in this case is a mere assignee. His rights arise by virtue of provisions in the plan, not directly by operation of statute … In a case in which the debtor voluntarily transfers the causes of action to a third

9

party, there is a distinct possibility of collusion between the debtor and the directors and officers"); *Indian Harbor Ins. v. Zucker*, No. 14-cv-1017, 2016 WL 1253040, at *8 (W.D. Mich. March 31, 2016) (same); *Reliance Ins. Co. of Ill. v. Weis*, 148 B.R. 575, 582 (E.D. Mo. 1992); aff'd, 5 F.3d 532 (8th Cir. 1993) (same); *cf. Willson v. Vanderlick (In re Cent. La. Grain Coop. Inc.)*, 467 B.R. 390, 397 (Bankr. W.D. La. 2012) ("In [contrast], claims brought by a Chapter 11 or 7 trustee do not typically raise any danger of collusion.").

## CONCLUSION

B.E. Capital respectfully requests that this Court convert this case to one under chapter 7.

DATED this 9th day of September, 2016.

**RAY QUINNEY & NEBEKER P.C.**

/s/ Michael R. Johnson
Michael Johnson (A7070)
David H. Leigh (A9433)

- and -

Jeffrey Chubak (admitted *pro hac vice*)
**STORCH AMINI & MUNVES PC**

*Attorneys for B.E. Capital Management Fund LP*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of September, 2016, a true and correct copy of the foregoing *Reply in Further Support of B. E. Capital's Motion to Convert* was electronically filed with the Clerk of Court using the ECF system, and was served via e-mail as follows:

- **Jeffrey M Armington**  armington.jeff@dorsey.com, asmus.natasha@dorsey.com;ventrello.ashley@dorsey.com
- **Matthew M. Boley**  mboley@cohnekinghorn.com, jhasty@cohnekinghorn.com
- **Kenneth L. Cannon**  kcannon@djplaw.com, khughes@djplaw.com
- **Jeffrey Chubak**  jchubak@samlegal.com
- **David F. Crosby**  dcrosby@nixonpeabody.com
- **Anna W. Drake**  drake@millertoone.com
- **Michael R. Johnson**  mjohnson@rqn.com, docket@rqn.com;dburton@rqn.com
- **David H. Leigh**  dleigh@rqn.com, dburton@rqn.com;docket@rqn.com
- **John T. Morgan tr**  john.t.morgan@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Suzanne.Verhaal@usdoj.gov
- **Penelope Parmes**  Penelope.Parmes@troutmansanders.com
- **E. Scott Savage**  ssavage@sywlaw.com
- **Sage M. Sigler**  sage.sigler@alston.com
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Steven T. Waterman**  waterman.steven@dorsey.com, bingham.karen@dorsey.com;ventrello.ashley@dorsey.com

/s/ Dianne Burton

1386508