Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
          thomson.michael @dorsey.com
          armington.jeff@dorsey.com

*Attorneys for Debtor in Possession*
*BSD Medical Corporation fka Perseon Corporation*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>BSD MEDICAL CORPORATION fka PERSEON CORPORATION,<br><br>　　　　Debtor. | Case No. 16-24435<br><br>Chapter 11<br><br>Chief Judge R. Kimball Mosier |

---

## DEBTOR'S MOTION FOR ENTRY OF ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE MATERIALS; (III) APPROVING FORMS OF BALLOTS; (IV) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (V) SCHEDULING A CONFIRMATION HEARING AND (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES

---

BSD Medical Corporation fka Perseon Corporation ("BSD" or "Debtor"), the debtor in

possession in the above captioned bankruptcy case hereby submits this motion (the "Motion"),

pursuant to sections 105, 502, 1125, 1126, and 1128 of title 11 of the United States Code (the

"Bankruptcy Code"), and Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking entry of an Order: (a) approving the adequacy of

the *Disclosure Statement for Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code* (the

"Disclosure Statement"), a copy of which is attached hereto as **Exhibit A**, as it relates to the

*Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"),[1] a copy of which is

attached to the Disclosure Statement as Exhibit 1; (b) approving the solicitation materials and

other notices related to the Disclosure Statement and the Plan; (iii) approving the forms of

Ballots (as defined herein); (iv) establishing procedures for distributing the Solicitation Packages

(as defined herein), voting on the Plan and tabulating votes; (v) scheduling a hearing regarding

confirmation of the Plan, and (vi) establishing notice and objection procedures with respect to

confirmation of the Plan.   In support of this Motion, the Debtor respectfully represents as

follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On May 23, 2016 (the "Petition Date") the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of Utah (the "Court") thereby commencing the above-captioned "Chapter 11 Case."

---

[1]      Capitalized terms used herein but not defined shall have the meanings ascribed to them in
the Disclosure Statement or Plan, as applicable.

3.     No trustee, examiner, or official committee of unsecured creditors has been appointed in this case.  The Debtor is operating its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     A detailed discussion of the Debtor's history, description of its business and the events that led to its need for bankruptcy relief are set forth in the *Declaration of Clinton E. Carnell Jr. in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration").[2]

5.     On May 24, 2016, the Debtor filed *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6007: (I)(A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* [Docket No. 24] (the "Sale Motion").  The Sale Motion sought Court approval of a sale of substantially all of the Debtor's assets through an asset purchase agreement (the "APA") to MedLink Technologies, LLC, a wholly owned subsidiary of Scion Medical Technologies, LLC ("Scion"), for a total purchase price of $4,350,000.00, subject to higher and better offers at auction.

6.     On August 11, 2016, the Bankruptcy Court entered its *Order Authorizing Sale of Assets* [Docket No. 160] (the "Sale Order"), which authorized the Debtor's sale of assets to Scion pursuant to the APA.  Under the APA, the Debtor sold the name "Perseon Corporation" to

---

[2]     Docket No. 13.

3

Scion, and consequently, the Debtor has taken action with the Delaware Division of Corporations to change its name to BSD Medical Corporation.

7.      On August 22, 2016, the sale transaction contemplated under the APA closed and the Debtor received the $4.35 million purchase price, minus the $850,000 bid deposit, from Scion.

## ARGUMENT

### I.      The Debtor has Provided Adequate Notice of the Disclosure Statement Hearing

8.      Bankruptcy Rule 3017(a) requires the Debtor to provide not less than 28 days' notice of the Disclosure Statement Hearing to creditors and other parties in interest in accordance with Bankruptcy Rule 2002. Fed. R. Bankr. P. 3017(a); see also Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).

9.      Within five business days of the filing of this Motion, the Debtor will file and serve all known creditors and interest holders, as identified on the list of equity security holders filed in this Chapter 11 Case [Docket No. 3] and all other interest holders of which the Debtor has become aware since the filing date, with a notice of the Disclosure Statement Hearing (the "Disclosure Statement Hearing Notice"), which will identify (a) the date, time, and place of the Disclosure Statement Hearing, (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained, and (c) the deadline and procedures for filing objections to the approval of the Disclosure Statement.

10.     Accordingly, all parties in interest will have had at least 28 days' notice of the Disclosure Statement Hearing and the deadline to object to the Disclosure Statement in

compliance with Bankruptcy Rules 2002(b) and 3017(a). Accordingly, the Debtor requests that

the Court approve such notice as appropriate and in compliance with the requirements of the

Bankruptcy Rules.

## II.    The Disclosure Statement Contains Adequate Information and Should be Approved

### A.    *The "Adequate Information" Standard*

11.    Pursuant to section 1125(b) of the Bankruptcy Code, a plan proponent must

provide holders of impaired claims and interests entitled to vote with "adequate information"

regarding the proposed plan of reorganization. In that regard, section 1125(a)(1) of the

Bankruptcy Code provides:

> [A]dequate information" means information of a kind, and in
> sufficient detail, as far as is reasonably practicable in light of the
> nature and history of the debtor and the condition of the debtor's
> books and records . . . that would enable . . . a hypothetical investor
> of the relevant class to make an informed judgment about the plan .
> . . .

Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably

practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to

vote to accept or reject a plan of reorganization.[3] A disclosure statement "must clearly and

---

[3]    *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re A.H. Robins, Co.*, 880 F.2d 694, 696–97 (4th Cir. 1989) (affirming approval of a disclosure statement based on a finding that the statement used "terms that almost anyone could understand"); *In re Ferguson*, 474 B.R. 466, 470-71 (Bankr. D.S.C. 2012) (noting that a disclosure statement should contain "such information as will enable [a hypothetical reasonable investor] to evaluate for themselves what impact the information might have on their claims and the outcome of the case, and to decide for themselves what course of action to take.") (internal citations omitted).

succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[4]

12.     In examining the adequacy of the information contained in a disclosure statement, the bankruptcy court has broad discretion.[5] This grant of discretion was intended to facilitate effective reorganizations of debtors in a broad range of businesses and in the various circumstances that accompany chapter 11 cases.[6] As Congress observed, "[i]n reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest."[7]

13.     Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[8]

14.     To determine whether a disclosure statement contains adequate information, courts typically expect the following elements to be included in a disclosure statement, where

---

[4]     *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

[5]     *See A.H. Robins*, 880 F.2d at 696 ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court.") (internal citations omitted); *see also In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("what constitutes adequate information in any particular situation is determined on a case-by-case basis . . . , with the determination being largely within the discretion of the bankruptcy court.").

[6]     *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408–09 (1977).

[7]     *Id.* at 409.

[8]     *See Kirk v. Texaco, Inc.*, 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a). . . ."); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[t]he determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court." (*citing Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)).

applicable: (a) the events leading to the filing of a bankruptcy petition; (b) a description of the available assets and their values; (c) the anticipated future of the company; (d) the source of information stated in the disclosure statement; (e) a disclaimer; (f) the present condition of the debtor while in chapter 11; (g) the scheduled claims; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (j) the future management of the debtor; (k) the chapter 11 plan or a summary of it; (l) the estimated administrative expenses, including attorneys' and accountants' fees; (m) the collectability of accounts receivable; (n) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the plan; (o) information relevant to the risks posed to creditors under the plan; (p) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (q) litigation likely to arise in a nonbankruptcy context; (r) tax attributes of the debtor; and (s) the relationship of the debtor with affiliates.[9]

B.    *The Disclosure Statement Contains Adequate Information*

15.    The Debtor submits that the Disclosure Statement contains adequate information to allow the Debtor's stakeholders to make an informed decision in voting to accept or reject the Plan. The Disclosure Statement includes the following information, among other information: (a) a description and history of the Debtor's business; (b) biographical information for the Debtor's management team; (c) a description of the events leading to the Petition Date including the financial difficulties encountered by the Debtor; (d) descriptions of the significant events in the Chapter 11 Case; (e) a summary of the Plan, including projected distributions to all Claim

---

[9]    *See In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

and Interest Holders; (f) the releases, exculpations, and injunctive relief that the Debtor is seeking through Plan confirmation; (g) disclosures regarding the Disbursing Agent including how the Disbursing Agent will make Distributions; (h) a description of the statutory requirements that must be met by the Debtor to have the Plan confirmed; (i) a description of the voting procedures; (j) a description of risk factors and tax consequences for Holders; (k) a Liquidation Analysis comparing recoveries for Claim and Interest Holders under the Plan compared to the projected recoveries for Claim and Interest Holders in a chapter 7 liquidation; and (l) a description of the nature and extent of likely Claims against the Debtor's Estate, including administrative claims.  Accordingly, the Debtor submits that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and should be approved.

## III.   Solicitation and Notice Materials

   *A.   Solicitation Packages*

   16.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to Holders of claims and equity interests entitled to vote for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization. Specifically, Bankruptcy Rule 3017(d) provides, in relevant part, that:

> Upon approval of a disclosure statement—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee,
>
> (1) the plan or a court-approved summary of the plan;

(2) the disclosure statement approved by the court;

(3) notice of the time within which acceptances and rejections of the plan may be filed; and

(4) any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.  In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.[10]

17.    The Debtor proposes that the solicitation package distributed in this Chapter 11 Case include the following:

(i)    a cover letter describing the contents of the Solicitation Package;

(ii)    a CD-ROM containing: (i) the Disclosure Statement (with the Plan annexed thereto and other exhibits) and (ii) the Disclosure Statement Order (without exhibits), if cost efficient;

(iii)    the Confirmation Hearing Notice (as defined in the Disclosure Statement Order);

(iv)    a Ballot with a pre-addressed postage-paid envelope; and

(v)    such other materials as the Bankruptcy Court may direct.

18.    The Debtor proposes to distribute the Solicitation Packages (other than the Confirmation Hearing Notice, the Ballots, and the cover letter) to Holders of Claims and Interests entitled to vote on the Plan in CD-ROM format in the Debtor's discretion if there are significant cost savings and reduced production time.

---

[10]    Fed. R. Bankr. P. 3017(d).

19.     The Debtor expects that it will be able to complete the distribution of the Solicitation Packages no later than the date that is five (5) business days after the Bankruptcy Court's entry of the Disclosure Statement Order (the "Solicitation Date").

B.     *Notices of Non-Voting Status*

20.     Claims in Class 1 – Priority Claims and Class 2 – General Unsecured Claims are designated under the Plan as Unimpaired (collectively, the "Unimpaired Claims") and, therefore, are conclusively presumed to accept the Plan.[11]   Class 5 – Public Warrant Interests (the "Impaired Non-Voting Interests") will not receive any distribution under the Plan and therefore is conclusively presumed to reject the Plan.

21.     Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a summary of the plan shall not be mailed to any unimpaired class, notice that the class is designated in the plan as unimpaired and notice of the name and address of the person from whom the plan or summary of the plan and disclosure statement may be obtained upon request and at the plan proponent's expense, shall be mailed to members of the unimpaired class together with the notice of the time fixed for filing objections to and the hearing on confirmation.[12]

22.     Accordingly, in lieu of a Solicitation Package, the Debtor proposes to send to Holders of Unimpaired Claims a notice of non-voting status, substantially in the form attached hereto as **Exhibit B** (the "Unimpaired Class Non-Voting Notice"), which informs such Holders that their Claims will be unimpaired and how to obtain a copy of the Plan and Disclosure Statement from Debtor's counsel at no charge.

---

[11]     *See* 11 U.S.C. § 1126(f).

[12]     Fed. R. Bankr. P. 3017(d).

23.     As noted above, Holders of Impaired Non-Voting Interests will not receive any distribution under the Plan and, therefore, are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, the Debtor proposes to mail to known Holders of Claims and Interests in Class 5, a notice of non-voting status, substantially in the form attached hereto as **Exhibit C** ("<u>Impaired Class Non-Voting Notice</u>" and, together with the Unimpaired Class Non-Voting Notice, the "<u>Non-Voting Notices</u>").  The Impaired Class Non-Voting Notice explains to such Holders that their claim will be impaired and provides instructions for obtaining a copy of the Plan and Disclosure Statement from Debtor's counsel at no charge.

24.     The Debtor requests a determination by the Court that it is not required to distribute Solicitation Packages, Ballots, copies of the Disclosure Statement or Plan or any other notices (except for the Confirmation Hearing Notice) to Holders of Unimpaired Claims and to Holders of Impaired Non-Voting Claims and Interests.  The Debtor submits that the distribution to such Holders of the Non-Voting Notices satisfies the requirements of the Bankruptcy Code and Bankruptcy Rules.

## IV.     Approving Forms of Ballots

25.     Bankruptcy Rule 3017(d) requires the Debtor to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan."[13]  The classes of Interests entitled to vote under the Plan are: Class 3 – Common Stock Interests and Class 4 – Private Warrant Interests (collectively, the "<u>Voting Classes</u>"). The Debtor proposes to distribute to Interest Holders in the Voting Classes one or more ballots (the "<u>Ballots</u>") substantially in the forms attached hereto as **Exhibit D** and **Exhibit E**, as appropriate.

---

[13]     Fed. R. Bankr. P. 3017(d).

26.     The Ballots are based upon Official Form No. 314, but have been modified based on circumstances particular to this Chapter 11 Case.  For instance, each Ballot advises in bold and capitalized print that Interest Holders in the Voting Classes who (a) vote to accept or reject the Plan and (b) abstain or vote to reject the Plan and do not elect to opt out of the release provisions contained in Article VI.C of the Plan shall be deemed to have unconditionally, irrevocably, and forever released and discharged the Third Party Releasees from, inter alia, any and all Causes of Action except as otherwise specifically provided in the Plan.

27.     Also, Official Form No. 314 has been modified to advise Interest Holders in the Voting Classes that if no votes to accept or reject the Plan are received for a particular class that is entitled to vote on the Plan, such class shall be deemed to have voted to accept the Plan.

28.     The Ballots for the Voting Classes also reflect that voters must vote all of their Interests in such Classes consistently to either accept or reject the Plan.

**V.     Establishing Procedures for Distributing Notice Materials, and Voting on the Plan and Tabulating Votes.**

A.     *Distributing Notice Materials*

29.     The Debtor believes that it would be wasteful to distribute Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan or any other materials or notices (including any updates, supplements, amendments or modifications thereto) to addresses to which an undeliverable Disclosure Statement Hearing Notice was distributed. Therefore, the Debtor seeks to be excused, without any further order of the Court, from distributing Solicitation Packages, Non-Voting Notices, or any other similar materials to those entities listed at such addresses unless the Debtor is provided with accurate addresses for such entities before the date on which the Debtor begin distributing the relevant materials.

30.     The Debtor further anticipates that some of the Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan or any other similar materials or notices may be returned by the United States Postal Service as undeliverable.  Therefore, the Debtor requests a determination by the Court that it need not re-mail Solicitation Packages, Ballots, Non-Voting Notices, copies of the Disclosure Statement or Plan or any other similar materials or notices that were returned as undeliverable by the United States Postal Service unless the Debtor is provided with accurate addresses for such entities at least seven (7) calendar days prior to the Voting Deadline.

31.     The Debtor submits that it has shown good cause for implementing the proposed notice procedures set forth herein and that such notice procedures would satisfy the requirements of Bankruptcy Rule 3017(d) and all other applicable requirements

B.      *Establishing a Voting Record Date*

32.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes to confirm a plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the Disclosure Statement Order is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

33.     Accordingly, the Debtor requests that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) and establish **November 1, 2016 at 5:00 p.m**. (prevailing Mountain Time), the date of the hearing to consider approval of the Disclosure Statement, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims

and Interests are entitled to vote on the Plan, and which non-voting creditors and interest Holders are entitled to receive certain informational materials.[14]

      C.     *Establishing a Voting Deadline*

34.     Bankruptcy Rule 3017(c) provides that, in connection with or before approval of a disclosure statement, a court shall fix a time within which the holders of claims or equity security interests may accept or reject the relevant plan of reorganization. The Debtor anticipates completing the solicitation period within approximately 35 calendar days after entry of the Disclosure Statement Order.  Based on such schedule, the Debtor proposes that in order to be counted as a vote to accept or reject the Plan, any Ballot must be properly executed and completed and delivered to the Debtor's counsel so as to be actually received by the Debtor's counsel no later than **December 9, 2016 at 5:00 p.m.** (the "Voting Deadline").

      D.     *Voting Tabulation*

35.     Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan if the plan has been accepted by holders of such interests that hold at least two-thirds in the amount of such interests that voted on the plan.[15]

36.     The Debtor requests that (i) whenever a voter casts more than one Ballot voting the same Interest(s) before the Voting Deadline, the last properly completed Ballot received before the Voting Deadline be deemed to reflect the voter's intent and thus to supersede any prior Ballots, (ii) an Interest Holder with multiple Voting Class Interests within a particular

---

[14]    Establishing a Voting Record Date is solely for voting purposes.  It has no effect on who is entitled to receive distributions under the Plan.

[15]    11 U.S.C. § 1126(d).

Voting Class must vote all such Interests within such Voting Class either to accept or reject the Plan and may not split its votes.

37.    The Debtor further proposes that, without further order of the Court, except as otherwise set forth herein, the following Ballots not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

a.    any Ballot that is properly completed and executed and timely returned to Debtor's counsel, but does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and rejection of the Plan;

b.    any Ballot actually received by Debtor's counsel after the Voting Deadline, unless the Debtor shall have granted in writing (including by email or other informal means) an extension of the Voting Deadline for such Ballot;

c.    any Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

d.    any Ballot cast by a person or entity that does not hold a Voting Class Interest;

e.     any unsigned or non-originally signed Ballot; and

f.    any Ballot transmitted to Debtor's counsel by facsimile or other electronic means.

38.    Subject to any contrary order of the Bankruptcy Court, the Debtor reserves the right to reject any and all Ballots the acceptance of which, in the opinion of the Debtor, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules.

39.    Subject to any contrary order of the Court, the Debtor, in its sole discretion, reserves the right to waive any defect in any Ballot at any time, whether before or after the Voting Deadline, and without notice.

40.    None of the Debtor, the Debtor's counsel, or any other person or entity will be under any duty to provide notification of defects or irregularities in delivered Ballots, nor will

any of them incur any liability for failure to provide such notification. Rather, Debtor's counsel may disregard, with no further notice, defective Ballots.

41.     The Debtor believes that the foregoing procedures will provide for a fair and equitable voting process.

## VI.     Setting the Confirmation Hearing

42.     Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.[16]

43.     In accordance with Bankruptcy Rule 3017(c) and in view of the Debtor's proposed solicitation schedule outlined herein, the Debtor requests that a hearing on confirmation of the Plan (the "<u>Confirmation Hearing</u>") be set for **11:00 a.m. (prevailing Mountain Time) on December 20, 2016,** subject to the Court's calendar.  The Confirmation Hearing may be continued from time to time by the Court or the Debtor without further notice other than adjournments announced in open court or through a filing on the Court's docket. The proposed timing for the Confirmation Hearing is in compliance with the Bankruptcy Code and the Bankruptcy Rules and will enable the Debtor to pursue confirmation of the Plan in a timely fashion.

## VII.     Establishing Notice and Objection Procedures for Plan Confirmation

44.     In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtor proposes to provide to all Holders of Claims and Interests with a copy of a notice substantially in the form

---

[16]     Fed. R. Bankr. P. 3017(c).

attached hereto as **Exhibit F** (the "Confirmation Hearing Notice") setting forth (i) the date of approval of the Disclosure Statement, (ii) the Voting Record Date, (iii) the Voting Deadline, (iv) the time fixed for filing objections to confirmation of the Plan and (v) the time, date and place of the Confirmation Hearing.[17]

45.     Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice provides, and the Debtor requests that the Court direct that, objections to confirmation of the Plan must (i) be in writing, (ii) conform to the Bankruptcy Rules and the Local Rules, (iii) state the name and address of the objecting party and the amount and nature of such party's claim or interest, (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection, and (v) be filed, together with proof of service, with the Court electronically and served on the Debtor and the United States Trustee for the District of Utah **so as to be actually received on or before 4:00 p.m. (prevailing Mountain Time) on December 7, 2016**.

46.     The proposed timing for the filing and service of objections will afford the Court, the Debtor and other parties in interest sufficient time to consider any objections and/or proposed modifications to the Plan before the Confirmation Hearing.

---

[17]     The Confirmation Hearing Notice will be transmitted to Holders of Voting Class Interests as part of such Holder's Solicitation Package.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the Debtor the relief

requested herein.  The Debtor also requests such other relief as is just and proper.

DATED this 16th day of September, 2016.

**DORSEY & WHITNEY LLP**

*/s/ Jeffrey M. Armington*

Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor in Possession BSD Medical
Corporation fka Perseon Corporation*

# EXHIBIT A

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
Email:  waterman.steven@dorsey.com
         thomson.michael@dorsey.com
         armington.jeff@dorsey.com

*Attorneys for Debtor BSD Medical Corporation*
*fka Perseon Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## DISCLOSURE STATEMENT FOR DEBTOR'S PLAN PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

THE DEBTOR IS PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE.   NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE.   BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE IX

THE DEBTOR URGES EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND EACH PROPOSED TRANSACTION CONTEMPLATED BY THE PLAN. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTOR'S CHAPTER 11 CASE, AND CERTAIN DOCUMENTS RELATED TO THE PLAN, ATTACHED HERETO OR INCORPORATED BY REFERENCE HEREIN. ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THEY ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.   IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.   FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.   THE DEBTOR DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN, ATTACHED HERETO, OR INCORPORATED HEREIN BY REFERENCE IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTOR HAS PREPARED THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B), AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTOR RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTOR'S BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS.   ALTHOUGH THE DEBTOR BELIEVES THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTOR AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, THE DEBTOR MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR ASSUMPTIONS REGARDING THE DEBTOR'S BUSINESS. THE DEBTOR EXPRESSLY CAUTIONS READERS NOT TO PLACE UNDUE

RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND SHOULD NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE DEBTOR MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE DEBTOR IS MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO AND EXPRESSLY DISCLAIMS ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE.  HOLDERS OF CLAIMS AND INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THIS DISCLOSURE STATEMENT WAS FILED.  INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT.  THE DEBTOR RESERVES THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

THE DEBTOR HAS NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT.   THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTOR OR THE VALUE OF ITS PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN AND THE EFFECTIVE DATE OCCURS, THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED BY THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS AND INTERESTS THAT DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR THAT ARE NOT ENTITLED TO VOTE ON THE PLAN).

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "SEC") HAS NOT APPROVED OR DISAPPROVED THIS DISCLOSURE STATEMENT, NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.

# TABLE OF CONTENTS

**ARTICLE I.** EXECUTIVE SUMMARY.................................................................................9

    **A.**    Purpose and Effect of the Plan............................................................11

    **B.**    Treatment of Claims and Interests under the Plan ...............................12

    **C.**    Voting on the Plan ...............................................................................15

        1.    Holders of Claims and Interests Entitled to Vote on the Plan ..................15

    **D.**    Confirmation Hearing and Deadline for Objections to Confirmation ..................18

**ARTICLE II.** DESCRIPTION AND HISTORY OF THE BUSINESS .....................................19

    **A.**    Description of the Debtor's Business ...................................................19

    **B.**    Debtor's Management..........................................................................20

**ARTICLE III.** EVENTS LEADING TO THE PETITION DATE.................................................22

    **A.**    Failed Merger and Deteriorating Financial Condition..........................22

    **B.**    The Asset Purchase Agreement ..........................................................24

**ARTICLE IV.** THE CHAPTER 11 CASE AND CERTAIN SIGNIFICANT EVENTS ............25

    **A.**    First Day Motions ...............................................................................25

    **B.**    Sale Motion........................................................................................25

    **C.**    Retention of Professionals ..................................................................27

    **D.**    Motion to Convert..............................................................................28

    **E.**    Appeals ..............................................................................................28

    **F.**    Motion to Reject Carnell Contract......................................................29

**ARTICLE V.** SUMMARY OF THE PLAN ............................................................................29

    **A.**    Overview of the Plan ..........................................................................30

    **B.**    Classification and Treatment of Claims and Interests ..........................31

        1.    Treatment of Administrative Claims ...................................31

        2.    Treatment of Professional Fee Claims..................................33

3.     Summary of Claims and Interests ................................................................34

C.     Acceptance or Rejection of the Plan ...........................................................37

1.     Voting of Interests.........................................................................37

2.     Special Provision Governing Unimpaired Claims ....................................37

3.     Class Acceptance Requirement......................................................37

4.     Presumed Acceptance of Plan.......................................................38

5.     Presumed Rejection of Plan ..........................................................38

6.     Voting Classes; Presumed Acceptance by Non-Voting Classes...............38

7.     Confirmation Pursuant to Sections 1129(a) and 1129(b) of the
       Bankruptcy Code ......................................................................38

D.     Means of Implementation of the Plan ..........................................................39

1.     Sources of Consideration for Plan Distributions .......................................39

2.     General Settlement of Claims ........................................................39

3.     Effectuating Documents; Further Transactions ........................................39

4.     Preservation of Rights of Action....................................................39

5.     Wind Down and Dissolution of the Debtor ...............................................40

6.     Disbursing Agent ..........................................................................41

E.     Provisions Governing Distributions.............................................................42

1.     Timing and Calculation of Amounts to Be Distributed............................42

2.     Distributions and Payments Generally...............................................43

3.     Disputed Reserves.........................................................................43

4.     Delivery of Distributions ...............................................................44

5.     Time Bar to Cash Payments by Check ...............................................46

6.     Interest on Claims ..........................................................................46

F.     Disputed Claims and Interests ....................................................................46

1.     Resolution of Disputed Claims........................................................46

5

2.    Disallowance of Claims ................................................................49

3.    Amendments to Claims..................................................................49

G.    Settlement, Release, Injunction and Related Provisions........................50

1.    Discharge of Claims and Termination of Interests ....................50

2.    Debtor Release ..............................................................................51

3.    Third-Party Release .......................................................................53

4.    Exculpation ...................................................................................54

5.    Injunction ......................................................................................55

6.    Setoffs ...........................................................................................56

7.    Recoupment ...................................................................................57

H.    Conditions Precedent to Confirmation and Consummation of the Plan ...............57

1.    Conditions Precedent to the Effective Date ...............................57

2.    Effective Date ...............................................................................58

3.    Effect of Non-Occurrence of Conditions Precedent to the Effective
      Date ...............................................................................................58

I.    Modification, Revocation or Withdrawal of the Plan ...........................58

1.    Modification and Amendments......................................................58

2.    Effect of Confirmation on Modifications ....................................59

3.    Revocation or Withdrawal of the Plan..........................................59

J.    Retention of Jurisdiction by the Bankruptcy Court .............................59

K.    Miscellaneous ................................................................................62

1.    Immediate Binding Effect.............................................................62

2.    Payment of Statutory Fees ............................................................62

3.    Reservation of Rights....................................................................63

4.    Successors and Assigns.................................................................63

5.    Service of Documents ...................................................................63

6.      Term of Injunction or Stays .......................................................................63

7.      Entire Agreement .......................................................................................64

8.      Nonseverability of Plan Provisions............................................................64

**ARTICLE VI.** ADDITIONAL DISCLOSURES REGARDING THE DISBURSING
AGENT ...............................................................................................................65

   **A.**      Purpose of the Disbursing Agent ...........................................................65

   **B.**      Distribution; Withholding......................................................................65

   **C.**      Other Rights and Duties.........................................................................65

   **D.**      Exculpation; Indemnification.................................................................66

**ARTICLE VII.** STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE
PLAN ................................................................................................................66

   **A.**      The Confirmation Hearing......................................................................66

   **B.**      Confirmation Standards .........................................................................67

   **C.**      Best Interests Test .................................................................................68

        1.      Explanation of the Best Interests Test ......................................68

        2.      Liquidation Analysis of the Debtor...........................................70

        3.      Application of the Best Interests Test .......................................71

   **D.**      Financial Feasibility..............................................................................71

   **E.**      Acceptance by Impaired Classes ...........................................................71

   **F.**      Classification.........................................................................................72

**ARTICLE VIII.** VOTING PROCEDURES ...............................................................73

   **A.**      Who Is Entitled to Vote on the Plan?.....................................................74

   **B.**      Solicitation Packages for Holders of Class 3 and Class 4 Claims .........74

   **C.**      Voting Procedures.................................................................................75

   **D.**      Releases under the Plan .........................................................................76

**ARTICLE IX.** CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING ...............76

   **A.**      Certain Bankruptcy Considerations .......................................................76

1.      Parties in Interest May Object to the Plan's Classification of
Claims and Interests ...................................................................................76

2.      Failure to Satisfy Vote Requirements ........................................................77

3.      The Debtor May Not Be Able to Secure Confirmation of the Plan ...........77

4.      Nonconsensual Confirmation .....................................................................78

5.      Risk of Non-Occurrence of the Effective Date ..........................................79

6.      Contingencies Could Affect Votes to Accept or Reject the Plan ..............79

7.      The Actual Amount of Allowed Claims May Differ From the
Estimated Claims and Adversely Affect the Percentage Recovery
of Claims ....................................................................................................80

8.      Release, Injunction, and Exculpation Provisions May Not Be
Approved .....................................................................................................80

**ARTICLE X.** CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE
PLAN ......................................................................................................................80

**A.**      Introduction ........................................................................................................80

**B.**      Certain U.S. Federal Income Tax Consequences to the Debtor ...........................82

**C.**      Certain U.S. Federal Income Tax Consequences to the Holders of Allowed
Common Stock Interests and Allowed Private Warrant Interests ........................82

**ARTICLE XI.** RECOMMENDATION .....................................................................................84

## ARTICLE I.
## EXECUTIVE SUMMARY

BSD Medical Corporation fka Perseon Corporation ("BSD"), a Delaware corporation, as debtor and debtor in possession (the "Debtor") filed with the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") on May 23, 2016 (the "Petition Date"). The Debtor submits this disclosure statement (this "Disclosure Statement") in accordance with section 1125 of the Bankruptcy Code to provide information regarding the Debtor's Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code (as amended, supplemented, or modified from time to time, the "Plan"), dated September 16, 2016. A copy of the Plan is attached to this Disclosure Statement as **Exhibit 1** and incorporated herein by reference. All capitalized terms used but not otherwise defined in this Disclosure Statement have the meanings given to them in the Plan. The rules of interpretation set forth in Article I.B of the Plan govern the interpretation of this Disclosure Statement.

On [ • ], 2016, the Bankruptcy Court entered an order [Docket No. [ • ]] (the "Disclosure Statement Order") (a) approving this Disclosure Statement as containing adequate information, (b) approving, among other things, the dates, procedures, and forms applicable to the process of soliciting votes on, and providing notice of, the Plan and certain vote-tabulation procedures, (c) establishing the deadline for filing objections to the Plan, and (d) scheduling the hearing on confirmation of the Plan ("Confirmation"). The Disclosure Statement Order is attached hereto as **Exhibit 2**. A hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to be held before the Honorable Chief Judge R. Kimball Mosier at **11:00 a.m., prevailing Mountain Time, on December 20, 2016** in his courtroom, Room 369, of the

Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101 (the "Hearing").  Additional information with respect to Confirmation is provided in Article VII of this Disclosure Statement.

This Disclosure Statement contains, among other things, descriptions and summaries of certain provisions of, and financial transactions contemplated by, the Plan.  Certain provisions of the Plan (and the descriptions and summaries contained herein) remain the subject of continuing negotiations among the Debtor and various parties, have not been finally agreed upon, and may be modified.  The Debtor believes that the compromises and transactions contemplated by the Plan are fair and equitable, maximize the value of the Debtor's chapter 11 estate (the "Estate"), and provide the best recovery to claimholders.  Accordingly, the Debtor now seeks the Bankruptcy Court's approval of the Plan.  Before soliciting acceptances of a proposed chapter 11 plan, however, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of that chapter 11 plan. The Debtor submits this Disclosure Statement in accordance with such requirements.  This Disclosure Statement includes information about:

- the Debtor's corporate history and business operations (Article II hereof);

- events leading to the Chapter 11 Case (Article III hereof);

- material events in the Chapter 11 Case (Article IV hereof);

- the classification and treatment of Claims and Interests under the Plan, including who is entitled to vote and how to vote on the Plan (Article V hereof);

- releases contemplated by the Plan that are integral to the overall settlement of Claims and Interests pursuant to the Plan (Article V hereof);

- the appointment of a Disbursing Agent who will administer the distribution to Holders of Claims (Article VI hereof);

- the statutory requirements for confirming the Plan (Article VII hereof);

- certain risk factors holders of Claims and Interests should consider before voting to accept or reject the Plan (Article IX hereof); and

- certain United States federal income tax consequences of the Plan (Article X hereof).

In light of the foregoing, the Debtor believes this Disclosure Statement contains "adequate information" to enable a hypothetical reasonable investor to make an informed judgment about the Plan and complies with all aspects of section 1125 of the Bankruptcy Code. The Debtor further believes that the Plan is in the best interest of the Estate and, accordingly, recommends that you vote to accept the Plan.

**THIS EXECUTIVE SUMMARY ONLY PROVIDES A GENERAL OVERVIEW OF THIS DISCLOSURE STATEMENT AND THE MATERIAL TERMS OF, AND TRANSACTIONS PROPOSED BY, THE PLAN. THE EXECUTIVE SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED DISCUSSIONS APPEARING ELSEWHERE IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN. THE DEBTOR STRONGLY RECOMMENDS READING THE EXECUTIVE SUMMARY IN CONJUNCTION WITH THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN.**

### A. Purpose and Effect of the Plan

The commencement of a chapter 11 case creates an estate comprising all legal and equitable interests of the debtor as of the commencement date. The Bankruptcy Code provides

that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan is the principal objective of a chapter 11 case. A chapter 11 plan sets forth how a debtor will treat claims and equity interests, and a bankruptcy court's confirmation of a chapter 11 plan binds the debtor, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by the bankruptcy court pursuant to the terms of the confirmed plan, whether or not such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains any property under the plan. A chapter 11 plan divides claims and equity interests into "classes" according to their relative priority and other criteria.

## B.      Treatment of Claims and Interests under the Plan

The Plan organizes the Debtor's creditor and equity constituencies into groups called "Classes." For each Class, the Plan describes (a) the underlying "Claim" or "Equity Interest," (b) the recovery available to the holders of Claims or Equity Interests (collectively, "Holders") in that Class under the Plan, (c) whether the Class is "Impaired" under the Plan, meaning that each Holder will receive less than full value on account of its Claim or Equity Interest or that the rights of Holders under law will be altered in some way (such as receiving stock instead of holding a Claim), and (d) the form of consideration, if any, that such Holders will receive on account of their respective Claims or Equity Interests.

The table below provides a summary of the classification, treatment, and estimated recoveries of Claims and Equity Interests under the Plan. The table provides this information for illustrative purposes only, is subject to material change based on contingencies related to the

12

claims-reconciliation process, and is qualified in its entirety by reference to the provisions of the

Plan.  For a more detailed description of the treatment of Claims and Equity Interests under the

Plan, see Article V of this Disclosure Statement, entitled "Summary of the Plan."

| | Class | Treatment of Class of Claims or Interests | Estimated Aggregate Claims or Interests | Estimated Recovery |
|---|---|---|---|---|
| 1 | *Priority Claims* | Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Priority Claim, each Holder of an Allowed Priority Claim shall be paid in full in Cash in an amount equal to such Allowed Priority Claim by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date plus interest accrued on the amount of the Allowed Priority Claim at the Interest Rate from the Petition Date through the Effective Date. | $73,500[1] | 100% (plus 5% interest from the Petition Date through the Effective Date) |
| 2 | *General Unsecured Claims* | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall be paid in full in Cash in an amount equal to | $2,462,725 | 100% (plus 5% interest from the Petition Date through the Effective Date) |

---

[1]     The Governmental Bar Date is November 21, 2016 so the projected amount of Allowed Priority Claims is subject to fluctuation.

| | | | | |
|---|---|---|---|---|
| | | such Allowed General Unsecured Claim by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date plus interest accrued on the amount of the Allowed General Unsecured Claim at the Interest Rate from the Petition Date through the Effective Date. | | |
| 3 | *Common Stock Interests* | Except to the extent that a Holder of an Allowed Common Stock Interest agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Common Stock Interest, each Holder of an Allowed Common Stock Interest shall receive its Pro Rata Share of the Disbursing Agent Assets. | 9,766,323 Shares | $0.01-0.03 per share of Common Stock |
| 4 | *Private Warrant Interests* | Except to the extent that a Holder of an Allowed Private Warrant Interest agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Private Warrant Interest, each Holder of an Allowed Private Warrant Interest shall receive its Pro Rata Share of the Disbursing Agent Assets. | 744,882 Private Warrants | $0.01-0.03 per Private Warrant |
| 5 | *Public Warrant Interests* | On the Effective Date all Public Warrant Interests shall be cancelled without any distribution on account of such interests. | 13,512,500 Public Warrants | No Distribution |

C.      **Voting on the Plan**

　　　　*1.      Holders of Claims and Interests Entitled to Vote on the Plan*

This Disclosure Statement is being transmitted to certain Holders for the purpose of soliciting votes on the Plan and to others for informational purposes.  The purpose of this Disclosure Statement is to provide adequate information to enable holders of Interests that are entitled to vote on the Plan to make a reasonably informed decision with respect to the Plan prior to exercising their right to vote to accept or reject the Plan.

By the Disclosure Statement Order, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind and in sufficient and adequate detail to enable holders of Interests that are entitled to vote on the Plan to make informed judgments with respect to acceptance or rejection of the Plan.  The Bankruptcy Court's approval of this Disclosure Statement does not constitute either a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the Plan by the Bankruptcy Court.

All holders of Claims and Interests are encouraged to read this Disclosure Statement, its exhibits and the Plan filed prior to the Voting Deadline carefully and in their entirety before, if applicable, deciding to vote either to accept or to reject the Plan.  This Disclosure Statement contains important information about the Plan, considerations pertinent to acceptance or rejection of the Plan and developments concerning the Chapter 11 Case.

This Disclosure Statement, the other materials included in the Solicitation Package, and the Plan comprise the only documents authorized by the Bankruptcy Court to be used in connection with the solicitation of votes on the Plan.  No solicitation of votes may be made by

15

any person except after distribution of this Disclosure Statement is approved by the Bankruptcy Court.

Certain of the information contained in this Disclosure Statement is by its nature forward-looking and contains estimates, assumptions and projections that may be materially different from actual and future results.  Other events may occur subsequent to the date hereof that may have a material impact on the information contained in this Disclosure Statement.  Except as expressly stated, the Debtor does not intend to update the Disclosure Statement.  Thus, the Disclosure Statement will not reflect the impact of any subsequent events.  Further, the Debtor does not anticipate that any updates, amendments, or supplements to this Disclosure Statement will be distributed to reflect such occurrences.  Accordingly, the delivery of this Disclosure Statement does not imply that the information herein is correct or complete as of any time subsequent to the date hereof.

**EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPLES.**

In general, a holder of a claim or equity interest may vote to accept or reject a chapter 11 plan if (i) no party in interest has objected to such claim or interest (or the claim or interest has been allowed subsequent to any objection or estimated for voting purposes), (ii) the claim or interest is impaired by the plan, and (iii) the holder of such claim or interest will receive or retain property under the plan on account of such claim or interest.  The Holders of Interests in **Class 3 – Common Stock Interests** and **Class 4 – Private Warrant Interests** are entitled to vote on the Plan.

16

In general, if a claim is unimpaired under a chapter 11 plan, section 1126(f) of the Bankruptcy Code deems the holder of such claim to have accepted the plan and thus the holders of claims in such unimpaired classes are not entitled to vote on the plan.  Because **Class 1 – Priority Claims** and **Class 2 – General Unsecured Claims** are Unimpaired under the Plan, the holders of Claims in these Classes are not entitled to vote.

In general, if the holder of an impaired claim or impaired interest will not receive any distribution or retain any property under a chapter 11 plan in respect of such claim or interest, section 1126(g) of the Bankruptcy Code deems the holder of such claim or interest to have rejected the plan, and thus the holders of claims or interests in such classes are not entitled to vote on the plan.  The holders of **Class 5 – Public Warrant Interests** are thus conclusively presumed to have rejected the Plan and are therefore not entitled to vote.

If you are entitled to vote, after carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, please indicate your acceptance or rejection of the Plan by checking the appropriate box on the enclosed Ballot.  Please complete and sign your original Ballot (copies with non-original signatures will not be accepted) and return it in the envelope provided.  You must provide all of the information requested by the appropriate Ballot.  Failure to do so may result in disqualification of your vote on such Ballot.  Holders of Claims that fail to vote are not counted as either accepting or rejecting the Plan.

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOU MUST PROPERLY COMPLETE YOUR BALLOT AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT, AND THE DEBTOR MUST ACTUALLY RECEIVE THE BALLOT ON OR BEFORE DECEMBER 9, 2016, AT 5:00 P.M., (PREVAILING MOUNTAIN TIME), (THE "<u>VOTING DEADLINE</u>") BY U.S. MAIL OR OTHER HAND-DELIVERY SYSTEM AT THE FOLLOWING ADDRESS:**

Dorsey & Whitney LLP
Attn:  Jeffrey M. Armington
136 South Main St., Suite 1000
Salt Lake City, UT 84101-1685

**BALLOTS RECEIVED AFTER THE VOTING DEADLINE MAY NOT BE COUNTED.**

**D.     Confirmation Hearing and Deadline for Objections to Confirmation**

In accordance with section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Bankruptcy Court has scheduled the hearing to consider Confirmation (the "Confirmation Hearing") for **December 20, 2016, at 11:00 a.m.**, prevailing Mountain Time, before the Honorable Chief Judge R. Kimball Mosier, in his courtroom, Room 369, of the Frank E. Moss United States Courthouse 350 South Main Street, Salt Lake City, Utah 84101.  The Bankruptcy Court may adjourn the Confirmation Hearing from time to time (i) prior to the Confirmation Hearing by posting notice of the adjournment on the docket for the Chapter 11 Case and (ii) at the Confirmation Hearing without further notice except for a notice filed on the Bankruptcy Court's docket or an announcement of the adjournment date made at the Confirmation Hearing or at any subsequently adjourned Confirmation Hearing.

In accordance with the Disclosure Statement Order, any objection to Confirmation must be filed with the Bankruptcy Court and served on (a) counsel to the Debtor, Dorsey &Whitney LLP, 136 South Main St. Suite 1000, Salt Lake City, Utah 84101 Attn:  Steven T. Waterman, email: waterman.steven@dorsey.com; and (b) the Office of the United States Trustee for the District of Utah, 405 South Main St. #300, Salt Lake City, UT 84111 (collectively, the "Notice Parties") so as to be actually received on or before **4:00 p.m., prevailing Mountain Time, on December 7, 2016**.

**ARTICLE II.**
**DESCRIPTION AND HISTORY OF THE BUSINESS**

**A.      Description of the Debtor's Business**

The Debtor is a publicly traded medical technology developer and manufacturer that was organized as BSD Medical Corporation under Delaware law in 1986.   In February 2015, the Debtor changed its name to Perseon Corporation.   The Debtor developed, manufactured, marketed and serviced groundbreaking medical systems to treat cancer using heat therapy, including a microwave ablation system that employs precision-guided microwave energy to ablate diseased soft tissue.   The Debtor also developed extensive intellectual property and distributed its products in the United States, Europe, and Asia.

The Debtor developed technology and products for thermal ablation and hyperthermia cancer therapy through multiple techniques, including:

- Thermal ablation ablates (destroys) soft tissues at high temperatures through focused microwave energy;

- Superficial hyperthermia non-invasively treats cancerous tumors located within a few centimeters of the surface of the body, such as melanoma and recurrent breast cancer;

- Internal or interstitial hyperthermia treats tumors in combination with internal radiation therapy by inserting tiny microwave antennas that deliver hyperthermic microwave energy to tumors through the same catheters used to deliver radioactive materials, or "seeds," to tumors for radiation therapy.  This technique can be employed in treating prostate cancer, breast cancer, head and neck cancer as well as other cancer sites; and

19

- Deep hyperthermia non-invasively treats tumors located deep within the body.

## B.    Debtor's Management

The Debtor's Chapter 11 management team consists of highly capable professionals with extensive experience in the industry.  Information on the Debtor's management is as follows:

| Name | Biography |
| --- | --- |
| Timothy C. McQuay | Mr. McQuay has served as a director of the Debtor since February 2008 and currently serves as Chairman of the Board of Directors. He retired from his position as Managing Director – Investment Banking – with Noble Financial Capital Markets on December 31, 2015.  Prior to joining Noble Financial Capital Markets in November 2011, Mr. McQuay was a Managing Director – Investment Banking with B Riley & Co.  Prior to joining B Riley in September 2008, Mr. McQuay served for ten years as Managing Director – Investment Banking with A. G. Edwards & Sons, Inc., where he specialized in Healthcare, including medical technology, biotechnology and specialty pharmaceuticals.  He currently serves as a member of the Board of Directors of Superior Industries International, Inc.  Mr. McQuay holds an AB in Economics from Princeton University and an MBA from UCLA. |
| Clinton E. Carnell | Mr. Carnell was appointed a director of the Debtor by unanimous written consent of the Debtor's Board of Directors in November 2014. At that time, the Debtor also named Mr. Carnell as President and Chief Executive Officer.  Mr. Carnell served as President and Chief Executive Officer of the Debtor until September 8, 2016.  Mr. Carnell previously served as an advisor to Covidien plc, a publicly traded global health care leader, in the role of 'Executive in Residence.' From 2011 to 2014, Mr. Carnell served as Chairman, Chief Executive Officer and President of MyoScience, Inc., a commercial-stage medical device company which developed technology to target nerves for the treatment of pain, muscle disorders, aesthetic and other medical conditions. From 2005 to 2011 Mr. Carnell was the Chief Operating Officer of Solta Medical, Inc., a publicly held medical aesthetics company where he had responsibility for the Thermage and Fraxel Brands, led the integration of three strategic acquisitions and played a key role in Solta's IPO in 2006. During the period from 2002 to 2005 he was Vice President of Sales for the US Surgical Division of Bausch & Lomb  Prior to 2002, Mr. Carnell held management positions with healthcare companies including Gambro Healthcare, Johnson & Johnson and Charleston Renal Care, LLC. |
| Harold R. Wolcott | Mr. Wolcott has served as a director of the Debtor since April 2009. Mr. Wolcott also served as President of the Debtor from April 2009 until his successor was appointed in November 2014.  Mr. Wolcott has |

| | 45 years of experience managing and growing newly-formed venture capital financed corporations as well as multi-million dollar medical device businesses with international operations.  He has a wide range of experience in the areas of product research, product engineering, manufacturing and plant management, as well as expertise in all aspects of sales and marketing, acquisition/integration, and the sale of medical device businesses.  Prior to joining the Debtor, Mr. Wolcott served from 2006 through 2009 as President and Chief Operating Officer, and later, as Director of Dimicron Inc., a development stage medical company utilizing synthetic diamond for orthopedic applications.  From 2001 until 2005, Mr. Wolcott served as Chief Operating Officer and Director of Rubicon Medical, Inc., a company focusing on proprietary technology in embolic protection for interventional cardiology and interventional neurology. |
|---|---|
| Peter Vitulli | Mr. Vitulli, has served as a director of the Debtor since April  2015.  Mr. Vitulli has over 35 years of experience within the consumer products and healthcare industries in both large corporations and entrepreneurial-stage companies. Mr. Vitulli has served as the President and CEO of DNA Diagnostics Center ("DDC"), the world's largest provider of private DNA tests, since 2010.  Prior to joining DDC, Mr. Vitulli served as President and CEO of Sciona, Inc., a personal genetics company offering customized health and wellness solutions, and as President and CEO for Amerifit Nutrition, Inc., a nutritional supplement company focused on women's health. Earlier in his career, Mr. Vitulli managed start-up enterprises for various investor groups and was a general manager of the $1 billion North American Gatorade business for the former Quaker Oats Company. He holds an MBA from New York University's Leonard N. Stern School of Business and a BA from College of the Holy Cross. He is an "independent director" as such term is defined in the NASDAQ Stock Market Listing Standards. |
| Steven G. Stewart | Mr. Stewart has served as a director of the Debtor since 2006.  From July 1998 through June 2013, Mr. Stewart served in several management positions at Headwaters, Inc. (a New York Stock Exchange company), including Director of Financial Affairs, Treasurer, and as the Chief Financial Officer for approximately ten years before retiring on July 1, 2013.  Prior to joining Headwaters, Mr. Stewart served as a business assurance partner for PricewaterhouseCoopers LLP (formerly Coopers & Lybrand LLP), and as an audit partner with Ernst & Young (formerly Arthur Young), including service as the Salt Lake City office Director of High Technology and Entrepreneurial Services. |
| Damian E. Dupuy | Dr. Dupuy was appointed a Director in April 2011.  Dr. Dupuy has been a Professor of Diagnostic Imaging at the Warren Alpert Medical School of Brown University since 2005, and has served as Director, Tumor Ablation, at Rhode Island Hospital in Providence, RI since 2001. Dr. Dupuy, a fellow of the American College of Radiology, is a |

|  | pioneer in the growing field of image guided tumor ablation, whereby various types of thermal devices destroy tumors by direct placement through the skin under image guidance.  Dr. Dupuy is internationally known for his pioneering clinical work in treating cancer patients who suffer from tumors of the lung, liver, kidney, head and neck, pelvis, adrenal and skeleton. Dr. Dupuy has led two National Cancer Institute multi-center trials and currently is the Interventional Oncology Symposium Chair of the Radiological Society of North America. Dr. Dupuy, who is a graduate of the University of Massachusetts, Amherst, and the University of Massachusetts Medical School, has published widely on a variety of specialized medical issues and is the recipient of numerous post-graduate honors and awards, including an American College of Radiology Imaging Network Publications Merit Award in 2010. |
| --- | --- |

## ARTICLE III.
## EVENTS LEADING TO THE PETITION DATE

**A.    Failed Merger and Deteriorating Financial Condition**

Faced with decreasing revenues and beginning in roughly 2013, the Debtor began searching for either a strategic partner or an acquirer of its assets.

In February 2015, the Debtor engaged SunTrust Robinson Humphrey, Inc. ("SunTrust") as its investment banker to assist the debtor in identifying, evaluating and pursuing strategic alternatives, including a potential sale of the Debtor, with the intention of preserving or receiving the highest and best value for the Debtor's assets.

On April 1, 2015, the Debtor sold the assets associated with its hyperthermia cancer treatment systems to Pyrexar Medical, Inc. ("Pyrexar") in exchange for 19.9% of the Series A Preferred Shares of Pyrexar and a percentage of revenues that Pyrexar would receive from sales of the hyperthermia cancer treatment systems.

Following the sale of its hyperthermia cancer treatment systems to Pyrexar, the Debtor focused on creating and manufacturing thermal ablation technologies for treating cancer.

In July and August of 2015, the Debtor completed an offering of common stock and warrants which netted approximately $4.3 million in proceeds to the company.

During this period, beginning with SunTrust's retention, SunTrust and the Debtor commenced a marketing process designed to identify potential acquirers and/or strategic partners in order to maximize value for the Debtor's stakeholders. As part of that process, SunTrust and the Debtor compiled a list of parties likely to be interested in the Debtor or its assets and, from this list, SunTrust contacted approximately 30 entities during the 18 months prior to the Debtor's bankruptcy filing.

On October 26, 2015, the Debtor entered into an Agreement and Plan of Merger (the "Merger Agreement") with Galil Medical, Inc., a Delaware corporation ("Galil"), and Galil Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of Galil ("Merger Sub"), pursuant to which Merger Sub would, on the terms and subject to the conditions set forth therein, conduct a tender offer ("Offer") for (i) all of the Debtor's outstanding common stock and (ii) warrants to purchase common stock traded on The Nasdaq Capital Market and then merge with and into the Debtor (the "Merger"). Among the conditions to the Merger Agreement was that a minimum number of shares of common stock and public warrants would be tendered for purchase by the Merger Sub and that Galil would obtain sufficient financing to consummate the Offer.

Throughout the Merger process, the Debtor advised its shareholders that notwithstanding any cost cutting measures by the Debtor, if the Merger was not consummated, the Debtor may not be able to continue operations. The Merger Agreement required the Debtor to maintain its operations at a set level, which substantially outstripped the amount of revenue that the Debtor

23

was earning at that time. During this failed attempted Merger period, the Debtor lost approximately $500,000.00.

On December 22, 2015, Galil delivered a notice to the Debtor, electing to terminate the Merger Agreement because the Offer expired in accordance with its terms without Merger Sub having purchased any shares or public warrants pursuant to the Offer. The Debtor has retained any and all claims or causes of action that it may have against Galil.

On December 23, 2015, the Debtor terminated a substantial number of employees in order to materially reduce expenses.

After Galil terminated the Merger Agreement, the Debtor renewed its efforts to find either a strategic partner or a purchaser for its assets.

With the Debtor's financial condition deteriorating rapidly, in an effort to raise cash, on February 22, 2016, the Debtor sold the shares it obtained from Pyrexar back to Pyrexar for a $1,000,000 purchase price.

Prior to the Petition Date, the Debtor attempted to obtain additional financing outside of bankruptcy, but was unable to do so.

**B.      The Asset Purchase Agreement**

Following the termination of the merger agreement, the Debtor and SunTrust continued the marketing process and recommenced discussions with entities interested in the Debtor's assets. Through these discussions, the Debtor and SunTrust concluded that an offer received from MedLink Technologies, LLC ("MedLink") represented the highest and best opportunity to maximize the value of the Debtor's assets.

24

Over the course of approximately 5 weeks, the Debtor and MedLink engaged in active negotiations concerning the terms of an asset purchase agreement, including whether MedLink would be entitled to bid protections.

Eventually, the Debtor decided to enter into that certain Asset Purchase Agreement, dated as of May 17, 2016, by and between the Debtor as seller and MedLink as buyer (the "APA"). Pursuant to which, the Debtor agreed to file the Chapter 11 Case, and to seek Bankruptcy Court approval of the sale of substantially all of the Debtor's assets to MedLink or to any party making a higher and better offer at auction.

## ARTICLE IV.
## THE CHAPTER 11 CASE AND CERTAIN SIGNIFICANT EVENTS

A.    **First Day Motions**

On May 23, 2016, the Debtor filed its Schedules, Statement of Financial Affairs, and a series of "first day motions" seeking Bankruptcy Court authority to continue to pay the Debtor's employees, insurance providers, and taxes as necessary, and to allow the Debtor to continue to use its prepetition bank accounts. The Bankruptcy Court held a hearing on the Debtor's first day motions on May 24, 2016 and entered interim orders approving those motions. On June 15, 2016, the Bankruptcy Court entered final orders approving the relief requested in the first day motions.

B.    **Sale Motion**

On May 24, 2016, the Debtor filed *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6006 (I)(a) Authorizing Entry into and Assumption of Asset Purchase Agreement, (b) Authorizing Bid Protections, (c) Authorizing Bidding Procedures and Auction, and (d) Scheduling Sale Hearing and*

*Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* [Docket No. 24] (the "Sale Motion").  Through the Sale Motion, the Debtor sought Bankruptcy Court authorization and approval of the sale of substantially all of the Debtor's assets to MedLink, a wholly owned subsidiary of Scion Medical Technologies, LLC ("Scion") for $4.35 million pursuant to the APA, a copy of which was attached to the Sale Motion as Exhibit A.

The Debtor sought Bankruptcy Court approval of the APA through a two-step process. First, the Debtor sought approval of certain bidding procedures and bidding protections for MedLink as the stalking horse bidder, and that the Bankruptcy Court set a bid deadline and an auction date for parties other than MedLink to submit competing bids for the Debtor's assets.

On June 21, 2016, the Bankruptcy Court entered its *Order (a) Authorizing Assumption of Asset Purchase Agreement, (b) Authorizing Bid Protections, (c) Authorizing Bidding Procedures and Auction, and (d) Scheduling Sale Hearing and Approving Notice Thereof* [Docket No. 56] (the "Bidding Procedures Order").  The Bidding Procedures Order authorized the Debtor to assume the APA, set a July 11, 2016 deadline for parties to object to the asset sale, set a July 21, 2016 deadline for parties to submit a higher and better bid for the Debtor's assets, set an auction for July 25, 2016, and established bidding procedures for the auction.

No competing bids were received by the Debtor prior to the bid deadline and the Debtor sought approval of the sale of its assets to Scion, to which MedLink assigned all of its rights under the APA, at the July 26, 2016, Bankruptcy Court hearing to approve the asset sale.  The Debtor continued the hearing on the Sale Motion to August 11, 2016, to give the Debtor an

opportunity to resolve issues related to its assumption of the Debtor's manufacturing agreement with CEA Technologies, Inc.

On August 11, 2016, the Bankruptcy Court entered its *Order Authorizing Sale of Assets* [Docket No. 160] (the "Sale Order"), which authorized the Debtor's sale of assets to Scion pursuant to the APA. Under the APA, the Debtor sold the name "Perseon Corporation" to Scion, and consequently, the Debtor has taken action with the Delaware Division of Corporations to change its name to BSD Medical Corporation.

On August 22, 2016, the sale transaction contemplated under the APA closed and the Debtor received the $4.35 million purchase price, minus the $850,000 bid deposit, from Scion.

**C.     Retention of Professionals**

The Bankruptcy Court approved of the Debtor's retention of various professionals to assist the Debtor with its sale efforts and to operate the Debtor's business throughout the duration of this Chapter 11 Case. Each of the professionals is listed below with a description of such professional's role and the docket number of the Order approving such retention:

- Dorsey & Whitney, LLP – Debtor's counsel [Docket No. 150];[2]

- SunTrust Robinson Humphrey, Inc. – Debtor's investment banker in connection with the sale process [Docket No. 147];

- David Green – Debtor's Chief Restructuring Consultant [Docket No. 128];[3]

- Tanner, LLC – Debtor's tax accountant [Docket No. 90];

- Nixon Peabody LLP – intellectual property counsel for the Debtor [Docket No. 149];

---

[2]     B.E. Capital Management Fund, L.P. ("B.E.") has filed an appeal of this Order with the Bankruptcy Appellate Panel of the Tenth Circuit Court of Appeals.

[3]     Mr. Green's employment with the Debtor terminated on September 9, 2016.

- Riley Astill – accountant for the Debtor [Docket No. 89]; and

- Rocky Mountain Advisory, LLC – accountant for the Debtor in connection with Plan process, motion to employ scheduled to be heard on October 25, 2016.

**D.    Motion to Convert**

On August 12, 2016, B.E., an entity which has purchased several claims from the Debtor's trade creditors, filed a *Motion for Order Converting Case to Chapter 7* [Docket No. 162] (the "Motion to Convert").  In the Motion to Convert, B.E. argues that the Bankruptcy Court should convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code to avoid the incurrence of additional expenses.

On September 2, 2016, the Debtor filed its objection to the Motion to Convert [Docket No. 198], and on September 9, 2016, B.E. filed a reply in support of the Motion to Convert [Docket No. 204].

The Motion to Convert is currently scheduled to be heard by the Bankruptcy Court on September 20, 2016.

**E.    Appeals**

On August 16, 2016, B.E. filed an appeal of the Bankruptcy Court's *Order Granting Debtor's Motion for Entry of an Order Authorizing Debtor to Reinstate Salary Pursuant to Debtor's Employment Agreement with Clinton E. Carnell Jr.* [Docket No. 148] (the "Salary Reinstatement Order") with the Bankruptcy Appellate Panel of the Tenth Circuit Court of Appeals.  On September 15, 2016, the Debtor filed an election to have B.E.'s appeal of the Salary Reinstatement Order heard in the United States District Court for the District of Utah.

On August 17, 2016, B.E. filed an appeal of the Bankruptcy Court's *Order Granting Application of the Debtor for Entry of an Order Authorizing the Retention and Employment of Dorsey & Whitney LLP as Counsel for the Debtor in Possession* [Docket No. 150] (the "Attorney Retention Order") with the Bankruptcy Appellate Panel of the Tenth Circuit Court of Appeals.   On September 15, 2016, the Debtor filed an election to have B.E.'s appeal of the Attorney Retention Order heard in the United States District Court for the District of Utah.

### F.      Motion to Reject Carnell Contract

On September 8, 2016, the Debtor filed *Debtor's Motion for Entry of an Order Authorizing Rejection of Clinton E. Carnell Employment Agreement* [Docket No. 202] (the "Carnell Rejection Motion").   Through the Carnell Rejection Motion, the Debtor seeks Bankruptcy Court authority to reject the Debtor's contract with its former CEO and President, effective as of the Petition Date in order to reduce administrative expenses in this Chapter 11 Case.  The Carnell Rejection Motion is scheduled to be heard on October 25, 2016.

### ARTICLE V.
### SUMMARY OF THE PLAN

The Debtor believes that (a) through the Plan, holders of Allowed Claims will obtain a recovery from the Debtor's estate equal to or greater than the recovery that they would receive if the Chapter 11 Case were converted to a case under chapter 7 of the Bankruptcy Code and (b) consummation of the Plan will maximize the recovery for Creditors.

The Plan is attached to this Disclosure Statement as **Exhibit 1** and is incorporated herein by reference.

## A.    Overview of the Plan

The consummation of a plan is the principal objective of a chapter 11 case.  A plan sets forth the means for satisfying claims against, and interests in, a debtor.  Confirmation of a plan makes the plan binding upon the debtor and any creditor of, or equity holder in, the debtor, whether or not such creditor or equity holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan.  Subject to certain limited exceptions and other than as provided in the plan itself or the confirmation order, a confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefor the obligations specified under the confirmed plan.

A chapter 11 plan may specify that the legal, contractual, and equitable rights of the holders of claims or interests in certain classes are to remain unaltered by the plan.  Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to accept the plan.  Accordingly, a debtor need not solicit votes from the holders of claims or interests in such classes.  A chapter 11 plan may also specify that certain classes will not receive any distribution of property or retain any claim against a debtor.  Such classes are deemed not to accept the plan and, therefore, need not be solicited to vote to accept or reject the plan.  Any classes that are receiving a distribution of property under the plan but are not unimpaired will be solicited to vote to accept or reject the plan.

Prior to soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding the plan.  To satisfy the requirements of section 1125 of the Bankruptcy

Code, the Debtor is submitting this Disclosure Statement to Holders of Claims against the Debtor

who are entitled to vote to accept or reject the Plan.

THE REMAINDER OF THIS ARTICLE PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTATION OF THE PLAN AND THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, INCLUDING ANY SUPPLEMENTS AND SCHEDULES THERETO AND DEFINITIONS THEREIN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN THE DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENT OF SUCH TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN.

**B.**    **Classification and Treatment of Claims and Interests**

The Debtor believes that the Plan provides the best and most prompt possible recovery to

Holders of Claims and Interests. Under the Plan, Claims against, and Interests in, the Debtor are

divided into different Classes. Under the Bankruptcy Code, claims and equity interests are

classified beyond mere "creditors" or "shareholders" because such entities may hold claims or

equity interests in more than one class. If the Plan is confirmed by the Bankruptcy Court and

consummated, on the Effective Date or as soon as reasonably practicable thereafter (but subject

to Article VII of the Plan), the Debtor will make distributions in respect of certain Classes of

Claims and Interests as provided in the Plan.

*1.    Treatment of Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the

Debtor to the extent an Allowed Administrative Claim has not already been paid in full or

otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Administrative Claim

31

will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim either: (a) if such Administrative Claim is Allowed as of the Effective Date, as soon as reasonably practicable thereafter but in no event later than thirty days after the Effective Date; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor's Estate in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided by Article II.B of the Plan, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

2.  *Treatment of Professional Fee Claims*

i.  Final Fee Applications

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Debtor and the United States Trustee, and parties requesting notice in this Chapter 11 Case, no later than the first Business Day that is forty-five days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

ii.  Professional Fee Escrow Account

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate, but the remaining balance after payment of all Professional Fees shall vest in the Disbursing Agent Assets after all Professional Fee Claims allowed by the Bankruptcy Court have been irrevocably paid in full.  The Professional Fee Escrow Account shall be held in trust for the Professionals and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full.  Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account in any way.

iii.  Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees

33

and expenses related to implementation of the Plan and Consummation incurred by the Debtor as applicable.   Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Debtor may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

> 3.      *Summary of Claims and Interests*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests in or against the Debtor for all purposes, including, without express or implied limitation, voting, confirmation and distribution, pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.   A Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and will be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.   A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.   Except as otherwise specifically provided for in the Plan, the Confirmation Order or other order of the Bankruptcy Court, or required by applicable non-bankruptcy law, in no event will any Holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such Holder's Claim.   In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims of the kinds specified in sections 507(a)(2)

and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II of the Plan.

    a.    <u>Class 1 - Priority Claims</u>

    (i)    Classification:  Class 1 consists of Priority Claims.

    (ii)    Treatment:  Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Priority Claim, each Holder of an Allowed Priority Claim shall be paid in full in Cash in an amount equal to such Allowed Priority Claim by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date plus interest accrued on the amount of the Allowed Priority Claim at the Interest Rate from the Petition Date through the Effective Date.

    (iii)    Voting:  Class 1 is Unimpaired, and Holders of Class 1 Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Priority Claims are not entitled to vote to accept or reject the Plan.

    b.    <u>Class 2 – General Unsecured Claims</u>

    (i)    Classification:  Class 2 consists of General Unsecured Claims.

    (ii)    Treatment:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General

35

Unsecured Claim shall be paid in full in Cash in an amount equal to such Allowed

General Unsecured Claim by the Debtor on the Effective Date or by the

Disbursing Agent after the Effective Date plus interest accrued on the amount of

the Allowed General Unsecured Claim at the Interest Rate from the Petition Date

through the Effective Date.

(iii)     Voting:  Class 2 is Unimpaired, and Holders of Class 2 General

Unsecured Claims are conclusively presumed to have accepted the Plan pursuant

to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 General

Unsecured Claims are not entitled to vote to accept or reject the Plan.

c.      Class 3 – Common Stock Interests

(i)      Classification:  Class 3 consists of Common Stock Interests.

(ii)      Treatment:  Except to the extent that a Holder of an Allowed

Common Stock Interest agrees to a less favorable treatment, in exchange for full

and final satisfaction, settlement, release, and compromise of and in exchange for

each Allowed Common Stock Interest, each Holder of an Allowed Common

Stock Interest shall receive its Pro Rata Share of the Disbursing Agent Assets.

(iii)      Voting:  Class 3 is Impaired under the Plan.  Holders of Allowed

Common Stock Interests are entitled to vote to accept or reject the Plan.

d.      Class 4 – Private Warrant Interests

(i)      Classification:  Class 4 consists of Private Warrant Interests.

(ii)      Treatment:  Except to the extent that a Holder of an Allowed

Private Warrant Interest agrees to a less favorable treatment, in exchange for full

36

and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Private Warrant Interest, each Holder of an Allowed Private Warrant Interest shall receive its Pro Rata Share of the Disbursing Agent Assets.

(iii)     Voting:  Class 4 is Impaired under the Plan.  Holders of Allowed Private Warrant Interests are entitled to vote to accept or reject the Plan.

e.     <u>Class 5 – Public Warrant Interests</u>

(i)     Classification:  Class 5 consists of Public Warrant Interests.

(ii)     Treatment:  On the Effective Date all Public Warrant Interests shall be cancelled without any distribution on account of such interests.

(iii)     Voting:  Class 5 is Impaired under the Plan.  Holders of Public Warrant Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

## C.     Acceptance or Rejection of the Plan

1.     *Voting of Interests*

Each Holder of a Class 3 – Common Stock Interest or Class 4 – Private Warrant Interest as of the Voting Record Date will be entitled to vote to accept or reject the Plan as provided in the Disclosure Statement Order or any other order of the Bankruptcy Court.

2.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

3.     *Class Acceptance Requirement*

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of Holders of such Claims that have voted on the Plan.  A Class of Equity Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests in such Class.

4.      *Presumed Acceptance of Plan*

Class 1 – Priority Claims and Class 2 – General Unsecured Claims are Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and the votes of such Holders are not solicited.

5.      *Presumed Rejection of Plan*

Class 5 – Public Warrant Interests will not receive any distribution under the Plan on account of such Public Warrant Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, the Holders of Public Warrant Interests in such Class are conclusively presumed to have rejected the Plan and the votes of such Holders will not be solicited.

6.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Equity Interests in such Class.

7.      *Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code is not applicable because there is no Class of Impaired Claims under the Plan.  However, if the Bankruptcy Court determines that any Class of Claims under the Plan is Impaired, the Debtor shall seek Confirmation of the Plan pursuant to

section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity

Interests.  The Debtor reserves the right to modify the Plan in accordance with Article VIII of the

Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code

requires modification.

**D.      Means of Implementation of the Plan**

   *1.      Sources of Consideration for Plan Distributions*

All amounts necessary for the Debtor (on the Effective Date) or the Disbursing Agent,

(after the Effective Date), as applicable, to make payments or distributions pursuant to this Plan

shall be obtained from, among other things, the Cash raised or held by the Debtor.

   *2.      General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in

consideration for the classification, distributions, releases, and other benefits provided under the

Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise

and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

   *3.      Effectuating Documents; Further Transactions*

On and after the Effective Date, the Disbursing Agent is authorized to and may issue,

execute, deliver, file, or record such contracts, releases, and other agreements or documents and

take such actions as may be necessary or appropriate to effectuate, implement, and further

evidence the terms and conditions of the Plan without the need for any approvals, authorization,

or consents except for those expressly required pursuant to the Plan.

   *4.      Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such

Causes of Action have been expressly released, sold or otherwise transferred, the Disbursing

39

Agent shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Disbursing Agent's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Disbursing Agent may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtor's estate. No Entity may rely on the absence of a specific reference in the Plan, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, or the Disbursing Agent, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor has released, sold, or otherwise transferred to any Person or Entity on or prior to the Effective Date, the Debtor or the Disbursing Agent, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, sold or otherwise transferred, compromised, or settled in the Plan or a Bankruptcy Court order, the Disbursing Agent expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

5.     *Wind Down and Dissolution of the Debtor*

On and after the Effective Date, the Disbursing Agent will implement and oversee the Wind Down pursuant to any provision of the Plan and any applicable orders of the Bankruptcy Court, and the Disbursing Agent shall have the power and authority to take any action necessary

to wind down and dissolve the Debtor, including (a) filing a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of the Debtor under Delaware law; (b) completing and filing all final or otherwise required federal, state, and local tax returns for the Debtor, and (c) taking such other actions as the Disbursing Agent may determine to be necessary or desirable to carry out the purposes of this Plan. Notwithstanding anything herein to the contrary, the Disbursing Agent will make, or cause to be made, all distributions under the Plan other than those distributions made by the Debtor on the Effective Date.

6.      *Disbursing Agent*

Before or on the Effective Date, the Disbursing Agent shall be designated by the Debtor, for the purposes of conducting the Wind Down and shall succeed to such powers as would have been applicable to the Debtor's officers, directors, and shareholders, and the Debtor shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Disbursing Agent pursuant to the Confirmation Order.  All property of the Estate not distributed to the Holders of Claims or Equity Interests on the Effective Date shall be managed and distributed by the Disbursing Agent and shall be held in the name of the Debtor free and clear of all Claims and Equity Interests except for rights to such distributions provided to Holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.  Any and all reasonable and documented costs and expenses incurred by the Disbursing Agent in connection with the Wind Down, the Professional Fee Escrow Account, and any distributions to Holders of Allowed Claims and Allowed Interests, shall be paid from the Disbursing Agent Assets.  The Disbursing

41

Agent shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Disbursing Agent Agreement.

**E.      Provisions Governing Distributions**

*1.      Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest against the Debtor shall receive the full amount of the distributions and payments that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Debtor or Disbursing Agent, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article V of the Plan.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim.

42

2.      *Distributions and Payments Generally*

All distributions and payments under the Plan that are to be made on the Effective Date, if any, shall be made by the Debtor and payments made after the Effective Date shall be made by the Disbursing Agent.

3.      *Disputed Reserves*

On the Effective Date, after making all Distributions required to be made on such date under the Plan, the Disbursing Agent shall establish a separate Disputed Reserve for Disputed Claims, each of which Disputed Reserves shall be administered by the Disbursing Agent.  The Disbursing Agent shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article V of the Plan) with respect to each Disputed Claim.

The Disbursing Agent shall hold property in the Disputed Reserves in trust for the benefit of the Holders of Claims and Interests ultimately determined to be Allowed.  Each Disputed Reserve shall be closed and extinguished by the Disbursing Agent when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Reserve, all Cash held in that Disputed Reserve shall revest in the Disbursing Agent Assets.  All funds or other property that vest or revest in the Disbursing Agent Assets pursuant to this paragraph shall be (a) used to pay the fees and expenses of the Disbursing Agent as and to the extent set forth in the Disbursing Agent Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Interests.

43

*4.*     *Delivery of Distributions*

a.     <u>General Provisions; Undeliverable Distributions</u>

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim or proofs of Interest Filed by such Holder or (b) the last known address of such Holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Disbursing Agent may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Disbursing Agent deems appropriate, but no Distribution to any such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made to the holder without interest beyond any interest provided for in the Plan. Amounts in respect of any undeliverable Distributions made by the Disbursing Agent shall be returned to, and held in trust by, the Disbursing Agent until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in Article V.D.3 of the Plan. The Disbursing Agent shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Disbursing Agent Agreement.

b.      Minimum Distributions

Notwithstanding anything herein to the contrary, if a Distribution to be made to a Holder of an Allowed Claim or Allowed Interest on the Effective Date or any subsequent date for Distributions would be less than the Minimum Distribution Threshold, $25.00 or less in the aggregate at the time of such Distribution, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Disbursing Agent no later than twenty (20) days after the Effective Date.  If the Holder of an Allowed Claim or Allowed Interest with an Allowed amount below the Minimum Distribution Threshold does not make a request for Distribution with the Disbursing Agent within twenty (20) days after the Effective Date, the Disbursing Agent will segregate the amount of the proposed Distribution into an account, the proceeds of which will be donated to "and Justice for all" after all Distributions have been made.

c.      Unclaimed Property

Except with respect to property not Distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Disbursing Agent Assets, and the Claims or Interests with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of the applicable period, the claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or Allowed Interest. All funds or other property that vests or revests in the Disbursing Agent Assets pursuant to this Article shall be distributed by the Disbursing Agent to the other Holders of

45

Allowed Claims and Allowed Interests in accordance with the provisions of the Plan or the Disbursing Agent Agreement.

     *5.*      *Time Bar to Cash Payments by Check*

Checks issued by the Disbursing Agent on account of Allowed Claims or Allowed Interests shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to Article IV of the Plan shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim or Allowed Interest to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof.  After that date, all claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in the Disbursing Agent Assets as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article IV.D.3 of the Plan.

     *6.*      *Interest on Claims*

Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Effective Date on any Claim.

**F.**     **Disputed Claims and Interests**

     *1.*      *Resolution of Disputed Claims*

          a.     <u>Allowance of Claims</u>

On or after the Effective Date, the Disbursing Agent shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any

Claim deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

b.     Prosecution of Objections to Claims

The Debtor prior to and on the Effective Date or the Disbursing Agent after the Effective Date shall have authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise.

c.     Estimation of Claims

Prior to and on the Effective Date, the Debtor, and after the Effective Date, the Disbursing Agent may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Disbursing Agent have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but

that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Disbursing Agent may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before twenty-one days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

          d.      <u>Expungement or Adjustment of Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Debtor or the Disbursing Agent and any Claim that has been amended may be adjusted thereon by the Debtor or the Disbursing Agent in both cases without a Claims objection

having to be Filed and without any further notice to or action, order or approval of the

Bankruptcy Court.

e.      Deadline to File Objections to Claims

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

2.      *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Disbursing

Agent under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the

Disbursing Agent allege is a transferee of a transfer that is avoidable under section 522(f),

522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the

Entity, on the one hand, and the Debtor or the Disbursing Agent on the other hand, agree or the

Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to

turnover any property or monies under any of the aforementioned sections of the Bankruptcy

Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in

such agreement or Final Order.

EXCEPT AS OTHERWISE AGREED BY THE DEBTOR ANY AND ALL PROOFS OF
CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED
DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY
FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE BANKRUPTCY
COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS
ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS
DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

3.      *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior

authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be

deemed disallowed and expunged without any further notice to or action, order or approval of the

Bankruptcy Court.

**G.      Settlement, Release, Injunction and Related Provisions**

*1.      Discharge of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except

as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement

or document created pursuant to this Plan, the distributions, rights, and treatment that are

provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the

Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever,

including any interest accrued on Claims or Equity Interests from and after the Petition Date,

whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and

Equity Interests in, the Debtor or any of its assets or properties, regardless of whether any

property shall have been distributed or retained pursuant to the Plan on account of such Claims

and Equity Interests, including demands, liabilities, and Causes of Action that arose before the

Effective Date, any liability to the extent such Claims or Equity Interests relate to services

performed by employees of the Debtor prior to the Effective Date and that arise from a

termination of employment, any contingent or non-contingent liability on account of

representations or warranties issued on or before the Effective Date, and all debts of the kind

specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or

not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or

deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon

such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or

(3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtor with

respect to any Claim or Interest that existed immediately prior to or on account of the filing of

the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Disbursing Agent may compromise and settle Claims against the Debtor and its Estate and Causes of Action against other Entities.

2.    *Debtor Release*

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided herein, or in any contract, instrument, or other agreement or document created pursuant to this Plan, for good and valuable consideration, on and after the Effective Date, the Debtor and its Estate shall release each Released Party, and each Released Party shall be deemed released and discharged by the Debtor and its Estate, from**

51

any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, bad faith, or gross negligence, each solely to the extent determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the Debtor Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute

the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor or its Estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

      3.     *Third-Party Release*

As of the Effective Date, except as otherwise provided in the Plan, or in any contract, instrument or other agreement or document created pursuant to this Plan, the Releasing Parties shall release the Debtor, its Estate, and the Released Parties shall be deemed released, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments, or other

documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Releasee that constitutes willful misconduct, bad faith, or gross negligence Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third- Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

4.    *Exculpation*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, no Exculpated Party shall have or incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting,

54

**preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Chapter 11 Case or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct.**

     5.    *Injunction*

**Except as otherwise expressly provided in the Plan or for obligations required to be paid pursuant to the Plan, or Confirmation Order, all Entities who have held, hold, or may hold claims, interests, or Liens that have been discharged pursuant to Article VI.A, released pursuant to Article VI.B or Article VI.C, or are subject to exculpation pursuant to Article VI.D are, to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined, from and after the Effective Date, from taking any of the following actions against, the Debtor, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment,**

**award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan**.

       6.     *Setoffs*

      Except as otherwise expressly provided for in the Plan or in any court order, the Debtor or the Disbursing Agent, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may (but shall not be required to) set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or its Estate may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been

otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, that, neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor of any such claims, rights, and Causes of Action that the Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff right.

7.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

**H.    Conditions Precedent to Confirmation and Consummation of the Plan**

1.    *Conditions Precedent to the Effective Date*

Consummation of the Plan will not occur unless each of the following conditions has been satisfied:

(a)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor, and such Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal; and

(b)    The Disbursing Agent shall have been appointed, and the Debtor shall have executed and delivered the Disbursing Agent Agreement.

57

2.      *Effective Date*

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article VII.A of the Plan have been satisfied.  "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

3.      *Effect of Non-Occurrence of Conditions Precedent to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## I.      Modification, Revocation or Withdrawal of the Plan

1.      *Modification and Amendments*

Subject to the limitations contained herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or

supplement shall be considered a modification of the Plan and shall be made in accordance with Article VIII of the Plan.

2.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

3.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then:   (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor.

**J.      Retention of Jurisdiction by the Bankruptcy Court**

On and after the Effective Date, the Bankruptcy Court will retain jurisdiction of the Chapter 11 Case and all matters arising out of and related to the Chapter 11 Case including jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, or unsecured status, or amount of any Claim or Interest, including the resolution

of any request for payment of any Administrative Claim and the resolution of any and all objections to the status, priority, amount, or allowance of Claims or Interests;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

(d)    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(e)    adjudicate, decide, or resolve any and all matters related to Causes of Action;.

(f)    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan;

(g)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(i)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other

provisions contained in Article VI of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(j)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(k)      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any other agreement or document created in connection with the Plan or the Disclosure Statement;

(l)      adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

(m)      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(n)      determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(o)      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(p)      hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment, regardless of whether such termination occurred prior to or after the Effective Date;

(q)     enforce all orders previously entered by the Bankruptcy Court;

(r)     hear any other matter not inconsistent with the Bankruptcy Code;

(s)     enter an order concluding or closing the Chapter 11 Case; and

(t)     enforce the injunction, release, and exculpation provisions set forth in Article VI of the Plan.

## K.     Miscellaneous

### 1.     *Immediate Binding Effect*

Subject to Article VII.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Disbursing Agent, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order.   All Claims and debts shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

### 2.     *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Disbursing Agent (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

3.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.   Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

4.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

5.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

DORSEY & WHITNEY LLP
Attn:  Steven T. Waterman
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101

6.      *Term of Injunction or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force

and effect until the Effective Date.   All injunctions or stays contained in the Plan or the

Confirmation Order shall remain in full force and effect in accordance with their terms.

7.      *Entire Agreement*

Except as otherwise provided herein or therein, the Plan supersede all previous and

contemporaneous negotiations, promises, covenants, agreements, understandings, and

representations on such subjects, all of which have become merged and integrated into this Plan.

8.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy

Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter

and interpret such term or provision to make it valid or enforceable to the maximum extent

practicable, consistent with the original purpose of the term or provision held to be invalid, void,

or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and

provisions of the Plan will remain in full force and effect and will in no way be affected,

impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order

shall constitute a judicial determination and shall provide that each term and provision of the

Plan, as it may have been altered or interpreted in accordance with the foregoing, is:   (1) valid

and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified

without the Debtor's consent; and (3) nonseverable and mutually dependent.

**ARTICLE VI.**
**ADDITIONAL DISCLOSURES REGARDING THE DISBURSING AGENT**

**A.      Purpose of the Disbursing Agent**

The Disbursing Agent will be retained for the primary purpose of prosecuting any Causes of Action, disbursing the Disbursing Agent Assets, and winding down the Debtor's Estate.

**B.      Distribution; Withholding**

Notwithstanding anything in the Plan to the contrary, the Disbursing Agent will make, or cause to be made, all Distributions under the Plan and the Disbursing Agent Agreement other than (a) those Distributions made by the Debtor on the Effective Date and (b) distributions from the Professional Fee Escrow Account in accordance with Article II.C of the Plan.

The Disbursing Agent may withhold from amounts distributable to any Entity any and all amounts, determined in the Disbursing Agent's sole discretion, required by the Plan, or applicable law, regulation, rule, ruling, directive, or other governmental requirement.

**C.      Other Rights and Duties**

In addition to the Disbursing Agent's rights and duties with respect to making distributions, on and after the Effective Date, the Disbursing Agent will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

Any and all rights to conduct investigations with respect to Causes of Action or claims not released by the Debtor shall vest with the Disbursing Agent as if neither the Confirmation Date nor the Effective Date had occurred.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Disbursing Agent.

**D.      Exculpation; Indemnification**

The Disbursing Agent, professionals retained by the Disbursing Agent, and representatives of each of the foregoing will be exculpated and indemnified pursuant to the terms of the Disbursing Agent Agreement.

<div align="center">

**ARTICLE VII.**
**STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN**

</div>

The following is a brief summary of the Plan Confirmation process.  Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or consult their own attorneys.

**A.      The Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a Confirmation hearing.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

THE BANKRUPTCY COURT HAS SCHEDULED THE CONFIRMATION HEARING FOR DECEMBER 20, 2016 AT 11:00 A.M. (PREVAILING MOUNTAIN TIME) BEFORE THE HONORABLE CHIEF JUDGE R. KIMBALL MOSIER, IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH, IN HIS COURTROOM, ROOM 369, OF THE FRANK E. MOSS UNITED STATES COURTHOUSE, 350 SOUTH MAIN STREET, SALT LAKE CITY, UTAH 84101.  THE CONFIRMATION HEARING MAY BE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT (i) PRIOR TO THE CONFIRMATION HEARING BY POSTING NOTICE OF SAME ON THE DOCKET FOR THE CHAPTER 11 CASE AND (ii) AT THE CONFIRMATION HEARING WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT OF THE ADJOURNED DATE MADE AT THE CONFIRMATION HEARING OR ANY ADJOURNMENT THEREOF. OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE FILED AND SERVED ON OR BEFORE DECEMBER 7, 2016 AT 4:00 P.M.  (PREVAILING MOUNTAIN TIME) IN ACCORDANCE WITH THE CONFIRMATION HEARING NOTICE.  UNLESS OBJECTIONS TO CONFIRMATION ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE APPROVAL ORDER, THE CONFIRMATION HEARING NOTICE AND THE VOTING PROCEDURES, THEY WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

**B.      Confirmation Standards**

To confirm the Plan, the Bankruptcy Court must find that the requirements of section 1129 of the Bankruptcy Code have been satisfied.  The Debtor believes that section 1129 has been satisfied because, among other things:

(a)      the Plan complies with the applicable provisions of the Bankruptcy Code;

(b)      the Debtor, as Plan proponent, has complied with the applicable provisions of the Bankruptcy Code;

(c)      the Plan has been proposed in good faith and not by any means forbidden by law;

(d)      any payment made or promised under the Plan for services or for costs and expenses of or in connection with the Chapter 11 Case, or in connection with the Plan, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable;

(e)      with respect to each Class of Impaired Claims or Interests, either each Holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code (see Article VII.C below);

(f)      each Class of Claims or Interests has either accepted the Plan or is not Impaired under the Plan, or the Plan can be confirmed without the approval of such Class pursuant to section 1129(b) of the Bankruptcy Code;

(g)    except to the extent that the Holder of a particular Claim has agreed or will agree to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims will be paid in full in Cash on the Effective Date;

(h)    except to the extent that a Holder of an Allowed Priority Claim has agreed to a different treatment of such Claim, each such Holder shall receive Cash in an amount equal to the Allowed amount of such Claim, or treatment in any other manner so that such Claim shall otherwise be rendered Unimpaired, on or as soon as reasonably practicable after the Effective Date or the date such Claim becomes Allowed; and

(i)    all fees payable under section 1930 of title 28 of the United States Code will be paid as of the Effective Date.

## C.    Best Interests Test

### 1.    *Explanation of the Best Interests Test*

Pursuant to section 1129(a)(7) of the Bankruptcy Code, Confirmation requires that, with respect to each Class of Impaired Claims or Interests, each Holder of a Claim or Interest in such Class either (a) accept the Plan or (b) receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code (this latter clause is often called the "Best Interests Test").

To determine the probable distribution to Holders of Claims and Interests in each Impaired Class if the Debtor were liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a chapter 7 liquidation.

The Debtor's liquidation value would consist primarily of the Cash held by the Debtor at the time of the conversion to a chapter 7 liquidation and the proceeds resulting from the sale of the Debtor's remaining assets by a chapter 7 trustee.  The gross Cash available for distribution would be reduced by the costs and expenses of the chapter 7 liquidation and any additional Administrative Claims that might arise as a result of the chapter 7 case.  Costs and expenses incurred as a result of the chapter 7 liquidation would further include, among other things, the fees payable to a chapter 7 trustee in bankruptcy and the fees payable to attorneys and other professionals engaged by such trustee.  Such Administrative Claims and other Administrative Claims that might arise in a liquidation case or result from the pending Chapter 11 Case, such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay prepetition Claims and Interests.  The Debtor believes that the administrative expenses of a chapter 7 liquidation will be greater than the chapter 11 administrative expenses required to confirm the Plan and make distributions to creditors.

To determine if the Plan is in the best interests of each Impaired Class, the present value of the distributions from the proceeds of a liquidation of the Debtor's remaining assets, after subtracting the amounts attributable to the costs, expenses and Administrative Claims associated with a chapter 7 liquidation, must be compared with the value offered to such Impaired Classes under the Plan.  If the hypothetical liquidation distribution to Holders of Claims or Interests in any Impaired Class is greater than the distributions to be received by such parties under the Plan, then the Plan is not in the best interests of the Holders of Claims or Interests in such Impaired Class.

2.      *Liquidation Analysis of the Debtor*

Amounts that Holders of Claims and Interests in Impaired Classes would receive in a hypothetical chapter 7 liquidation are discussed in the liquidation analysis of the Debtor prepared by the Debtor's management with the assistance of its advisors (the "Liquidation Analysis"), which is attached hereto as **Exhibit 3**.

As described in the Liquidation Analysis, the Debtor developed the Liquidation Analysis based on the Debtor's cash on hand and remaining asset values, the estimated Allowed amounts of Claims and Interests, the estimated expenses incurred by the Debtor to confirm the Plan, and the estimated costs that the Debtor's estate would incur in a chapter 7 liquidation including the chapter 7 trustee fees and fees incurred by professionals retained by the chapter 7 trustee.  The recoveries may change based on further refinements of Allowed Claims and Allowed Interests, as the Debtor's claim objection and reconciliation process continues.

The Liquidation Analysis is solely for the purposes of (i) providing "adequate information" under section 1125 of the Bankruptcy Code to enable the Holders of Claims and Interests entitled to vote under the Plan to make an informed judgment about the Plan and (ii) providing the Bankruptcy Court with appropriate support for the satisfaction of the "Best Interests Test" pursuant to section 1129(a)(7) of the Bankruptcy Code, and should not be used or relied upon for any other purpose, including the purchase or sale of securities of, or Claims or Interests in, the Debtor.

In deciding whether to vote to accept or reject the Plan, Holders of Claims must make their own determinations as to the reasonableness of any assumptions underlying the Liquidation Analysis and the reliability of the Liquidation Analysis.

3.      *Application of the Best Interests Test*

The Debtor believes that the Plan meets the Best Interests Test because conversion of the

Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code will decrease recoveries for

Holders of Claims based on the fees payable to a chapter 7 trustee and the fees payable to

attorneys and other professionals engaged by such trustee.  Further, converting this case to a case

under chapter 7 would significantly delay payments to Holders of Claims while the chapter 7

trustee learned the Debtor's business, investigated potential avoidable transfers, and investigated

the merits of individual Claims.  Accordingly, the Debtor believes that conversion of the Chapter

11 Case to a case under chapter 7 will increase costs without providing any benefit to Holders of

Allowed Claims and Allowed Interests and will delay payments to such Claim and Interest

Holders.

**D.      Financial Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to confirmation of a

chapter 11 plan, that a bankruptcy court find that such confirmation is not likely to be followed

by the liquidation of the debtor or the need for further financial reorganization, unless such

liquidation is contemplated by the plan.  Here, the Plan contemplates a liquidation of the

Debtor's Assets and payment of all amounts to the Debtor's Claim and Interest Holders.

Accordingly, the Plan meets the "feasibility" standard.

**E.      Acceptance by Impaired Classes**

The Bankruptcy Code also requires, as a condition to confirmation of a chapter 11 plan,

that each impaired class of claims or interests accept the plan.  A class of claims or interests that

is unimpaired under the plan is deemed to have accepted the plan and, therefore, solicitation of

acceptances with respect to such class is not required.  A class is impaired unless the plan

71

(i) leaves unaltered the legal, equitable and contractual rights to which the claim or interest entitles the holder of such claim or interest or (ii) cures any default, reinstates the original terms of the obligation, and does not otherwise alter the legal, equitable, or contractual rights to which the claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of the Plan by an Impaired Class of Claims as acceptance by Holders of at least two-thirds in dollar amount and more than one-half in number of Claims in that Class; only those Holders that are eligible to vote and that actually vote to accept or reject the Plan are counted for purposes of determining whether these dollar and number thresholds are met.  Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number that actually vote cast their ballots in favor of acceptance.  Under section 1126(d) of the Bankruptcy Code, a Class of Interests has accepted the Plan if Holders of such Interests holding at least two-thirds in amount that actually vote have voted to accept the Plan.  Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

## F.    Classification

The Bankruptcy Code requires that, for purposes of treatment and voting, a chapter 11 plan divide the different claims (excluding administrative claims) against, and equity interests in, a debtor into separate classes based upon their legal nature.  Pursuant to section 1122 of the Bankruptcy Code, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Debtor believes that the Plan classifies all Claims and Interests in compliance with the provisions of the Bankruptcy Code because valid business, factual and legal reasons exist for separately

classifying the various Classes of Claims and Interests created under the Plan.  Accordingly, the

classification of Claims and Interests in the Plan complies with section 1122 of the Bankruptcy

Code.

## ARTICLE VIII.
## VOTING PROCEDURES

The Bankruptcy Court can confirm the Plan only if it determines that the Plan complies

with the technical requirements of chapter 11 of the Bankruptcy Code.  One of these technical

requirements is that the Bankruptcy Court find, among other things, that the Plan has been

accepted by the requisite votes of all Classes of Impaired Claims and Interests unless approval

will be sought under section 1129(b) of the Bankruptcy Code in spite of the nonacceptance by

one or more such Classes.  On _____, 2016, the Bankruptcy Court entered the

Disclosure Statement Order (a) approving, among other things, this Disclosure Statement,

procedures for soliciting votes on the Plan, the form of the solicitation documents and various

other notice, (b) setting the Voting Record Date, the Voting Deadline, the date of the

Confirmation Hearing, and the relevant objection deadlines and procedures associated with

Confirmation.

A copy of the Disclosure Statement Order is hereby incorporated by reference as though

fully set forth herein.  THE APPROVAL ORDER SHOULD BE READ IN CONJUNCTION

WITH THIS ARTICLE VIII OF THE DISCLOSURE STATEMENT.

If you have any questions about (i) the procedures for voting your Claim or Interest or

with respect to the packet of materials that you have received or (ii) the amount of your Claim or

Interest, please contact the Debtor's counsel at (801) 933-8922.  If you wish to obtain (at no

charge) an additional copy of the Plan, this Disclosure Statement, or other solicitation documents, you can obtain them by requesting a copy from the Debtor's counsel.

## A.       Who Is Entitled to Vote on the Plan?

In general, a Holder of a Claim or Interest may vote to accept or reject a plan if (i) no party in interest has objected to such Claim or Interest (or the Claim or Interest has been Allowed subsequent to any objection or estimated for voting purposes), (ii) the Claim or Interest is Impaired by the plan and (iii) the Holder of such Claim or Interest will receive or retain property under the plan on account of such Claim or Interest.  The Holders of Class 3 – Common Stock Interests and Class 4 – Private Warrant Interests are entitled to vote on the Plan.

Under section 1126(f) of the Bankruptcy Code, classes that are not impaired under a plan are deemed to accept the plan.  The Holders of Class 1 – Priority Claims and Class 2 – General Unsecured Claims are Unimpaired under the Plan and deemed under section 1126(f) of the Bankruptcy Code to accept the Plan.

In general, if the Holder of an Impaired Claim or Impaired Interest will not receive any distribution under a plan in respect of such Claim or Interest, section 1126(g) of the Bankruptcy Code deems the Holder of such Claim or Interest to have rejected the plan, and thus the Holders of Claims in such Classes are not entitled to vote on the Plan.  The holders Class 5 – Public Warrant Interests are conclusively presumed to have rejected the Plan and are therefore not entitled to vote.

## B.       Solicitation Packages for Holders of Class 3 and Class 4 Claims

The following materials constitute the "Solicitation Package":

(a)       a cover letter describing the contents of the Solicitation Package; and

(b) a CD-ROM containing: (i) the Disclosure Statement (with the Plan annexed thereto and other exhibits) and (ii) the Disclosure Statement Order (without exhibits);

(c) the Confirmation Hearing Notice (as defined in the Disclosure Statement Order);

(d) a Ballot with a pre-addressed postage-paid envelope; and

(e) such other materials as the Bankruptcy Court may direct.

## C.    Voting Procedures

BALLOTS MUST BE RECEIVED BY THE DEBTOR BY THE VOTING DEADLINE AT THE FOLLOWING ADDRESS:

DORSEY & WHITNEY LLP
Attn: Jeff Armington
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101

Ballots received after the Voting Deadline will not be counted by the Debtor in connection with the Debtor's request for confirmation of the Plan. The method of delivery of Ballots to be sent to the Debtor is at the election and risk of each Holder of a Claim or Interest. Except as otherwise provided in the Plan, such delivery will be deemed made only when the original executed Ballot is actually received by the Debtor. In all cases, sufficient time should be allowed to assure timely delivery. Original executed Ballots are required. Delivery of a Ballot to the Debtor by facsimile, email or any other electronic means will not be accepted. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan, the Debtor may alter, amend or modify the Plan, without additional disclosure pursuant to section 1125 of the Bankruptcy Code. After the Confirmation Date and prior to substantial consummation of the

Plan, the Debtor may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of the Plan.

**D.      Releases under the Plan**

Each Ballot advises Interest Holders in bold and capitalized print that Interest Holders who (a) vote to accept or reject the Plan and (b) do not elect to opt out of the release provisions contained in Article VI of the Plan shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Released Parties from any and all Causes of Action. Creditors and Interest Holders who do not grant the releases contained in Article VI of the Plan will not receive the benefit of the releases set forth in Article VI of the Plan.

<div align="center">

**ARTICLE IX.**
**CERTAIN FACTORS TO BE CONSIDERED PRIOR TO VOTING**

</div>

HOLDERS OF CLAIMS AND INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH, REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**A.      Certain Bankruptcy Considerations**

*1.      Parties in Interest May Object to the Plan's Classification of Claims and Interests*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtor believes that the classification of the

Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Interests, each encompassing Claims and Interests that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.      *Failure to Satisfy Vote Requirements*

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Debtor may seek to confirm an alternative chapter 11 plan.  There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims and Allowed Interests as those proposed in the Plan.

3.      *The Debtor May Not Be Able to Secure Confirmation of the Plan*

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the Bankruptcy Court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims and equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim or an Allowed Interest might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determined that this Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met.  If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims and Allowed Interests would receive with respect to their Allowed Claims and Allowed Interests.  The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for Confirmation.  Any such modifications could result in a less favorable treatment of any Class than the treatment currently provided in the Plan.  Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.  Changes to the Plan may also delay the confirmation of the Plan and distributions to Holders of Allowed Claims.

4. *Nonconsensual Confirmation*

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not

accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtor believes that the Plan satisfies these requirements, and the Debtor may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion. In addition, the pursuit of nonconsensual Confirmation of the Plan may result in, among other things, increased expenses.

5.     *Risk of Non-Occurrence of the Effective Date*

The Debtor can provide no assurance as to the timing or as to whether the Effective Date will, in fact, occur. The occurrence of the Effective Date is subject to certain conditions precedent as described in Article VII of the Plan, including, among others, those relating to consummation of the Plan. Failure to meet any of these conditions could result in the Plan not being consummated or the Confirmation Order being vacated.

6.     *Contingencies Could Affect Votes to Accept or Reject the Plan*

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims and Allowed Interests to be subordinated to other Allowed Claims and Allowed Interests. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Allowed Interests under the Plan, will not affect the validity of the vote taken by the Impaired Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

7.     *The Actual Amount of Allowed Claims May Differ From the Estimated Claims and Adversely Affect the Percentage Recovery of Claims*

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates.  Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement.   Moreover, the Debtor cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed.  Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

8.     *Release, Injunction, and Exculpation Provisions May Not Be Approved*

Article VI of the Plan provides for certain releases, injunctions, and exculpations.  All of the releases, injunctions, and exculpations provided in the Plan are subject to objection by parties in interest and may not be approved.

## ARTICLE X.
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**A.     Introduction**

The following summarizes certain U.S. federal income tax consequences expected to result from the consummation of the Plan as they relate to the Debtor and to Holders of Class 3 – Common Stock Interests and Class 4 – Private Warrant Interests, who are entitled to vote on the Plan.  This summary is intended for general information purposes only, is not a complete analysis of all potential federal income tax consequences that may be relevant to any particular

Holder, and does not address any tax consequences arising under any state, local, or foreign tax laws or federal estate or gift tax laws.

This discussion is based on the Internal Revenue Code (the "<u>IRC</u>"), United States Treasury Regulations promulgated thereunder, judicial decisions, and published rulings and administrative pronouncements of the IRS, all as in effect on the date of this Disclosure Statement.  These authorities may change, possibly with retroactive effect, resulting in federal income tax consequences different from those discussed below.  No ruling has been or will be sought from the IRS, and no legal opinion of counsel will be rendered, with respect to the matters discussed below.  There can be no assurance that the IRS will not take a contrary position regarding the federal income tax consequences resulting from the consummation of the Plan or that any contrary position would not be sustained by a court.

This summary does not apply to Holders that are not United States persons for U.S. federal income tax purposes or that are otherwise subject to special treatment under U.S. federal income tax law (including, for example, banks, governmental authorities or agencies, financial institutions, insurance companies, pass through entities, tax exempt organizations, brokers and dealers in securities, mutual funds, small business investment companies, and regulated investment companies).  Moreover, this summary does not purport to cover all aspects of U.S. federal income taxation that may apply to the Debtor and Holders based upon their particular circumstances.  Holders should consult their tax advisors regarding the U.S. federal income tax consequences to them of the consummation of the Plan, as well as any tax consequences arising under any state, local, or foreign tax laws, or any other federal tax laws.

**This discussion is limited to the federal tax issues addressed in this Disclosure Statement. Additional issues may exist that are not addressed in this discussion and that could affect the federal tax treatment of consummation of the Plan. This discussion was written in connection with the promotion or marketing by the Debtor of the Plan, and it cannot be used by any person for the purpose of avoiding penalties that may be asserted against the person under the IRC. Holders should seek their own advice based on their particular circumstances from an independent tax advisor**.

**B.      Certain U.S. Federal Income Tax Consequences to the Debtor**

Pursuant to the APA, the Debtor transferred substantially all of its assets to Scion. The Debtor expects this transfer to be treated as a fully taxable event and expect to recognize taxable gain or loss based on the difference between the fair market value of the transferred assets and the Debtor's tax basis in those assets.

To the extent that the Debtor realizes a gain from the transfer of assets in the above transaction, the Debtor believes that it will have sufficient net operating losses ("NOLs") to offset any gain.

**C.      Certain U.S. Federal Income Tax Consequences to the Holders of Allowed Common Stock Interests and Allowed Private Warrant Interests**

For the purposes of the following discussion of tax consequences to Holders, the character of any recognized gain as capital gain or ordinary income will be determined by a number of factors, including the tax status of the Holder, the nature of the Interests in such Holder's hands (including whether the Claim constitutes a capital asset), whether and to what extent the Holder has previously claimed a deduction with respect to its Interest and whether the Interest was purchased at a discount.

82

Holders of Common Stock Interests and Private Warrant Interests will receive a pro rata share of the Disbursing Agent Assets after payment in full of all Allowed Administrative Claims, Allowed Priority Claims, and Allowed General Unsecured Claims.  Such Holders generally will recognize gain or loss equal to the difference between (i) the fair market value of the Holders' pro rata share of the Disbursing Agent Assets and (ii) the Holders' respective adjusted basis in such Interests.  Holders of Allowed Common Stock Interests and Private Warrant Interests that receive a pro rata share of the Disbursing Agent Assets or a distribution from the Debtor are urged to consult their tax advisors regarding the tax consequences of the right to receive and of the receipt (if any) of property from the Debtor.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION.  ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

## ARTICLE XI.
## RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtor's creditors and interest Holders than would otherwise result in any other scenario.   Accordingly, the Debtor recommends that Holders entitled to vote on the Plan vote to accept the Plan and support Confirmation.

DATED this 16th day of September, 2016.


**BSD MEDICAL CORPORATION fka PERSEON CORPORATION**

By: /s/ *Timothy C. McQuay*_____
Name: Timothy C. McQuay
Title: President

# EXHIBIT 1

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT 84101-1685
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
Email:  waterman.steven@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor BSD Medical Corporation*
*fka Perseon Corporation*

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| In re: | Case No. 16-24435 |
|---|---|
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

---

## DEBTOR'S PLAN PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION
OF TIME, AND GOVERNING LAW ...............................................................1

    A.    Defined Terms ...........................................................................1

    B.    Rules of Interpretation ..............................................................9

    C.    Computation of Time...............................................................10

    D.    Governing Law .......................................................................10

    E.    Reference to Monetary Figures................................................10

    F.    Controlling Document .............................................................11

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ...............................................................................................11

    A.    Treatment of Administrative Claims ........................................11

    B.    Treatment of Professional Fee Claims......................................11

    C.    Summary of Claims and Equity Interests .................................12

    D.    Acceptance or Rejection of the Plan.........................................14

ARTICLE III. MEANS OF IMPLEMENTATION OF THE PLAN .........................15

    A.    Sources of Consideration for Plan Distributions .....................15

    B.    General Settlement of Claims ..................................................15

    C.    Effectuating Documents; Further Transactions ......................16

    D.    Preservation of Rights of Action..............................................16

    E.    Wind Down and Dissolution of the Debtor ..............................16

    F.    Disbursing Agent ....................................................................17

ARTICLE IV. PROVISIONS GOVERNING DISTRIBUTIONS..............................17

    A.    Timing and Calculation of Amounts to Be Distributed .............17

    B.    Distributions and Payments Generally.....................................17

i

C.      Disputed Reserves ................................................................................18

D.      Delivery of Distributions .......................................................................18

E.      Time Bar to Cash Payments by Check ...................................................19

F.      Interest on Claims ..................................................................................19

ARTICLE V. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND
           INTERESTS ............................................................................................20

A.      Resolution of Disputed Claims and Interests .........................................20

B.      Disallowance of Claims .........................................................................21

C.      Amendments to Claims ..........................................................................21

ARTICLE VI. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
           PROVISIONS ..........................................................................................22

A.      Discharge of Claims and Termination of Equity Interests ......................22

B.      Debtor Release .......................................................................................22

C.      Third-Party Release ...............................................................................23

D.      Exculpation ...........................................................................................24

E.      Injunction ..............................................................................................24

F.      Setoffs ...................................................................................................25

G.      Recoupment ...........................................................................................25

ARTICLE VII. CONDITIONS PRECEDENT TO THE CONFIRMATION AND
           CONSUMMATION OF THE PLAN ........................................................26

A.      Conditions Precedent to the Effective Date ...........................................26

B.      Effective Date ........................................................................................26

C.      Effect of Non-Occurrence of Conditions Precedent to the Effective Date ...........26

ARTICLE VIII. MODIFICATION, REVOCATION OR WITHDRAWAL OF THE
           PLAN ......................................................................................................26

A.      Modification and Amendments ...............................................................26

B.      Effect of Confirmation on Modifications ...............................................27

C.      Revocation or Withdrawal of the Plan....................................................27

ARTICLE IX. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT............27

ARTICLE X. MISCELLANEOUS .................................................................................29

A.      Immediate Binding Effect.......................................................................29

B.      Payment of Statutory Fees ......................................................................29

C.      Reservation of Rights...............................................................................29

D.      Successors and Assigns............................................................................29

E.      Service of Documents ..............................................................................29

F.      Term of Injunction or Stays ....................................................................30

G.      Entire Agreement .....................................................................................30

H.      Nonseverability of Plan Provisions.........................................................30

## INTRODUCTION

The Debtor proposes this Chapter 11 plan for the resolution of the outstanding claims against, and interests in, the Debtor pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof or in section 101 of the Bankruptcy Code, as applicable.  Holders of Claims and Equity Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, events during the Chapter 11 Case, and certain financial projections, as well as a summary and description of the Plan and certain related matters.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

1.    "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estate pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code, including but not limited to the U.S. Trustee Fees; and (c) Professional Fee Claims.  For the avoidance of doubt, a Claim asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code is included in the definition of Administrative Claim.

2.    "*Administrative Claims Bar Date*" means the deadline for filing requests for payment of Administrative Claims (other than Professional Fee Claims) that arose after May 23, 2016, which deadline shall be the first Business Day that is thirty days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

3.    "*Administrative Claims Objection Bar Date*" means the deadline for filing objections to any Administrative Claim, which shall be the first Business Day that is thirty days following the Administrative Claims Bar Date.

4.    "*Allowed*" means with respect to Claims: (a) any Claim other than an Administrative Claim that is evidenced by a Proof of Claim which is or has been timely Filed by the applicable Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim under the Bankruptcy Code or a Final Order; (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely Filed; or (c) any Claim allowed pursuant to (i) the Plan, (ii) any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or (iii) a Final Order of the Bankruptcy Court; provided, that, with respect to any Claim described in clauses (a) and

(b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been filed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed for voting purposes only by a Final Order.  Except as otherwise specified in the Plan or any Final Order, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed by the applicable Claims Bar Date, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such entity pays in full the amount that it owes to the Debtor.

5.      "*Asset Purchase Agreement*" or "*APA*" means that certain Asset Purchase Agreement, dated May 17, 2016, by and between the Debtor and MedLink Technologies, LLC, which was approved by the Bankruptcy Court in the Chapter 11 Case.

6.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or similar remedies that may be brought by or on behalf of the Debtor or the Estate, including causes of action or defenses arising under chapter 5 of the Bankruptcy Code or applicable non-bankruptcy law.

7.      "*Ballot*" means the form distributed to holders of Impaired Interests entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan approved by the Bankruptcy Court.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Utah having jurisdiction over the Chapter 11 Case.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

11.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

12.      "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

13.      "*Causes of Action*" means any claim, cause of action (including Avoidance Actions or rights arising under section 506(c) of the Bankruptcy Code), controversy, right of

setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include:  (a) all rights of setoff, counterclaim, cross-claim, or recoupment, and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14.      "*Chapter 11 Case*" means this chapter 11 case commenced by the Debtor and styled *In re BSD Medical Corporation fka Perseon Corporation*, Case No. 16-24435, which is currently pending before the Bankruptcy Court.

15.      "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code, including:  (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

16.      "*Claims Objection Bar Date*" means the later of:  (a) the first Business Day following one hundred and eighty days after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court, after notice and a hearing, upon a motion Filed before the day that is one hundred and eighty days after the Effective Date, which date may be further extended by the Bankruptcy Court after notice and a hearing upon a motion Filed before the expiration of any such extended period.

17.      "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court.

18.      "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article II hereof pursuant to section 1122(a) of the Bankruptcy Code.

19.      "*Common Stock*" means the common stock of the Debtor.

20.      "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21.      "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

22.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, including any adjournments or continuations thereof.

23.     "*Confirmation Objection Deadline*" means the deadline for Filing objections to the Plan, which pursuant to the Scheduling Order, is December 7, 2016, at 4:00 p.m. (prevailing Mountain Time).

24.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25.     "*Consummation*" means the occurrence of the Effective Date.

26.     "*D&O Liability Insurance Policies*" means all insurance policies for directors', managers', and officers' liability maintained by the Debtor as of the Effective Date.

27.     "*Debtor Release*" means the release given by the Debtor to the Debtor Released Parties as set forth in Article VI.B hereof.

28.     "*Debtor Released Parties*" means, collectively, the Debtor Releasees and the Third Party Releasees.

29.     "*Debtor Releasees*" means, collectively, the Debtor and the Debtor's current and former officers, directors, principals, employees, agents, advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, and their respective successors and assigns, each in their capacity as such, and only if serving in such capacity.

30.     "*Debtor*" means BSD Medical Corporation fka Perseon Corporation.

31.     "*Disbursing Agent*" means the Person appointed by the Debtor pursuant to Article III.F, which Person shall be identified to the extent known prior to the Confirmation Hearing.

32.     *Disbursing Agent Agreement*" means the agreement to be executed as of the Effective Date vesting authority in the Disbursing Agent pursuant to this Plan, substantially in the form Filed with the Plan Supplement.

33.     "*Disbursing Agent Assets*" means all of the assets of the Debtor's Estate that have not been sold, abandoned, or otherwise transferred pursuant to a Final Order of the Bankruptcy Court and/or Equity Interests in the Debtor.

34.     "*Disbursing Agent Funding Mechanism*" means Cash, in an amount necessary to fund (a) the working capital needs of the Disbursing Agent and (b) the reasonable, documented fees and expenses of the Disbursing Agent and the Disbursing Agent Professionals.

35.     "*Disbursing Agent Professionals*" means the agents, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Disbursing Agent.

4

36.     "*Disclosure Statement*" means the Disclosure Statement for the Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code, dated September 16, 2016, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

37.     "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

38.     "*Disputed Reserve*" means a reserve of Cash or such other consideration the Debtor determines appropriate that may be funded on or after the Effective Date, or such consideration as ordered by the Bankruptcy Court, as applicable, for distributions to Holders of Allowed Claims and Allowed Interests and Disputed Claims and Disputed Interests if and to the extent that such Disputed Claims or Disputed Interests become Allowed Claims or Allowed Interests.

39.     "*Distributions*" means the distributions of Cash by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date to be made in accordance with the Plan and/or the Disbursing Agent Agreement.

40.     "*Effective Date*" means the date selected by the Debtor that is a Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent specified in Article VII.A hereof have been satisfied.

41.     "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

42.     "*Equity Interest*" means a Common Stock Interest, a Private Warrant Interest, a Public Warrant Interest, and any other equity, ownership, or profits interests of the Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (whether or not arising under or in connection with any employment agreement), including any claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

43.     "*Estate*" means the estate created for the Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

44.     "*Exculpated Parties*" means, collectively:  (a) the Debtor;  (b) the Debtor Releasees; (c) the Third Party Releasees; and (d) all of the current and former attorneys, financial advisors, consultants, representatives, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, members (including ex officio members), officers, directors, employees, partners, subsidiaries, principals, agents, managed funds and representatives and successors and assigns of each of the foregoing Entities (whether current or former, in each case in his, her, or its capacity as such).

45.     "*Exculpation*" means the exculpation provision set forth in Article VI.D hereof.

46.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

47.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court.

48.     "*Final Order*" means an order or judgment of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Case (or the docket of such other court), which is and remains in full force and effect, has not been modified, amended, reversed, vacated, or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, re-argument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, re-argument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; provided, that, the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed relating to such order, shall not cause an order not to be a Final Order.

49.     "*General Claims Bar Date*" means September 14, 2016.

50.     "*General Unsecured Claim*" means any Unsecured Claim that is not (a) an Administrative Claim (including, for the avoidance of doubt, any Professional Fee Claim) or (b) a Priority Claim.

51.     "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

52.     "*Governmental Unit Claims Bar Date*" means November 21, 2016.

53.     "*Holder*" means any Entity holding a Claim or an Interest.

54.     "*Impaired*" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is not Unimpaired and, with respect to a Claim or Interest, a Claim or Interest that is not Unimpaired.

55.     "*Interest*" means Equity Interest.

56.     "*Interest Rate*" means 5%.

57.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C.  §§ 1–4001, as may be amended, modified, or supplemented.

58.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

59.     "*Minimum Distribution Threshold*" means $25.00.

60.     "*Non-Released Parties*" means those Entities to be identified in the Plan Supplement as Non-Released Parties; provided, that, Non-Released Parties shall not include the following:  (a) each Debtor Releasee; and (b) the Disbursing Agent.

61.     "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

62.     "*Petition Date*" means May 23, 2016, the date on which the Debtor Filed its petition for relief commencing the Chapter 11 Case.

63.     "*Plan*" means this *Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference and made part of this Plan as if set forth herein.

64.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed on or prior to October 14, 2016, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including the Disbursing Agent Agreement.

65.     "*Priority Claim*" means any Unsecured Claim that is not an Administrative Claim or a General Unsecured Claim, including any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

66.     "*Private Warrants*" means those certain Warrants issued by the Debtor on April 12, 2013, with an exercise price in the amount of $16.50, and on July 2, 2014, with an exercise price in the amount of $11.00, which, among other things, entitled Private Warrant Holders to participate in a distribution of the Debtor's assets to Holders of Common Stock as if the Private Warrant Holder had converted its Private Warrants into Common Stock immediately prior to the Debtor's distribution of assets to Holders of Common Stock.

67.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

68.     "*Professional*" means any Entity:  (a) retained in the Chapter 11 Case pursuant to and in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; and (c) that is a Disbursing Agent Professional.

69.     "*Professional Fee Claims*" means all Claims for accrued fees and expenses (including success fees) for services rendered and expenses incurred by a Professional from the Petition Date through and including the Effective Date, which Claims are evidenced by

7

applications for compensation Filed with the Bankruptcy Court, to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

70.       "*Professional Fee Escrow Account*" means an interest bearing escrow account to be funded on the Effective Date with Cash on hand in an amount equal to all Professional Fee Claims, plus an amount equal to the estimated, unbilled Professional Fees incurred through the Effective Date but not evidenced by applications for compensation Filed with the Bankruptcy Court (calculated in accordance with reasonable estimates from each Professional); provided, that, the Professional Fee Escrow shall be increased to the extent that the aggregate amount of fee applications Filed after the Effective Date exceeds the available balance in the Professional Fee Escrow Account.

71.       "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case.

72.       "*Proof of Interest*" means a proof of Interest Filed against the Debtor in the Chapter 11 Case.

73.       "*Public Warrants*" mean those certain Warrants issued by the Debtor on July 29, 2015, and August 4, 2015, with an exercise price of $.99, which Warrants are not entitled to participate in a distribution of the Debtor's assets to Holders of Common Stock as if the Public Warrant Holder had converted its Public Warrants into Common Stock immediately prior to the Debtor's distribution of assets to Holders of Common Stock.

74.       "*Released Parties*" means, collectively, the Debtor Releasees and the Third Party Releasees.

75.       "*Releasing Parties*" means all Holders of Claims or Equity Interests who are Holders of Claims or Equity Interests in an accepting Class of Claims or Equity Interests, except Holders of any Claims or Equity Interests (i) who vote to reject the Plan, (ii) who do not vote to accept or reject the Plan but who timely submit a Ballot indicating their decision to not participate in the Third Party Release set forth in Article VI.C hereof, or (iii) who are in a Class that is deemed to reject the Plan.

76.       "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtor on the Petition Date pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time

77.       "*Scheduling Order*" means the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Notice Materials; (III) Approving Forms of Ballots; (IV) Establishing Solicitation and Voting Procedures; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures*.

78.       "*Secured*" means when referring to a Claim secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the

Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

79.     "*Third Party Release*" means the release provision set forth in Article VI.C hereof.

80.     "*Third Party Releasees*" means, collectively, (a) each Debtor Releasee; (b) the Disbursing Agent; and (c) with respect to each of the foregoing Entities (other than with respect to a final fee application of a Professional), all such Entities' respective current and former affiliates and all such Entities' and such affiliates' respective current and former attorneys, financial advisors, consultants, representatives, advisors, accountants, investment bankers, investment advisors, actuaries, professionals, members, officers, directors, employees, partners, subsidiaries, principals, agents, managers, administrators, trustees, managed funds, special purpose vehicles, accounts, fund managers and representatives, and successors and assigns of each of the foregoing in their respective capacities as such; provided, further, that, any Holder of a Claim who votes to reject the Plan or who does not vote to accept or reject the Plan but who submits a Ballot opting out of the Third Party Release shall not be a Third Party Releasee.

81.     "*U.S. Trustee*" means the United States Trustee for the District of Utah.

82.     "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

83.     "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code and, with respect to Claim or Interest, a Claim or Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

84.     "*Unsecured*" means not Secured.

85.     "*Voting Deadline*" means December 9, 2016 at 5:00 p.m. (prevailing Mountain Time).

86.     "*Voting Record Date*" means November 1, 2016 at 5:00 p.m. (prevailing Mountain Time).

87.     "*Warrants*" means collectively, the Public Warrants and Private Warrants.

88.     "*Wind Down*" means the wind down, dissolution, and liquidation of the Debtor.

*B.*     *Rules of Interpretation*

For purposes of the Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) any reference herein to a contract, lease, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

9

(3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented by the Debtor, without prejudice to any party's rights; (4) any reference to an Entity as a Holder of a Claim includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended, supplemented or otherwise modified from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (13) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Equity Interest," "Holders of Equity Interests," "Disputed Equity Interests," and the like as applicable; and (14) any immaterial effectuating provisions may be interpreted by the Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## C.    Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Utah, without giving effect to the principles of conflict of laws that would dictate the application of another jurisdiction's law, shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law set forth in such agreement shall control with respect thereto).

## E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.

## ARTICLE II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.      *Treatment of Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtor to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction of its Allowed Administrative Claim, Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim either:    (a) if such Administrative Claim is Allowed as of the Effective Date, as soon as reasonably practicable thereafter but in no event later than thirty days after the Effective Date; (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order of the Bankruptcy Court Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor's Estate in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court or as provided by Article II.B hereof, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtor no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date.

B.      *Treatment of Professional Fee Claims*

1.      Final Fee Applications

All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on the Debtor, the United States Trustee, and parties requesting notice in this Chapter 11 Case, no later than the first Business Day that is [forty-five] days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

2.      Professional Fee Escrow Account

On the Effective Date, the Debtor shall establish and fund the Professional Fee Escrow Account.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtor's Estate, but the remaining balance after payment of all Professional Fees shall vest in the Disbursing Agent Assets after all Professional Fee Claims allowed by the Bankruptcy Court have been irrevocably paid in full.  The Professional Fee Escrow Account shall be held in trust for the Professionals and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full.  Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account in any way.

3.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtor as applicable.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Debtor may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Summary of Claims and Equity Interests*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests in or against the Debtor for all purposes, including, without express or implied limitation, voting, confirmation and distribution, pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and will be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise satisfied prior to the Effective Date.  Except as otherwise specifically provided for in the Plan, the Confirmation Order or other order of the Bankruptcy Court, or required by applicable non-bankruptcy law, in no event will any Holder of an Allowed Claim be entitled to receive payments that in the aggregate exceed the Allowed amount of such Holder's Claim.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Professional Fee Claims of the kinds specified in sections 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II hereof.

1.      Class 1 - Priority Claims

(a)      Classification:  Class 1 consists of Priority Claims.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Priority Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of each and every Allowed Priority Claim, each Holder of an Allowed Priority Claim shall be paid in full in Cash in an amount equal to such Allowed Priority Claim by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date plus interest accrued on the amount of the Allowed Priority Claim at the Interest Rate from the Petition Date through the Effective Date.

(c)     Voting:  Class 1 is Unimpaired, and Holders of Class 1 Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 1 Priority Claims are not entitled to vote to accept or reject the Plan.

2.     <u>Class 2 – General Unsecured Claims</u>

(a)     Classification:  Class 2 consists of General Unsecured Claims.

(b)     Treatment:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall be paid in full in Cash in an amount equal to such Allowed General Unsecured Claim by the Debtor on the Effective Date or by the Disbursing Agent after the Effective Date plus interest accrued on the amount of the Allowed General Unsecured Claim at the Interest Rate from the Petition Date through the Effective Date.

(c)     Voting:  Class 2 is Unimpaired, and Holders of Class 2 General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 2 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

3.     <u>Class 3 – Common Stock Interests</u>

(a)     Classification:  Class 3 consists of Common Stock Interests.

(b)     Treatment:  Except to the extent that a Holder of an Allowed Common Stock Interest agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Common Stock Interest, each Holder of an Allowed Common Stock Interest shall receive its Pro Rata Share of the Disbursing Agent Assets.

(c)     Voting:  Class 3 is Impaired under the Plan.  Holders of Allowed Common Stock Interests are entitled to vote to accept or reject the Plan.

4.      <u>Class 4 – Private Warrant Interests</u>

(a)      Classification:  Class 4 consists of Private Warrant Interests.

(b)      Treatment:  Except to the extent that a Holder of an Allowed Private Warrant Interest agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release, and compromise of and in exchange for each Allowed Private Warrant Interest, each Holder of an Allowed Private Warrant Interest shall receive its Pro Rata Share of the Disbursing Agent Assets.

(c)      Voting:  Class 4 is Impaired under the Plan.  Holders of Allowed Private Warrant Interests are entitled to vote to accept or reject the Plan.

5.      <u>Class 5 – Public Warrant Interests</u>

(a)      Classification:  Class 5 consists of Public Warrant Interests.

(b)      Treatment:  On the Effective Date all Public Warrant Interests shall be cancelled without any distribution on account of such interests.

(c)      Voting:  Class 5 is Impaired under the Plan.  Holders of Public Warrant Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

D.      *Acceptance or Rejection of the Plan*

1.      <u>Voting of Interests</u>

Each Holder of a Class 3 – Common Stock Interest or Class 4 – Private Warrant Interest as of the Voting Record Date will be entitled to vote to accept or reject the Plan as provided in the Disclosure Statement Order or any other order of the Bankruptcy Court.

2.      <u>Special Provision Governing Unimpaired Claims</u>

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

3.      <u>Class Acceptance Requirement</u>

A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of Holders of such Claims that have voted on the Plan.

A Class of Equity Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Equity Interests in such Class.

4.      <u>Presumed Acceptance of Plan</u>

Class 1 – Priority Claims and Class 2 – General Unsecured Claims are Unimpaired by the Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and the votes of such Holders are not solicited.

5.      <u>Presumed Rejection of Plan</u>

Class 5 – Public Warrant Interests will not receive any distribution under the Plan on account of such Public Warrant Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, the Holders of Public Warrant Interests in such Class are conclusively presumed to have rejected the Plan and the votes of such Holders will not be solicited.

6.      <u>Voting Classes; Presumed Acceptance by Non-Voting Classes</u>

If a Class contains Claims or Equity Interests eligible to vote and no Holders of Claims or Equity Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Equity Interests in such Class.

7.      <u>Confirmation Pursuant to Sections 1129(a) and 1129(b) of the Bankruptcy Code</u>

Section 1129(a)(10) of the Bankruptcy Code is not applicable because there is no Class of Impaired Claims under the Plan.  However, if the Bankruptcy Court determines that any Class of Claims under the Plan is Impaired, the Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  The Debtor reserves the right to modify the Plan in accordance with Article VIII of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE III.
## MEANS OF IMPLEMENTATION OF THE PLAN

A.      *Sources of Consideration for Plan Distributions*

All amounts necessary for the Debtor (on the Effective Date) or the Disbursing Agent, (after the Effective Date), as applicable, to make payments or distributions pursuant to this Plan shall be obtained from, among other things, the Cash raised or held by the Debtor.

B.      *General Settlement of Claims*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

C.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Disbursing Agent is authorized to and may issue, execute, deliver, file, or record such contracts, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

D.      *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, sold or otherwise transferred, the Disbursing Agent shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Disbursing Agent's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Disbursing Agent may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtor's estate.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, or the Disbursing Agent, as applicable, will not pursue any and all available Causes of Action against them.  Except with respect to Causes of Action as to which the Debtor has released, sold, or otherwise transferred to any Person or Entity on or prior to the Effective Date, the Debtor or the Disbursing Agent, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, sold or otherwise transferred, compromised, or settled in the Plan or a Bankruptcy Court order, the Disbursing Agent expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

E.      *Wind Down and Dissolution of the Debtor*

On and after the Effective Date, the Disbursing Agent will implement and oversee the Wind Down pursuant to any provision of the Plan and any applicable orders of the Bankruptcy Court, and the Disbursing Agent shall have the power and authority to take any action necessary to wind down and dissolve the Debtor, including (a) filing a certificate of dissolution, together with all other necessary corporate and company documents, to effect the dissolution of the Debtor under Delaware law; (b) completing and filing all final or otherwise required federal, state, and local tax returns for the Debtor, and (c) taking such other actions as the Disbursing Agent may determine to be necessary or desirable to carry out the purposes of this Plan. Notwithstanding anything herein to the contrary, the Disbursing Agent will make, or cause to be made, all distributions under the Plan other than those distributions made by the Debtor on the Effective Date.

16

F.      *Disbursing Agent*

Before or on the Effective Date, the Disbursing Agent shall be designated by the Debtor, for the purposes of conducting the Wind Down and shall succeed to such powers as would have been applicable to the Debtor's officers, directors, and shareholders, and the Debtor shall be authorized to be (and, upon the conclusion of the Wind Down, shall be) dissolved by the Disbursing Agent pursuant to the Confirmation Order.  All property of the Estate not distributed to the Holders of Claims or Equity Interests on the Effective Date shall be managed and distributed by the Disbursing Agent and shall be held in the name of the Debtor free and clear of all Claims and Equity Interests except for rights to such distributions provided to Holders of Allowed Claims and Allowed Equity Interests as provided in the Plan.  Any and all reasonable and documented costs and expenses incurred by the Disbursing Agent in connection with the Wind Down, the Professional Fee Escrow Account, and any distributions to Holders of Allowed Claims and Allowed Interests, shall be paid from the Disbursing Agent Assets.  The Disbursing Agent shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Disbursing Agent Agreement.

## ARTICLE IV.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such a Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest against the Debtor shall receive the full amount of the distributions and payments that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Debtor or Disbursing Agent, as applicable.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article V hereof.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.  Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a distribution in excess of the Allowed amount of such Claim.

B.      *Distributions and Payments Generally*

All distributions and payments under the Plan that are to be made on the Effective Date, if any, shall be made by the Debtor and payments made after the Effective Date shall be made by the Disbursing Agent.

C.     *Disputed Reserves*

On the Effective Date, after making all Distributions required to be made on such date under the Plan, the Disbursing Agent shall establish a separate Disputed Reserve for Disputed Claims, each of which Disputed Reserves shall be administered by the Disbursing Agent.  The Disbursing Agent shall reserve in Cash or other property, for Distribution on account of each Disputed Claim, the full asserted amount (or such lesser amount as may be estimated by the Bankruptcy Court in accordance with Article V hereof) with respect to each Disputed Claim.

The Disbursing Agent shall hold property in the Disputed Reserves in trust for the benefit of the Holders of Claims and Interests ultimately determined to be Allowed.  Each Disputed Reserve shall be closed and extinguished by the Disbursing Agent when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of the Plan.  Upon closure of a Disputed Reserve, all Cash held in that Disputed Reserve shall revest in the Disbursing Agent Assets.  All funds or other property that vest or revest in the Disbursing Agent Assets pursuant to this paragraph shall be (a) used to pay the fees and expenses of the Disbursing Agent as and to the extent set forth in the Disbursing Agent Agreement, and (b) thereafter distributed on a Pro Rata basis to holders of Allowed Interests.

D.     *Delivery of Distributions*

1.     <u>General Provisions; Undeliverable Distributions</u>

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims and Allowed Interests shall be made by the Disbursing Agent at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim or proofs of Interest Filed by such Holder or (b) the last known address of such Holder if no proof of Claim is Filed or if the Debtor has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Disbursing Agent may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim or Interest with respect to which the Distribution was made as the Disbursing Agent deems appropriate, but no Distribution to any such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made to the holder without interest beyond any interest provided for in the Plan. Amounts in respect of any undeliverable Distributions made by the Disbursing Agent shall be returned to, and held in trust by, the Disbursing Agent until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth below in Article IV.D.3. The Disbursing Agent shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Disbursing Agent Agreement.

2.     <u>Minimum Distributions</u>

Notwithstanding anything herein to the contrary, if a Distribution to be made to a Holder of an Allowed Claim or Allowed Interest on the Effective Date or any subsequent date for

Distributions would be less than the Minimum Distribution Threshold, $25.00 or less in the aggregate at the time of such Distribution, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Disbursing Agent no later than twenty (20) days after the Effective Date. If the Holder of an Allowed Claim or Allowed Interest with an Allowed amount below the Minimum Distribution Threshold does not make a request for Distribution with the Disbursing Agent within twenty (20) days after the Effective Date, the Disbursing Agent will segregate the amount of the proposed Distribution into an account, the proceeds of which will be donated to "and Justice for all" after all Distributions have been made.

   3. <u>Unclaimed Property</u>

   Except with respect to property not Distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the expiration of the later of six (6) months from the Effective Date or ninety (90) days from such Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Disbursing Agent Assets, and the Claims or Interests with respect to which those Distributions are made shall be automatically cancelled. After the expiration of the applicable period, the claim of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or Allowed Interest. All funds or other property that vests or revests in the Disbursing Agent Assets pursuant to this Article shall be distributed by the Disbursing Agent to the other Holders of Allowed Claims and Allowed Interests in accordance with the provisions of the Plan or the Disbursing Agent Agreement.

  *E.* *Time Bar to Cash Payments by Check*

   Checks issued by the Disbursing Agent on account of Allowed Claims or Allowed Interests shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article IV shall be made directly to the Disbursing Agent by the Holder of the Allowed Claim or Allowed Interest to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the later of six (6) months from the Effective Date or ninety (90) days after the date of issuance thereof. After that date, all claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in the Disbursing Agent Assets as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code and be distributed as provided in Article IV.D.3.

  *F.* *Interest on Claims*

   Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Effective Date on any Claim.

## ARTICLE V.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

A.     *Resolution of Disputed Claims and Interests*

    1.     <u>Allowance of Claims and Interests</u>

On or after the Effective Date, the Disbursing Agent shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim.

    2.     <u>Prosecution of Objections to Claims</u>

The Debtor prior to and on the Effective Date or the Disbursing Agent after the Effective Date shall have authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise.

    3.     <u>Estimation of Claims</u>

Prior to and on the Effective Date, the Debtor, and after the Effective Date, the Disbursing Agent may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Disbursing Agent have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Disbursing Agent may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Disbursing Agent may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such

reconsideration on or before twenty-one days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4. <u>Expungement or Adjustment of Claims Without Objection</u>

Any Claim that has been paid, satisfied or superseded may be expunged on the Claims Register by the Debtor or the Disbursing Agent and any Claim that has been amended may be adjusted thereon by the Debtor or the Disbursing Agent in both cases without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court.

5. <u>Deadline to File Objections to Claims</u>

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

B. *Disallowance of Claims*

All Claims of any Entity from which property is sought by the Debtor or the Disbursing Agent under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor or the Disbursing Agent allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtor or the Disbursing Agent on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

EXCEPT AS OTHERWISE AGREED BY THE DEBTOR, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

C. *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order or approval of the Bankruptcy Court.

## ARTICLE VI.
## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Equity Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan or in any contract, instrument, or other agreement or document created pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Equity Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Equity Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability to the extent such Claims or Equity Interests relate to services performed by employees of the Debtor prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtor with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to the Effective Date occurring.

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests, and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Disbursing Agent may compromise and settle Claims against the Debtor and its Estate and Causes of Action against other Entities.

B.     *Debtor Release*

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided herein, or in any contract, instrument, or other agreement or**

document created pursuant to this Plan, for good and valuable consideration, on and after the Effective Date, the Debtor and its Estate shall release each Released Party, and each Released Party shall be deemed released and discharged by the Debtor and its Estate, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor or its Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes willful misconduct, bad faith, or gross negligence, each solely to the extent determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the Debtor Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor or its Estate asserting any Claim or Cause of Action released pursuant to the Debtor Release.

C.    *Third-Party Release*

As of the Effective Date, except as otherwise provided in the Plan, or in any contract, instrument or other agreement or document created pursuant to this Plan, the Releasing Parties shall release the Debtor, its Estate, and the Released Parties shall be deemed released, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is

23

treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Releasee that constitutes willful misconduct, bad faith, or gross negligence Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third- Party Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, no Exculpated Party shall have or incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Chapter 11 Case or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct.

E.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations required to be paid pursuant to the Plan, or Confirmation Order, all Entities who have held, hold, or may hold claims, interests, or Liens that have been discharged pursuant to Article VI.A, released pursuant to Article VI.B or Article VI.C, or are subject to exculpation pursuant to Article VI.D are, to the fullest extent provided under Section 524 and other applicable

**provisions of the Bankruptcy Code, permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Debtor or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

F.      *Setoffs*

Except as otherwise expressly provided for in the Plan or in any court order, the Debtor or the Disbursing Agent, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may (but shall not be required to) set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or its Estate may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, that, neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor of any such claims, rights, and Causes of Action that the Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to setoff any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff right.

G.      *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtor unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

# ARTICLE VII.
## CONDITIONS PRECEDENT TO THE CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

Consummation of the Plan will not occur unless each of the following conditions has been satisfied:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor, and such Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal; and

2.    The Disbursing Agent shall have been appointed, and the Debtor shall have executed and delivered the Disbursing Agent Agreement.

B.    *Effective Date*

The Effective Date shall be the first Business Day upon which all of the conditions specified in Article VII.A of the Plan have been satisfied.  "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

C.    *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

# ARTICLE VIII.
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments*

Subject to the limitations contained herein, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions or modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article VIII of the Plan.

26

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then:   (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Equity Interests), and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Equity Interests; (ii) prejudice in any manner the rights of the Debtor, or any other Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor.

## ARTICLE IX.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

On and after the Effective Date, the Bankruptcy Court will retain jurisdiction of the Chapter 11 Case and all matters arising out of and related to the Chapter 11 Case including jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the status, priority, amount, or allowance of Claims or Interests;

(b)      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)      ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

(d)      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(e)      adjudicate, decide, or resolve any and all matters related to Causes of Action;.

(f)      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan;

(g)    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(i)    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VI of the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

(j)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(k)    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any other agreement or document created in connection with the Plan or the Disclosure Statement;

(l)    adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

(m)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(n)    determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

(o)    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(p)    hear and determine all disputes involving the existence, nature, or scope of the Debtor's release, including any dispute relating to any liability arising out of the termination of employment, regardless of whether such termination occurred prior to or after the Effective Date;

(q)    enforce all orders previously entered by the Bankruptcy Court;

(r)    hear any other matter not inconsistent with the Bankruptcy Code;

(s)    enter an order concluding or closing the Chapter 11 Case; and

(t)    enforce the injunction, release, and exculpation provisions set forth in Article VI of the Plan.

## ARTICLE X.
## MISCELLANEOUS

A.    *Immediate Binding Effect*

Subject to Article VII.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor, the Disbursing Agent, and any and all Holders of Claims or Interests (regardless of whether such Claims or Equity Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and each Entity acquiring property under the Plan or the Confirmation Order.   All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim has voted on the Plan.

B.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtor (prior to or on the Effective Date) or the Disbursing Agent (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

C.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.   Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, the Disclosure Statement, or the Confirmation Order shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests prior to the Effective Date.

D.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

E.    *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor shall be served on:

DORSEY & WHITNEY LLP
Attn: Steven T. Waterman
136 South Main Street, Suite 1000
Salt Lake City, Utah 84101

F.      *Term of Injunction or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

G.      *Entire Agreement*

Except as otherwise provided herein or therein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

H.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

DATED this 16th day of September, 2016.

**BSD MEDICAL CORPORATION fka
PERSEON CORPORATION**

By: _/s/ Timothy C. McQuay_
Name: Timothy C. McQuay
Title: President

# EXHIBIT 2

## Disclosure Statement Order

## [TO COME]

# EXHIBIT 3

## I.      Introduction

Under the "bests interests" test set forth in section 1129(a)(7)(A)(ii) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan of reorganization unless the plan provides that each holder of a claim or interest who is impaired and does not vote to accept the plan will receive or retain property worth at least as much as such holder of a claim or interest would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Plan satisfies the "best interests" test, the Debtor has prepared the following hypothetical liquidation analysis (the "Liquidation Analysis"), which is based upon, among other things, certain assumptions described below.

All capitalized terms used but not otherwise defined herein shall have the meanings give in the *Disclosure Statement for Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code* or the *Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code*, as applicable.

## II.     The Asset Sale and Remaining Assets

During the course of the Chapter 11 case, the Debtor has sold substantially all of its assets to Scion pursuant to the Sale Order [Docket No. 160].

The "Remaining Assets" of the Debtor consist of a variety of miscellaneous items, including but not limited to:

-   Cancer ablation demo units that are used at trade shows and are not certified to be used on patients;

-   Research and development laboratory equipment;

-   Office equipment and office furniture and other hardware (including pumps, generators, clamps, tool boxes, air compressors, transformers, attenuators, precision induction heating tool, antennas, antenna cables, etc.); and

-   2005 Chevy Silverado truck.

For purposes of this Liquidation Analysis, it is assumed that a chapter 7 trustee in a hypothetical chapter 7 liquidation would be tasked with liquidating the Remaining Assets and investigating Causes of Action, and that such chapter 7 trustee would retain professionals to assist in such efforts.  Finally, the chapter 7 trustee would distribute the cash proceeds from the liquidation of the Debtor's remaining assets, along with the proceeds of the Asset Sale, in accordance with the priority scheme established by the Bankruptcy Code.

## III.    Other Assumptions and General Notes

1.      The Liquidation Analysis presents information based on, among other things, the Debtor's books and records and good faith estimates regarding assert recoveries and claims resulting from a hypothetical liquidation under chapter 7 of the Bankruptcy Code. The Liquidation Analysis has not been examined or reviewed by independent accountants in accordance with standards promulgated by the American Institute of Certified Public

Accountants. Although the Debtor considers the estimates and assumptions set forth herein to be reasonable under the circumstances, such estimates and assumptions are inherently subject to significant uncertainties and contingencies beyond the Debtor's control. Accordingly, there can be no assurance that the results set forth by the Liquidation Analysis would be realized if the Debtor was actually liquidated, and actual results in such a case could vary materially from those presented herein, and distributions available to members of applicable classes of claims and interests could differ materially from the balances set forth by the Liquidation Analysis in such instance.

2.      As reflected in more detail in the Liquidation Analysis, the Debtor believes that the value of the distributions provided to holders of Allowed Claims and Allowed Interests under the Plan would be greater than under a hypothetical chapter 7 liquidation and, therefore, the Plan satisfies the best interests test.

3.      The Liquidation Analysis also reflects the Debtor's good faith estimate of claims that would be allowed based upon the Debtor's books and records. At the same time, the Debtor has made assumptions based on the allowability of certain claims for which the Debtor intends to file an objection.

4.      THE LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTOR WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PROJECTED DATE OF THE CONFIRMATION OF THE PLAN. THE LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTOR'S ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THE LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION.

5.      THE DEBTOR, ITS MANAGEMENT, AND ITS PROFESSIONALS DO NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING THE ACCURACY OF THE ESTIMATES AND ASSUMPTIONS UPON WHICH THE LIQUIDATION ANALYSIS IS BASED.

6.      NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED OR SHALL BE DEEMED TO BE A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIMS BY OR AGAINST THE DEBTOR. THE ACTUAL AMOUNT OR PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASE COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THE LIQUIDATION ANALYSIS. THE DEBTOR RESERVES ALL RIGHTS TO OBJECT TO ANY CLAIMS ON ANY BASIS DEEMED APPROPRIATE.

7.      THE DEBTOR RESERVES ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE LIQUIDATION ANALYSIS AS AND WHEN THE DEBTOR DEEMS NECESSARY OR APPROPRIATE.

## BSD Medical FKA Perseon Corporation
### Hypothetical Liquidation Analysis
### As of December 20, 2016, Projected Confirmation Date

| | Claim Amount | Conversion to Chapter 7 Estimated Recovery | | Chapter 11 Plan of Liquidation Estimated Recovery | |
|---|---|---|---|---|---|
| **Estimated Gross Proceeds** | | $ | % | $ | % |
| Current Assets | | | | | |
| Cash balance as of 8/31/2016 | | $4,057,442 | | $4,057,442 | |
| | | | | | |
| Fixed Assets | | | | | |
| Medical Systems Equipment | | 25,000 | | 25,000 | |
| Computer, office and misc. equipment and assets | | 10,000 | | 10,000 | |
| 2005 Chevrolet Truck | | 7,000 | | 7,000 | |
| | | | | | |
| Less: | | | | | |
| Post-petition Admin. Exp. Liabilities @ 8/31/2016 | | 315,000 | | 315,000 | |
| Estimated Notice and solicitation costs | | 50,000 | | 50,000 | |
| Other administrative expenses | | 30,000 | | 30,000 | |
| Directors and officers Insurance | | 270,000 | | 270,000 | |
| | | | | | |
| **Estimated Proceeds as of December 20, 2016** | | **$3,434,442** | | **$3,434,442** | |
| | | | | | |
| **Liquidation and Admin. Expenses** | | | | | |
| Debtor's counsel future fees through confirmation | | 200,000 | | 200,000 | |
| Disbursing agent legal fees post-confirmation | | - | | 50,000 | |
| Debtor's accountant through confirmation | | 30,000 | | 30,000 | |
| Disbursing agent post-confirmation | | - | | 50,000 | |
| Administrative wage claims | | 75,000 | | 75,000 | |
| Trustee fees[1] | | 127,783 | | | |
| Trustee's counsel fees | | 200,000 | | | |
| Trustee's accountant fees | | 100,000 | | | |
| Trustee's notice fees | | 20,000 | | | |
| | | | | | |
| **Total Liquidation and Admin. Expenses** | | 752,783 | | 405,000 | |
| | | | | | |
| **Remaining Proceeds** | | **2,681,659** | | **3,029,442** | |
| | | | | | |
| **Distribution of Proceeds** | | | | | |
| | | | | | |
| Pre-Petition Priority Unsecured Claims | 46,426 | 46,426 | 100% | 46,426 | 100% |
| Interest on Priority Unsecured Claims[2] | 1,354 | - | 0% | 1,354 | 100% |
| | | | | | |
| **Remaining Proceeds** | | **2,635,233** | | **2,981,662** | |
| | | | | | |
| Pre-Petition General Unsecured Claims | 2,689,914 | 2,635,233 | 98% | 2,689,914 | 100% |
| Interest on General Unsecured Claims[2] | 78,456 | - | 0% | 78,456 | 100% |
| | | | | | |
| **Proceeds Available to Equity Holders** | Shares/Warrants | $      - | | $   213,292 | |
| Estimated distribution per common share | 9,766,323 | $      - | | $   0.0203 | |
| Estimated distribution per warrant | 744,882 | $      - | | $   0.0203 | |

**Footnotes:**

(1) Based on maximum allowable compensation pursuant to the bankruptcy code:

| | |
|---|---|
| 25% of the first $5,000 | 1,250.00 |
| 10% of the next $45,000 | 4,500.00 |
| 5% of the next $950,000 | 47,500.00 |
| 3% of the next $2,484,442 | 74,533.26 |
| Maximum Allowable Compensation | $  127,783.26 |

(2) Interest pursuant to the proposed plan of liquidation is calculated at 5% simple interest from the petition date (5/23/2016) to the estimated effective date (12/23/2016), 7 months.

# EXHIBIT B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## NOTICE OF NON-VOTING STATUS FOR UNIMPAIRED CLASSES CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN

PLEASE TAKE NOTICE THAT by the Order entered on _____, 2016, ("Disclosure Statement Order"), the United States Bankruptcy Court for the District of Utah approved the Disclosure Statement filed by BSD Medical Corporation fka Person Corporation (the "Debtor") and directed the Debtor to solicit votes to accept or reject the *Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan")[1] attached as **Exhibit A** thereto.

**UNDER THE TERMS OF THE PLAN, YOUR CLAIM(S) AGAINST THE DEBTORS IS/ARE NOT IMPAIRED AND, THEREFORE, PURSUANT TO SECTION 1126(F) OF THE BANKRUPTCY CODE, YOU ARE (1) CONCLUSIVELY PRESUMED TO HAVE ACCEPTED THE PLAN AND (2) NOT ENTITLED TO VOTE ON THE PLAN. ACCORDINGLY, THIS NOTICE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

**YOU MAY OBTAIN COPIES OF THE DISCLOSURE STATEMENT ORDER, THE PLAN, AND THE DISCLOSURE STATEMENT FREE OF CHARGE BY EMAILING THE DEBTOR'S COUNSEL, JEFF ARMINGTON, DORSEY & WHITNEY LLP, AT ARMINGTON.JEFF@DORSEY.COM.**

**PLEASE BE ADVISED THAT ARTICLE VI OF THE PLAN CONTAINS THE FOLLOWING RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

---

[1]     Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed to it in the Plan.

*Third-Party Release*

As of the Effective Date, except as otherwise provided in the Plan, or in any contract, instrument or other agreement or document created pursuant to this Plan, the Releasing Parties shall release the Debtor, its Estate, and the Released Parties shall be deemed released, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Releasee that constitutes willful misconduct, bad faith, or gross negligence Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

*Exculpation*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, no Exculpated Party shall have or incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Chapter 11 Case or any contract, instrument, release or other agreement, or document created or entered into in connection with

the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct.

*Injunction*

Except as otherwise expressly provided in the Plan or for obligations required to be paid pursuant to the Plan, or Confirmation Order, all Entities who have held, hold, or may hold claims, interests, or Liens that have been discharged pursuant to Article VI.A, released pursuant to Article VI.B or Article VI.C, or are subject to exculpation pursuant to Article VI.D are, to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined, from and after the Effective Date, from taking any of the following actions against, the Debtor, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

**NOTICE OF NON-VOTING STATUS FOR IMPAIRED CLASS DEEMED TO REJECT THE PLAN**

PLEASE TAKE NOTICE THAT by the Order entered on _____, 2016, ("Disclosure Statement Order"), the United States Bankruptcy Court for the District of Utah approved the Disclosure Statement filed by BSD Medical Corporation fka Person Corporation (the "Debtor") and directed the Debtor to solicit votes to accept or reject the *Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code* (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan")[1] attached as **Exhibit A** thereto.

**UNDER THE TERMS OF THE PLAN, YOU ARE NOT ENTITLED TO RECEIVE OR RETAIN ANY PROPERTY ON ACCOUNT OF YOUR CLAIM(S) AGAINST, OR INTEREST(S) IN, THE DEBTORS AND, THEREFORE, PURSUANT TO SECTION 1126(G) OF THE BANKRUPTCY CODE, YOU ARE (1) DEEMED TO HAVE REJECTED THE PLAN AND (2) NOT ENTITLED TO VOTE ON THE PLAN. ACCORDINGLY, THIS NOTICE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.**

**YOU MAY OBTAIN COPIES OF THE DISCLOSURE STATEMENT ORDER, THE PLAN, AND THE DISCLOSURE STATEMENT FREE OF CHARGE BY EMAILING DEBTOR'S COUNSEL, JEFF ARMINGTON, DORSEY & WHITNEY LLP, AT ARMINGTON.JEFF@DORSEY.COM.**

---

[1]   Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed to it in the Plan.

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

**BALLOT FOR VOTING INTERESTS IN CLASS 3 COMMON STOCK INTERESTS**

The above-captioned "Debtor" has filed the Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan").[1] The Plan is **Exhibit A** to the Debtor's Disclosure Statement (the "Disclosure Statement"), which is included in the materials accompanying this Ballot. If you were, as of November 1, 2016, at 5:00 p.m. (prevailing Mountain Time), the Holder of one or more Interests in Class 3 Common Stock Interests, please use this Ballot to cast your vote to accept or reject the Plan. The Disclosure Statement, which has been approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, provides information to assist you in deciding how to vote on the Plan. The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan. If you have not received or wish to obtain a copy of the Disclosure Statement, please contact Debtor's counsel, Jeff Armington, Dorsey & Whitney LLP, at armington.jeff@dorsey.com.

---

**You should review the Disclosure Statement, the Plan and the Disclosure Statement Order before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Interest or Interests under the Plan.**

**VOTING DEADLINE: 5:00 P.M. (PREVAILING MOUNTAIN TIME) ON**

**DECEMBER 9, 2016**

**If your Ballot is not received by the Debtor's counsel on or before the Voting Deadline and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**Ballots will not be accepted by electronic or facsimile transmission.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

---

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan and/or (ii) to opt out of the release provisions contained in Article VI.C of the Plan.

---

[1]      Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed to it in the Plan.

4852-2683-7816False1False

**HOW TO VOTE**

1. COMPLETE ITEMS 1 AND 2.

2. IF YOU HAVE VOTED TO REJECT THE PLAN BY COMPLETING ITEM 2 AND WISH TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN ARTICLE VI.C OF THE PLAN, COMPLETE ITEM 3.

3. REVIEW THE CERTIFICATIONS CONTAINED IN ITEM 4.

4. **SIGN AND DATE THE BALLOT AND FILL OUT THE OTHER REQUIRED INFORMATION.**

5. YOU MUST VOTE THE FULL AMOUNT OF ALL OF YOUR CLASS 3 COMMON STOCK INTERESTS *EITHER* TO ACCEPT *OR* TO REJECT THE PLAN. YOU MAY NOT SPLIT YOUR VOTE.

6. **ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. IF NO VOTES TO ACCEPT OR REJECT THE PLAN ARE RECEIVED FOR A PARTICULAR CLASS THAT IS ENTITLED TO VOTE ON THE PLAN, SUCH CLASS SHALL BE DEEMED TO HAVE VOTED TO ACCEPT THE PLAN.**

7. IN ORDER FOR YOU VOTE TO BE COUNTED, YOUR ORIGINALLY SIGNED BALLOT MUST BE PROPERLY COMPLETED AND ACTUALLY RECEIVED BY DEBTOR'S COUNSEL NO LATER THAN **DECEMBER 9, 2016 AT 5:00 P.M. (PREVAILING MOUNTAIN TIME)**. YOU MAY USE  THE POSTAGE-PAID ENVELOPE PROVIDED, OR SEND YOUR BALLOT TO THE ADDRESS SET FORTH BELOW:

**DORSEY & WHITNEY LLP**
**C/O JEFF ARMINGTON**
136 S. Main St., Suite 1000
Salt Lake City, UT 84101

2

**Item 1.**     **Amount of Class 3 Common Stock Interests.** The undersigned certifies that, as of November 1, 2016 at 5:00 p.m. (prevailing Mountain Time), the undersigned held the following number of shares of the Debtor's Common Stock:

<br>

**Item 2.**     **Vote.** The holder of the Class 3 Common Stock Interests identified in Item 1 votes as follows (check one box only—if you do not check a box or if you check both boxes, your vote will not be counted):

☐  **Accept** the Plan  OR  ☐  **Reject** the Plan

**Item 3.**     **Release. If you voted to reject the Plan in Item 2 above**, you may check the box below to opt out of the Third Party Release contained in ARTICLE VI.C of the Plan, which provides:

**AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR IN ANY CONTRACT, INSTRUMENT OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THIS PLAN, THE RELEASING PARTIES SHALL RELEASE THE DEBTOR, ITS ESTATE, AND THE RELEASED PARTIES SHALL BE DEEMED RELEASED, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE ASSET PURCHASE AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A DEBTOR RELEASEE THAT CONSTITUTES WILLFUL MISCONDUCT, BAD FAITH, OR GROSS NEGLIGENCE NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE THIRD-PARTY RELEASE SHALL NOT RELEASE ANY OBLIGATIONS OF ANY RELEASED PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE**

4852-2683-7816False1False

**BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD- PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (4) FAIR, EQUITABLE AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

---------------------------------------------------------------------------------------------------------------------

**IF YOU VOTED IN ITEM 2 ABOVE TO REJECT THE PLAN AND YOU DO NOT OPT OUT OF THE RELEASE PROVISIONS BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE RELEASED PARTIES (AS DEFINED IN THE PLAN) FROM, *INTER ALIA*, ANY AND ALL CAUSES OF ACTION (AS DEFINED IN THE PLAN) EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN. IF YOU WOULD OTHERWISE BE ENTITLED TO A RELEASE UNDER ARTICLE VI.C OF THE PLAN BUT YOU DO NOT GRANT THE RELEASES CONTAINED IN  ARTICLE VI.C OF THE PLAN THEN YOU SHALL NOT RECEIVE THE BENEFIT OF THE RELEASES SET FORTH IN ARTICLE VI.C OF THE PLAN.**

☐   By checking this box, the undersigned elects to **opt out** of the Third Party Release.

**Item 4.**    **Certification.** By returning this Ballot, the holder of the Class 3 Common Stock Interests certifies that (a) this Ballot is the only Ballot submitted for the Class 3 Common Stock Interests identified in Item 1, (b) it has full power and authority to vote to accept or reject the Plan for the Class 3 Common Stock Interests identified in Item 1, (c) it was the holder of the Class 3 Common Stock Interests identified in Item 1 as of November 1, 2016 at 5:00 p.m. (prevailing Mountain Time) and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

Name of Common Stock Interest Holder

_____
(Print or Type)

Social Security or Federal Tax ID No.:_____

Signature:_____

Print Name:_____

Title:_____
(If Appropriate)

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

Please check one or both of the below boxes if the above address is a change of address for the purposes of:

☐      Future notice mailings in this Chapter 11 Case; and/or

☐      Distributions, if any, upon your Claim in this Chapter 11 Case.

This Ballot shall not constitute or be deemed a Proof of Claim or Equity Interest, an assertion of a Claim or Equity Interest, or the allowance of a Claim or Equity Interest.

---

**YOUR VOTE MUST BE FORWARDED IN AMPLE TIME TO BE RECEIVED BY DEBTOR'S COUNSEL BY 5:00 P.M. (PREVAILING MOUNTAIN TIME) ON DECEMBER 9, 2016, OR YOUR VOTE WILL NOT BE COUNTED.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTOR'S COUNSEL, JEFF ARMINGTON, DORSEY & WHITNEY LLP, AT ARMINGTON.JEFF@DORSEY.COM.**

# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## BALLOT FOR VOTING INTERESTS IN CLASS 4 PRIVATE WARRANT INTERESTS

The above-captioned "Debtor" has filed the Debtor's Plan Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan").[1] The Plan is **Exhibit A** to the Debtor's Disclosure Statement (the "Disclosure Statement"), which is included in the materials accompanying this Ballot. If you were, as November 1, 2016, at 5:00 p.m. (prevailing Mountain Time), the Holder of one or more Interests in Class 4 Private Warrant Interests, please use this Ballot to cast your vote to accept or reject the Plan. The Disclosure Statement, which has been approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, provides information to assist you in deciding how to vote on the Plan. The Bankruptcy Court's approval of the Disclosure Statement does not indicate approval of the Plan. If you have not received or wish to obtain a copy of the Disclosure Statement, please contact Debtor's counsel, Jeff Armington, Dorsey & Whitney LLP, at armington.jeff@dorsey.com.

---

You should review the Disclosure Statement, the Plan and the Disclosure Statement Order before you vote. You may wish to seek legal advice concerning the Plan and the classification and treatment of your Interest or Interests under the Plan.

**VOTING DEADLINE: 5:00 P.M. (PREVAILING MOUNTAIN TIME) ON**

**DECEMBER 9, 2016**

**If your Ballot is not received by the Debtor's counsel on or before the Voting Deadline and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**Ballots will not be accepted by electronic or facsimile transmission.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

---

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan and/or (ii) to opt out of the release provisions contained in Article VI.C of the Plan.

---

[1]     Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed to it in the Plan.

4832-8310-5592False1False

**HOW TO VOTE**

1.  COMPLETE ITEMS 1 AND 2.

2.  IF YOU HAVE VOTED TO REJECT THE PLAN BY COMPLETING ITEM 2 AND WISH TO
    OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN ARTICLE VI.C OF THE PLAN,
    COMPLETE ITEM 3.

3.  REVIEW THE CERTIFICATIONS CONTAINED IN ITEM 4.

4.  **SIGN AND DATE THE BALLOT AND FILL OUT THE OTHER REQUIRED
    INFORMATION.**

5.  YOU MUST VOTE THE FULL AMOUNT OF ALL OF YOUR CLASS 4 PRIVATE
    WARRANT INTERESTS *EITHER* TO ACCEPT *OR* TO REJECT THE PLAN. YOU MAY
    NOT SPLIT YOUR VOTE.

6.  **ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN
    ACCEPTANCE OR REJECTION OF THE PLAN OR THAT INDICATES BOTH AN
    ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED. IF NO
    VOTES TO ACCEPT OR REJECT THE PLAN ARE RECEIVED FOR A PARTICULAR
    CLASS THAT IS ENTITLED TO VOTE ON THE PLAN, SUCH CLASS SHALL BE
    DEEMED TO HAVE VOTED TO ACCEPT THE PLAN.**

7.  IN ORDER FOR YOU VOTE TO BE COUNTED, YOUR ORIGINALLY SIGNED BALLOT
    MUST BE PROPERLY COMPLETED AND ACTUALLY RECEIVED BY DEBTOR'S
    COUNSEL NO LATER THAN **DECEMBER 9, 2016 AT 5:00 P.M. (PREVAILING
    MOUNTAIN TIME)**. YOU MAY USE THE POSTAGE-PAID ENVELOPE PROVIDED, OR
    SEND YOUR BALLOT TO THE ADDRESS SET FORTH BELOW:

**DORSEY & WHITNEY LLP**
**C/O JEFF ARMINGTON**
136 S. Main St., Suite 1000
Salt Lake City, UT 84101

2

4832-8310-5592False1False

**Item 1.**    **Amount of Class 4 Private Warrant Interests.** The undersigned certifies that, as of November 1, 2016 at 5:00 p.m. (prevailing Mountain Time), the undersigned held the following number of Private Warrants:

<div style="border:1px solid black; height:40px; width:300px; margin:auto;"></div>

**Item 2.**    **Vote.** The holder of the Class 4 Private Warrant Interests identified in Item 1 votes as follows (check one box only—if you do not check a box or if you check both boxes, your vote will not be counted):

☐  **Accept** the Plan  OR  ☐  **Reject** the Plan

**Item 3.**    **Release. If you voted to reject the Plan in Item 2 above**, you may check the box below to opt out of the Third Party Release contained in ARTICLE VI.C of the Plan, which provides:

**AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, OR IN ANY CONTRACT, INSTRUMENT OR OTHER AGREEMENT OR DOCUMENT CREATED PURSUANT TO THIS PLAN, THE RELEASING PARTIES SHALL RELEASE THE DEBTOR, ITS ESTATE, AND THE RELEASED PARTIES SHALL BE DEEMED RELEASED, FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED ON BEHALF OF THE DEBTOR, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE CHAPTER 11 CASE, THE PURCHASE, SALE, OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE ASSET PURCHASE AGREEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A DEBTOR RELEASEE THAT CONSTITUTES WILLFUL MISCONDUCT, BAD FAITH, OR GROSS NEGLIGENCE NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE THIRD-PARTY RELEASE SHALL NOT RELEASE ANY OBLIGATIONS OF ANY RELEASED PARTY UNDER THE PLAN OR ANY DOCUMENT, INSTRUMENT, OR AGREEMENT EXECUTED TO IMPLEMENT THE PLAN.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE**

3

**BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD-PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD- PARTY RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASED PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD-PARTY RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTOR AND ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS; (4) FAIR, EQUITABLE AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

--------------------------------------------------------------------------------------------------------------

**IF YOU VOTED IN ITEM 2 ABOVE TO REJECT THE PLAN AND YOU DO NOT OPT OUT OF THE RELEASE PROVISIONS BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE RELEASED PARTIES (AS DEFINED IN THE PLAN) FROM, *INTER ALIA*, ANY AND ALL CAUSES OF ACTION (AS DEFINED IN THE PLAN) EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN. IF YOU WOULD OTHERWISE BE ENTITLED TO A RELEASE UNDER ARTICLE VI.C OF THE PLAN BUT YOU DO NOT GRANT THE RELEASES CONTAINED IN  ARTICLE VI.C OF THE PLAN THEN YOU SHALL NOT RECEIVE THE BENEFIT OF THE RELEASES SET FORTH IN ARTICLE VI.C OF THE PLAN.**

☐   By checking this box, the undersigned elects to **opt out** of the Third Party Release.

**Item 4.**    **Certification.** By returning this Ballot, the holder of the Class 4 Private Warrant Interests identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Class 4 Private Warrant Interests identified in Item 1, (b) it has full power and authority to vote to accept or reject the Plan for the Class 4 Private Warrant Interests identified in Item 1, (c) it was the holder of the Class 4 Private Warrant Interests identified in Item 1 as of November 1, 2016 at 5:00 p.m. (prevailing Mountain Time) and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

Name of Common Stock Interest Holder

_____

(Print or Type)

Social Security or Federal Tax ID No.:_____

Signature:_____

Print Name:_____

Title:_____

(If Appropriate)

Street Address:_____

City, State, Zip Code:_____

Telephone Number:_____

Email Address:_____

Date Completed:_____

4832-8310-5592False1False

Please check one or both of the below boxes if the above address is a change of address for the purposes of:

☐      Future notice mailings in this Chapter 11 Case; and/or

☐      Distributions, if any, upon your Claim in this Chapter 11 Case.

This Ballot shall not constitute or be deemed a Proof of Claim or Equity Interest, an assertion of a Claim or Equity Interest, or the allowance of a Claim or Equity Interest.

---

**YOUR VOTE MUST BE FORWARDED IN AMPLE TIME TO BE RECEIVED BY DEBTOR'S COUNSEL BY 5:00 P.M. (PREVAILING MOUNTAIN TIME) ON DECEMBER 9, 2016, OR YOUR VOTE WILL NOT BE COUNTED.**

---

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, OR IF YOU NEED A BALLOT OR ADDITIONAL COPIES OF THE DISCLOSURE STATEMENT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT DEBTOR'S COUNSEL, JEFF ARMINGTON, DORSEY & WHITNEY LLP, AT ARMINGTON.JEFF@DORSEY.COM.**

4832-8310-5592False1False

# EXHIBIT F

Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email:  waterman.steven@dorsey.com
        thomson.michael@dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor-in-Possession BSD Medical Corporation
fka Perseon Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## NOTICE OF ENTRY OF ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND NOTICE MATERIALS; (III) APPROVING FORMS OF BALLOTS; (IV) ESTABLISHING SOLICITATION AND VOTING PROCEDURES; (V) SCHEDULING A CONFIRMATION HEARING; AND (VI) ESTABLISHING NOTICE AND OBJECTION PROCEDURES

**PLEASE TAKE NOTICE** that:

1.      By the Order entered on _____, 2016 (the "Disclosure Statement Order"), the United States Bankruptcy Court for the District of Utah approved the Disclosure Statement filed by BSD Medical Corporation fka Perseon Corporation ("Debtor") and directed the Debtor to solicit votes to accept or reject the *Debtor's Plan Pursuant to Chapter 11 of the*

1

*Bankruptcy Code* (as the same may be updated, supplemented, amended and/or otherwise modified from time to time, the "Plan").[1]

2.    The Disclosure Statement Order establishes **November 1, 2016 at 5:00 p.m. (prevailing Mountain Time)** as the Voting Record Date for determining the Holders of Interests entitled to vote on the Plan and establishes **4:00 p.m. (prevailing Mountain Time) on December 9, 2016** as the Voting Deadline for the submission of ballots to accept or reject the Plan (the "Ballots").

3.    A hearing will be held before the Honorable R. Kimball Mosier, on **December 20, 2016 at 11:00 a.m. (prevailing Mountain Time)** or as soon thereafter as counsel may be heard (the "Confirmation Hearing") to consider the entry of an order confirming the Plan. The Confirmation Hearing may be continued from time to time without further notice other than a notice filed on the Court's docket or an announcement by the Debtor of the adjourned date(s) at the Confirmation Hearing or any continued hearing, and the Plan may be modified, if necessary, pursuant to section 1127 of the Bankruptcy Code, before, during or as a result of the Confirmation Hearing, without further notice to interested parties.

4.    Objections to the confirmation of the Plan must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "Notice Parties": (a) counsel to the Debtor, Dorsey & Whitney LLP, 136 South Main St. Suite 1000, Salt Lake City, Utah 84101 Attn: Steven T. Waterman, email: waterman.steven@dorsey.com; and (b) the Office of the United States Trustee for the District of Utah, 405 South Main St. #300, Salt Lake City, UT 84111 (collectively, the "Notice Parties").

5.    If you do not want the Court to confirm the Plan, or if you want the Court to consider your views on the Plan, then you or your attorney must do each of the following:

(a)    On or before **4:00 p.m. prevailing Mountain Time on December 7, 2016** (the "Objection Deadline"), file a written objection specifically delineating the nature of your objection at:

Clerk of the Court
United States Bankruptcy Court
350 South Main Street, Room 301
Salt Lake City, UT 84101

If you mail your objection to the Court for filing, you must mail it early enough so that the Court will receive it on or before the Objection Deadline specified above. You must also serve a copy on the Notice Parties at the addresses specified above.

(b)    Attend the Confirmation Hearing at **11:00 a.m. prevailing Mountain Time on December 20, 2016** before the Honorable R. Kimball Mosier, in his courtroom, Room

---

[1]    Unless otherwise defined herein, each capitalized term used herein shall have the meaning ascribed to it in the Plan.

369, of the Frank E. Moss United States Courthouse, 350 South Main Street, Salt Lake City, Utah 84101.  Failure to attend the Confirmation Hearing will be deemed a waiver of your objection.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED AS PROVIDED HEREIN, IT MAY NOT BE CONSIDERED AT THE CONFIRMATION HEARING.**

6.      Holders of Interests entitled to vote on the Plan will receive (i) electronic copies on CD-ROM of the Disclosure Statement Order, the Disclosure Statement, the Plan, and certain exhibits thereto, (ii) this notice, and (iii) a Ballot, together with a pre-addressed postage pre-paid envelope to be used by you in voting to accept or to reject the Plan. Failure to follow the instructions set forth on the Ballot may disqualify that Ballot and the vote represented thereby.

7.      If you should have any questions or if you would like to obtain additional copies of the Plan, Disclosure Statement, or any other solicitation materials, (or paper copies of solicitation materials if you received a CD-ROM), please contact Debtor's counsel, Jeff Armington, Dorsey & Whitney LLP, at armington.jeff@dorsey.com. Additionally, the Plan, Disclosure Statement, or any other solicitation materials exhibits may be found for a fee at the Court's website (http://www.utb.uscourts.gov/) for registered users of the Public Access to Court Electronic Records (PACER) System.

8.      Holders of (i) Unimpaired Claims and (ii) Claims or Interests that will receive no distribution under the Plan are not entitled to vote on the Plan and, therefore, will receive a notice of non-voting status rather than a Ballot.

9.      **PLEASE BE ADVISED THAT ARTICLE VI OF THE PLAN CONTAINS THE FOLLOWING RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

*Third-Party Release*

**As of the Effective Date, except as otherwise provided in the Plan, or in any contract, instrument or other agreement or document created pursuant to this Plan, the Releasing Parties shall release the Debtor, its Estate, and the Released Parties shall be deemed released, from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Asset Purchase Agreement, or related agreements, instruments, or other**

documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Debtor Releasee that constitutes willful misconduct, bad faith, or gross negligence Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any obligations of any Released Party under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third- Party Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

### *Exculpation*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to this Plan, no Exculpated Party shall have or incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Asset Purchase Agreement, the Chapter 11 Case or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor; provided, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; provided, further, that the foregoing Exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct.

### *Injunction*

Except as otherwise expressly provided in the Plan or for obligations required to be paid pursuant to the Plan, or Confirmation Order, all Entities who have held, hold, or may hold claims, interests, or Liens that have been discharged pursuant to Article VI.A, released pursuant to Article VI.B or Article VI.C, or are subject to exculpation pursuant to Article VI.D are, to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined, from and after the Effective Date, from taking any of the following actions against, the Debtor, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind

**on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right prior to the Effective Date in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

DATED this __th day of _____, 2016.

**DORSEY & WHITNEY LLP**

*/s/*_____
Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor-in-Possession BSD Medical*
*Corporation fka Perseon Corporation*