Steven T. Waterman (4164)
Michael F. Thomson (9707)
Jeffrey M. Armington (14050)
DORSEY & WHITNEY LLP
136 South Main Street, Suite 1000
Salt Lake City, UT  84101-1685
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: waterman.steven@dorsey.com
        thomson.michael @dorsey.com
        armington.jeff@dorsey.com

*Attorneys for Debtor in Possession*
*BSD Medical Corporation fka Perseon Corporation*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: | Case No. 16-24435 |
| BSD MEDICAL CORPORATION fka PERSEON CORPORATION, | Chapter 11 |
| Debtor. | Chief Judge R. Kimball Mosier |

## DEBTOR'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH CLINTON E. CARNELL JR. AND B.E. CAPITAL MANAGEMENT FUND LP PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

Pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

(the "Bankruptcy Code"), and rules 9014 and 9019 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and the Local Rules of this Court, BSD Medical

Corporation fka Perseon Corporation ("BSD" or "Debtor"), the debtor in possession in the

above-captioned bankruptcy case, by and through its counsel, submits this motion (the "Motion")

for entry of an Order authorizing the Debtor's entry into the Settlement Agreement, with B.E.

Capital Management Fund LP ("B.E.") and Clinton E. Carnell Jr. ("Carnell" and together with

the Debtor and B.E., the "Parties"), a copy of which is attached hereto as **Exhibit A** (the

"Settlement Agreement").[1]  In support of the Motion, the Debtor states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code sections

105(a) and 365 as well as Bankruptcy Rules 6006 and 9014.

## BACKGROUND

*General Background*

3.      On May 23, 2016 (the "Petition Date") the Debtor filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

District of Utah (the "Court") thereby commencing the above-captioned "Chapter 11 Case."

4.      No trustee, examiner, or official committee of unsecured creditors has been

appointed in this case.  The Debtor is operating its business as a debtor-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

5.      A detailed discussion of the Debtor's history, description of its business and the

events that led to its need for bankruptcy relief are set forth in the *Declaration of Clinton E.*

---

[1]      Capitalized terms used herein and not defined shall have the meanings ascribed to them
in the Settlement Agreement.

*Carnell Jr. in Support of Chapter 11 Petition and First Day Motions* [Docket No. 13] (the "Omnibus Declaration").

<u>*Asset Sale and Proposed Plan*</u>

6.        On May 24, 2016, the Debtor filed *Debtor's Motion for Orders Pursuant to 11 U.S.C. §§ 105(a), 363, 364, 365, 503, and 507 and Fed. R. Bankr. P. 6004 and 6007: (I)(A) Authorizing Entry Into and Assumption of Asset Purchase Agreement, (B) Authorizing Bid Protections, (C) Authorizing Bidding Procedures and Auction, and (D) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing Sale of Assets; and (III) Granting Related Relief* [Docket No. 24] (the "Sale Motion").  The Sale Motion sought Court approval of a sale of substantially all of the Debtor's assets through an asset purchase agreement (the "APA") to MedLink Technologies, LLC, a wholly owned subsidiary of Scion Medical Technologies, LLC ("Scion"), for a total purchase price of $4,350,000.00, subject to higher and better offers at auction.

7.        On August 11, 2016, the Bankruptcy Court entered its *Order Authorizing Sale of Assets* [Docket No. 160] (the "Sale Order"), which authorized the Debtor's sale of assets to Scion pursuant to the APA.  Under the APA, the Debtor sold the name "Perseon Corporation" to Scion, and consequently, the Debtor has taken action with the Delaware Division of Corporations to change its name to BSD Medical Corporation.

8.        On August 22, 2016, the sale transaction contemplated under the APA closed and the Debtor received the balance of the $4.35 million purchase price, having previously received the $850,000 bid deposit, from Scion.

3

9.     On September 16, 2016, the Debtor filed *Debtor's Motion for Entry of Order (I)* *Approving the Disclosure Statement; (II) Approving Solicitation and Notice Materials; (III)* *Approving Forms of Ballots; (IV) Establishing Solicitation and Voting Procedures; (V)* *Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [Docket No. 211] (the "Disclosure Statement Motion").

10.     Through the Disclosure Statement Motion, the Debtor seeks entry of an Order approving the adequacy of the Debtor's proposed disclosure statement a copy of which is attached to the Disclosure Statement Motion as Exhibit A (the "Disclosure Statement"), as it relates to the Debtor's proposed plan which is attached to the Disclosure Statement as Exhibit 1 (the "Plan").

11.     The Disclosure Statement and Plan indicate that allowed unsecured claims are unimpaired because they will be paid in full with interest.

12.     A hearing on the Disclosure Statement Motion is set for November 1, 2016.

*Carnell and B.E. Claims*

13.     On November 10, 2014, the Debtor and Mr. Carnell entered into that certain "Employment Agreement", which among other things provides for: (i) a $350,000 annual base salary (the "Base Salary"), (ii) a $150,000 minimum annual bonus, (iii) vacation pay, and (iv) a severance payment in an amount equal to two years' worth of Base Salary.

14.     On May 23, 2016, the Debtor filed its Schedules and Statement of Financial Affairs [Docket No. 4], which listed Mr. Carnell as having a general unsecured claim in the amount of $830,212.00 ("Carnell's Scheduled Claim").

4

15.    On September 8, 2016, the Debtor filed *Debtor's Motion for Entry of an Order Authorizing Rejection of Clinton E. Carnell Employment Agreement* [Docket No. 202] (the "Carnell Rejection Motion"), through which the Debtor seeks to reject the Employment Agreement as of the Petition Date.

16.    On September 13, 2016, Mr. Carnell filed a general unsecured proof of claim docketed as Claim No. 44 in the Bankruptcy Case in the face amount of $756,651.00, plus an attachment indicating additional compensation that Mr. Carnell asserts he accrued prior to the Petition Date (the "Carnell Proof of Claim"). B.E. contends that the Carnell Proof of Claim is overstated and should be reduced because in part Mr. Carnell did not receive any Base Salary during 2016 prior to the Petition Date.

17.    B.E. did not do business with the Debtor. Since the filing of the petition, B.E. has purchased claims of others against the Debtor.

18.    B.E. owns the following claims in the Bankruptcy Case (collectively, the "B.E. Claims"): (i) Claim No. 20, $2,293.85 general unsecured claim; (ii) Claim No. 22, $56,495.36 general unsecured claim; (iii) Claim No. 25, $42,012.70 general unsecured claim; (iv) Claim No. 30, $4,924.23 general unsecured claim; (v) Claim No. 33, $10,491.74 general unsecured claim; and (vi) Claim No. 35, $8,329.20 general unsecured claim.

*Motion to Convert and Appeals*

19.    On August 12, 2016, B.E. filed its *Motion for Order Converting Case to Chapter 7* [Docket No. 162] (the "Motion to Convert"), which seeks to convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code. The Court held a preliminary hearing on the Motion to Convert on September 20, 2016, and an evidentiary hearing was scheduled for

October 5, 2016, but has been continued to November 1, 2016, due to a settlement, as discussed herein.

20.    In the Motion to Convert, B.E. argues that the Court must convert the Chapter 11 Case to a case under chapter 7 because the administrative expenses incurred by the Debtor to confirm the Plan constitute a diminution of the estate's assets.  In response, the Debtor has argued that the administrative expenses incurred by the Debtor to confirm the Plan do not constitute a diminution of assets and that conversion is not in the best interests of the Debtor's creditors and that unusual circumstances exist.  Resolving the Motion to Convert will require an evidentiary hearing and any resulting Order either denying or granting the Motion to Convert would likely be appealed by one of the parties.

21.    On August 2, 2016, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Authorizing Debtor to Reinstate Salary Pursuant to Debtor's Employment Agreement with Clinton E. Carnell Jr.* [Docket No. 148] (the "Salary Reinstatement Order"), which authorized the Debtor to reinstate compensation for Mr. Carnell pursuant to the Employment Agreement.

22.    On August 3, 2016, the Court entered its *Order Granting Application of the Debtor for Entry of an Order Authorizing the Retention and Employment of Dorsey & Whitney LLP as Counsel for the Debtor in Possession* [Docket No. 150] (the "Dorsey Retention Order").

23.    On August 16, 2016, B.E. filed a notice of appeal of the Salary Reinstatement Order with the United States Bankruptcy Appellate Panel of the Tenth Circuit [Docket No. 167], which appeal is now pending before the United States District Court for the District of Utah as case number 2:16-cv-00968-DB (the "Salary Reinstatement Order Appeal").

6

24.    In the Salary Reinstatement Order Appeal, B.E. argues that the Court improperly entered the Salary Reinstatement Order without the Debtor having provided proper notice to parties or providing sufficient evidence, and that the Salary Reinstatement Order improperly promised to pay Mr. Carnell more than one million dollars prior to the Court's entry of the Sale Order. The Debtor disputes B.E.'s claims about the evidentiary record, the propriety of notice, and the impact of the Salary Reinstatement Order.

25.    On August 17, 2016, B.E. filed a notice of appeal of the Dorsey Retention Order with the United States Bankruptcy Appellate Panel of the Tenth Circuit [Docket No. 172], which appeal is now pending before the United States District Court for the District of Utah as case number 2:16-cv-00969-DB (the "Dorsey Retention Order Appeal" and together with the Salary Reinstatement Order Appeal, the "Appeals").

26.    In the Dorsey Retention Order Appeal, B.E. argues that the Debtor provided insufficient evidence to establish either a contemporaneous exchange or new value defense to potentially preferential payments made by the Debtor to its counsel prior to the Petition Date. The Debtor disputes these assertions.

27.    The Appeals are both in their infancy and neither B.E. nor the Debtor have submitted briefs on the merits.

### THE SETTLEMENT AGREEMENT

28.    The Debtor has filed the Disclosure Statement Motion, which seeks Court-authority to solicit votes on the Plan that promises to pay creditors in full. Following the filing of the Disclosure Statement Motion, the Parties entered into good faith and arms' length negotiations to resolve the disputes between them before the Parties spend substantially more

money to resolve the Motion to Convert, the allowed amount of the Carnell Proof of Claim, and

the Appeals. Accordingly, the Parties have entered into the Settlement Agreement to resolve

their disputes and hopefully to pave the way toward a consensual confirmation of the Plan. The

principal terms of the Settlement Agreement are as follows:[2]

    a. <u>Reduction and Allowance of Carnell Proof of Claim</u>. The Parties agree that the Carnell Proof of Claim shall be reduced and allowed as a general unsecured claim in the Bankruptcy Case in the amount of $700,000.00 (the "<u>Allowed Carnell Claim</u>"). Carnell agrees that he shall receive no distribution from the Debtor in the Bankruptcy Case other than any payment from the Debtor's estate on account of the Allowed Carnell Claim.

    b. <u>B.E. Substantial Contribution Claim</u>. The Parties agree that B.E. shall have an allowed claim under 11 U.S.C. § 503(b)(4) in the amount of its reasonable, documented attorneys' fees and expenses incurred through September 30, 2016 in connection with the Bankruptcy Case and Appeals, subject to a $50,000 cap (the "<u>Substantial Contribution Claim</u>"). Within three business days following the Effective Date, B.E. shall file a declaration with the Court attaching invoices detailing such fees and expenses and serve a copy of the same via ECF. Court approval of this Agreement shall constitute a final determination as to the reasonableness of B.E.'s attorneys' fees and expenses. B.E. agrees that other than the Substantial Contribution Claim, and payment on account of the B.E. Claims or any other claims that B.E. purchases in the Bankruptcy Case, that B.E. will not receive any distribution on account of any other administrative claim or proof of claim in the Bankruptcy Case.

    c. <u>Stay of Appeals and Motions</u>. As of the Effective Date of this Agreement, B.E. agrees to continue the Motion to Convert and to stay the Appeals until the Court has had an opportunity to rule on the Debtor's motion for approval of this Agreement. The Debtor agrees to consent to any such stays to the extent necessary.

    d. <u>Dismissal of Appeals and Withdrawal of Motion to Convert</u>. Upon entry of an Order by the Court approving this Agreement, B.E. agrees to withdraw the Motion to Convert and dismiss the Appeals with prejudice.

---

[2]     If there are any inconsistencies between the Settlement Agreement and the summary provided herein, the Settlement Agreement shall control.

e. <u>Payment of the Substantial Contribution Claim</u>. The Debtor and B.E. agree that
the Substantial Contribution Claim shall be paid as an administrative claim in the
Bankruptcy Case on the effective date of the Plan. However, in the event that
B.E. files additional motions or objections in the Bankruptcy Case (other than any
objection by B.E. to the language in the Disclosure Statement), or appeals any
Orders by the Court in the Bankruptcy Case, the Debtor reserves the right to
withhold any payment that may be owed to B.E.

## APPLICABLE LAW AND ANALYSIS

I.  **The Debtor's Entry Into the Settlement Agreement is Proper Pursuant to Federal
Rule of Bankruptcy Procedure 9019 and the *Kopexa* Factors**

29.     Federal Rule of Bankruptcy Procedure 9019 provides: "[o]n motion by the
[debtor-in-possession] and after notice and a hearing, the court may approve a compromise or
settlement."[3] Settlements and compromises "are favored in bankruptcy."[4] "The purpose behind
compromises is to allow the [debtor-in-possession] and creditors to avoid the expenses and
burdens associated with litigating sharply contested and dubious claims."[5] "In approving a
settlement, the bankruptcy court is not required to conduct a 'mini-trial' on the merits."[6]

---

[3]     Fed. R. Bankr. P. 9019(a).

[4]     *Korngold v. Loyd (In re Southern Med. Arts Cos.)*, 343 B.R. 250, 255 (B.A.P. 10th Cir.
2006) (*quoting* 10 COLLIER ON BANKRUPTCY ¶ 9019.01, at 9019-2 (Alan N. Resnick &
Henry J. Sommer eds., 15th rev. ed. 2006)).

[5]     *Southern Med. Arts*, 343 B.R. at 255 (*quoting Martin v. Kane (In re A&C Props.)*, 784
F.2d 1377, 1380–81 (9th Cir. 1986)).

[6]     *In re Armstrong*, 285 B.R. 344 at *3 (B.A.P. 10th Cir. 2002) (table decision) (citations
omitted); *accord In re Dennett*, 449 B.R. 139, 145 (Bankr. D. Utah 2011) ("[T]he Court
is not required to hold a mini-trial on the issues involved in the case being
compromised.").

"Rather, the obligation of the court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[7]

30.    In a frequently cited opinion, the Bankruptcy Appellate Panel for the Tenth Circuit established the following four factors (referred to as the "*Kopexa* Factors") that bankruptcy courts should consider in determining the propriety of a settlement for purposes of approval under Bankruptcy Rule 9019:

    (1)    the probable success of the underlying litigation on the merits;

    (2)    the possible difficulty in collection of a judgment;

    (3)    the complexity and expense of the litigation; and

    (4)    the interest of creditors in deference to their reasonable views.[8]

31.    As discussed below, an evaluation of the *Kopexa* Factors shows that the Settlement Agreement is fair, equitable, and in the best interests of the Debtor's estate.

**A.  <u>Probability of Success of Litigation on the Merits</u>**

32.    The first *Kopexa* Factor requires the Court to consider the probable success of the underlying litigation on the merits.  To avoid the costs, expense and uncertainty of litigation and collection, the Debtor engaged in arms' length and good faith settlement negotiations with both B.E. and Mr. Carnell.

---

[7]    *Dennett*, 449 B.R. at 145 (citations omitted).

[8]    *C.K. Williams, Inc. v. All Am. Life Ins. Co. (In re Kopexa Realty Venture Co.)*, 213 B.R. 1020, 1022 (B.A.P. 10th Cir. 1997); *see Am. Employers' Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478-79 (10th Cir. 1977) (applying 10-factor test for approval of settlement); *see also Southern Med. Arts*, 343 B.R. at 257 n.5 (recognizing that the *Kopexa* Factors collapse and take into consideration the 10-point test established in *King Resources*).

33.     Although the Debtor believes it has strong arguments against the Motion to Convert and in the Appeals, the cost of continuing to litigate the Motion to Convert and the Appeals, coupled with the delays to the administration of the Debtor's estate that litigation could cause, is not warranted. Continuing to litigate the Motion to Convert and the Appeals, along with any additional litigation with B.E. as to the proposed Disclosure Statement and Plan and Plan confirmation will squander estate resources to the detriment of the Debtor's claim and interest holders.

34.     Due to the BAPCPA amendments to section 1112, there is no clear interpretation or resolution the legal issues in connection with subsection 1112(b)(2) raised by B.E.

35.     The Carnell Proof of Claim is based upon a contract that establishes a prima facie claim against the estate, although there are issues that have been raised concerning the claim.

**B.  Possible Difficulty in Collection of Judgment**

36.     The second *Kopexa* Factor is not relevant here as the Debtor is not seeking to collect funds from with B.E. or Mr. Carnell. Instead both are asserting claims against the estate.

37.     The Debtor is requesting Court approval to enter into the Settlement Agreement to avoid squandering further estate resources, not to avoid pursuing an uncollectible judgment.

**C.  Complexity and Expense of Litigation**

38.     The third *Kopexa* Factor requires the Court to consider the complexity and expense of any litigation. Given the fact that the Appeals are in their infancy and that resolution of the Appeals would be time-consuming and costly to the estate, the Debtor believes that the litigation related to the Appeals will be expensive. The Dorsey Retention Order Appeal will involve at a minimum argument over the application of the contemporaneous exchange for new

11

value defense in connection with a professional retention application and employment and the Salary Reinstatement Order Appeal will involve litigation surrounding whether the Debtor's board of directors properly authorized Mr. Carnell's salary reinstatement and whether the Debtor's evidence properly supported the Court's entry of the Salary Reinstatement Order.

39.    Continuing to litigate both of these Appeals will be expensive and complex. Although the Motion to Convert has been fully briefed, it will be expensive for the Debtor to prepare for and attend an evidentiary hearing on that motion.

40.    Litigating the amount and proper calculation of the Carnell Proof of Claim will also require time and expense.

41.    Further, the arguments surrounding the application of 11 U.S.C. § 1112(b) to this Chapter 11 Case, where the Debtor is seeking approval of a Disclosure Statement and Plan, which promises to deliver payment in full to creditors, is inherently complex and very unusual. Accordingly, this factor supports the Debtor's entry into the Settlement Agreement.

**D. Interest of Creditors**

42.    The final *Kopexa* Factor looks at the interests of creditors in deference to their reasonable views. In the Debtor's business judgment, settlement of all the disputes among the Parties pursuant to the Settlement Agreement is in the best interests of the Debtor's estate.

43.    Pursuant to the Settlement Agreement, Mr. Carnell has agreed to reduce the allowed amount of the Carnell Proof of Claim to $700,000, a reduction of approximately $56,000, and without further claims by Mr. Carnell and litigation as to the calculation of the claim.

44.     The reduction of the Carnell Proof of Claim offsets the $50,000 maximum allowed amount of the Substantial Contribution Claim.

45.     Entry into the Settlement Agreement will allow the Debtor to avoid the costs and delays inherent with continuing to litigate the Appeals and the Motion to Convert and complications with confirmation of its proposed Plan. Therefore, the last factor also supports the Settlement Agreement.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests the entry of an Order approving the Debtor's entry into the Settlement Agreement.

DATED this 14th day of October, 2016.

**DORSEY & WHITNEY LLP**

*/s/ Jeffrey M. Armington*
Steven T. Waterman
Michael F. Thomson
Jeffrey M. Armington
*Attorneys for Debtor in Possession, BSD*
*Medical Corporation fka Perseon*
*Corporation*

# EXHIBIT A

## SETTLEMENT AGREEMENT

This settlement agreement (this "Agreement") is entered into this 13th day of October, 2016 (the "Effective Date"), by and between (i) B.E. Capital Management Fund LP ("B.E."), (ii) Clinton E. Carnell Jr. ("Carnell"), and (iii) BSD Medical Corporation f/k/a Perseon Corporation ("BSD" or "Debtor" and together with B.E. and Carnell, the "Parties"), the debtor in possession in the bankruptcy case styled as *In re BSD Medical Corporation fka Perseon Corporation*, Case No. 16-24435 (the "Bankruptcy Case"), filed in the United States Bankruptcy Court for the District of Utah (the "Court").

### RECITALS

A.    On November 10, 2014, the Debtor and Carnell entered into that certain "Employment Agreement", which among other things provides for: (i) a $350,000 annual base salary (the "Base Salary"), (ii) a $150,000 minimum annual bonus, (iii) vacation pay, and (iv) a severance payment in an amount equal to two years' worth of Base Salary.

B.    On May 23, 2016 (the "Petition Date"), Perseon filed a petition seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, with the Court thus commencing the Bankruptcy Case.

C.    On May 23, 2016, the Debtor filed its Schedules and Statement of Financial Affairs [Docket No. 4], which listed Carnell as having a general unsecured claim in the amount of $830,212.00 ("Carnell's Scheduled Claim").

D.    On August 2, 2016, the Court entered its *Order Granting Debtor's Motion for Entry of an Order Authorizing Debtor to Reinstate Salary Pursuant to Debtor's Employment Agreement with Clinton E. Carnell Jr.* [Docket No. 148] (the "Salary Reinstatement Order"), which authorized the Debtor to reinstate compensation for Carnell pursuant to the Employment Agreement.

E.    On August 3, 2016, the Court entered its *Order Granting Application of the Debtor for Entry of an Order Authorizing the Retention and Employment of Dorsey & Whitney LLP as Counsel for the Debtor in Possession* [Docket No. 150] (the "Dorsey Retention Order").

F.    On August 12, 2016, B.E. filed its *Motion for Order Converting Case to Chapter 7* [Docket No. 162] (the "Motion to Convert"), which seeks to convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.   The Court held a preliminary hearing on the Motion to Convert on September 20, 2016, and an evidentiary hearing was scheduled for October 5, 2016.

G.    On August 16, 2016, B.E. filed a notice of appeal of the Salary Reinstatement Order with the United States Bankruptcy Appellate Panel of the Tenth Circuit [Docket No. 167], which appeal is now pending before the United States District Court for the District of Utah as case number 2:16-cv-00968-DB (the "Salary Reinstatement Order Appeal").

H.     On August 17, 2016, B.E. filed a notice of appeal of the Dorsey Retention Order with the United States Bankruptcy Appellate Panel of the Tenth Circuit [Docket No. 172], which appeal is now pending before the United States District Court for the District of Utah as case number 2:16-cv-00969-DB (the "Dorsey Retention Order Appeal" and together with the Salary Reinstatement Order Appeal, the "Appeals").

I.     On September 8, 2016, the Debtor filed *Debtor's Motion for Entry of an Order Authorizing Rejection of Clinton E. Carnell Employment Agreement* [Docket No. 202] (the "Carnell Rejection Motion"), through which the Debtor seeks to reject the Employment Agreement as of the Petition Date.

J.     On September 13, 2016, Carnell filed a general unsecured proof of claim docketed as Claim No. 44 in the Bankruptcy Case in the face amount of $756,651.00, plus additional compensation that Carnell claims he accrued prior to the Petition Date (the "Carnell Proof of Claim").

K.     On September 16, 2016, the Debtor filed *Debtor's Motion for Entry of Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Notice Materials; (III) Approving Forms of Ballots; (IV) Establishing Solicitation and Voting Procedures; (V) Scheduling a Confirmation Hearing; and (VI) Establishing Notice and Objection Procedures* [Docket No. 211] (the "Disclosure Statement Motion").  Through the Disclosure Statement Motion, the Debtor seeks entry of an Order approving the adequacy of the Debtor's proposed disclosure statement a copy of which is attached to the Disclosure Statement Motion as Exhibit A (the "Disclosure Statement"), as it relates to the Debtor's proposed plan which is attached to the Disclosure Statement as Exhibit 1 (the "Plan").  The Court has scheduled a hearing on the Disclosure Statement Motion for November 1, 2016.

L.     B.E. owns the following claims in the Bankruptcy Case (collectively, the "B.E. Claims"): (i) Claim No. 20, $2,293.85 general unsecured claim; (ii) Claim No. 22, $56,495.36 general unsecured claim; (iii) Claim No. 25, $42,012.70 general unsecured claim; (iv) Claim No. 30, $4,924.23 general unsecured claim; (v) Claim No. 33, $10,491.74 general unsecured claim; and (vi) Claim No. 35, $8,329.20 general unsecured claim.

M.     The Parties have exchanged information and entered into arms' length and good-faith negotiations to avoid the costs, expenses and uncertainty of ongoing litigation, and without admitting liability or wrong doing by any Party, the Parties have agreed to resolve and compromise the claims and disputes which may exist between them, whether known or unknown, pursuant to the terms and conditions more fully set forth below.

## AGREEMENT

NOW THEREFORE, in consideration of the mutual promises, covenants and agreements set forth in this Agreement, and based upon the foregoing recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Reduction and Allowance of Carnell Proof of Claim**.  The Parties agree that the Carnell Proof of Claim shall be reduced and allowed as a general unsecured claim in the Bankruptcy Case in the amount of $700,000.00 (the "Allowed Carnell Claim").  Carnell agrees that he shall receive no distribution from the Debtor in the Bankruptcy Case other than any payment from the Debtor's estate on account of the Allowed Carnell Claim.  Carnell agrees that he shall not receive any distribution in the Bankruptcy Case on account of Carnell's Scheduled Claim or any amounts asserted in the Carnell Proof of Claim in excess of the Allowed Carnell Claim, or on account of any administrative claim or proof of claim (other than an amended proof of claim for the amount of the Allowed Carnell Claim) in the Bankruptcy Case or upon any other basis.

2. **B.E. Substantial Contribution Claim**.  The Parties agree that B.E. shall have an allowed claim under 11 U.S.C. § 503(b)(4) in the amount of its reasonable, documented attorneys' fees and expenses incurred through September 30, 2016 in connection with the Bankruptcy Case and Appeals, subject to a $50,000 cap (the "Substantial Contribution Claim").  Within three business days following the Effective Date, B.E. shall file a declaration with the Court attaching invoices detailing such fees and expenses and serve a copy of the same via ECF.  Court approval of this Agreement shall constitute a final determination as to the reasonableness of B.E.'s attorneys' fees and expenses.  B.E. agrees that other than the Substantial Contribution Claim, and payment on account of the B.E. Claims or any other claims that B.E. purchases in the Bankruptcy Case, that B.E. will not receive any distribution on account of any other administrative claim or proof of claim in the Bankruptcy Case.

3. **Stay of Appeals and Motions**.  As of the Effective Date of this Agreement, B.E. agrees to continue the Motion to Convert and to stay the Appeals until the Court has had an opportunity to rule on the Debtor's motion for approval of this Agreement.  The Debtor agrees to consent to any such stays to the extent necessary.

4. **Dismissal of Appeals and Withdrawal of Motion to Convert**.  Upon entry of an Order by the Court approving this Agreement, B.E. agrees to withdraw the Motion to Convert and dismiss the Appeals with prejudice.

5. **Payment of the Substantial Contribution Claim**.  The Debtor and B.E. agree that the Substantial Contribution Claim shall be paid as an administrative claim in the Bankruptcy Case on the effective date of the Plan.  However, in the event that B.E. files additional motions or objections in the Bankruptcy Case (other than any objection by B.E. to the language in the Disclosure Statement), or appeals any Orders by the Court in the Bankruptcy Case, the Debtor reserves the right to withhold any payment that may be owed to B.E.

6. **Denial of Liability**.  The Parties deny any liability to one another and state that they are entering into this Agreement to resolve issues between them without litigation and the expenses related thereto.

7. **Release of Claims Among the Carnell Release Parties and the Debtor Release Parties**.  Except as set forth in Paragraph 8, effective on the payment of the Allowed Carnell Claim, certain of the Parties agree as follows: (A)  Release by the Carnell Release Parties:

Carnell, on behalf of himself and his agents, and his successors and assigns (the "Carnell Release Parties"), hereby releases and forever discharges the Debtor, as well as the Debtor's officers, directors, agents, attorneys and representatives, and any predecessors, successors and assigns thereof (collectively, the "Debtor Release Parties") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, expenses, set off, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, that the Carnell Release Parties may have against the Debtor Released Parties from the beginning of time to the date of this Release, or which may hereafter accrue against the Debtor Released Parties based upon any claims, acts or omissions occurring prior to the date of this Release, including but not limited to all claims related to the Carnell Allowed Claim. (B)  Release by the Debtor Release Parties.  The Debtor Release Parties hereby release and forever discharge the Carnell Release Parties, and their officers, directors, agents, attorneys and representatives, and any predecessors, successors and assigns thereof from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, expenses, set off, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent, that the Debtor Release Parties may have against the Carnell Release Parties from the beginning of time to the date of this Release, or which may hereafter accrue against the Carnell Release Parties based upon any claims, acts or omissions occurring prior to the date of this Release, including but not limited to all claims related to the Carnell Allowed Claim.

8.  **Exception from Releases**.  Notwithstanding the releases set forth in Paragraph 7, the Carnell Release Parties do not release any of the Debtor Release Parties or their insurers, sureties, co-obligors or other third parties from any claims debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, expenses, set offs, or claims for recoupment, or other rights of any nature whatsoever, known or unknown, fixed or contingent, to the extent the Carnell Release Parties seek indemnification, contribution or reimbursement of any kind arising out of or related to Carnell's service to the Debtor as an officer or director.

9.  **Attorneys' Fees and Costs**.  The Parties agree that they will bear their own respective attorneys' fees and costs incurred in connection with entering into, obtaining Court approval of, and implementing this Agreement.

10. **Court Approval**.  The Debtor's entry into this Agreement is to approval by the Court, which the Parties agree has jurisdiction over the Bankruptcy Case.

11. **Effectuation of Agreement**.  The Parties agree to perform any other or further acts, and execute and deliver any other or further documents, as may be necessary or appropriate to implement this Agreement, including without limitation any documents necessary to obtain approval of this Agreement from the Court.  Except as specifically required by any Order entered by the Court, the Debtor may execute any documents necessary to effectuate this Agreement without further notice and hearing.

12. **Binding Effect**.  This Agreement shall be binding upon each of the Parties and their respective successors-in-interest, assigns, executors, affiliates, administrators, personal representatives, estates and to all persons or entities claiming by, through or under them,

including but not limited to any successor to the Debtor. All representations and warranties made herein shall survive execution of this Agreement and shall at all times subsequent to the execution of this Agreement remain binding and fully enforceable.

13. **Bankruptcy Court Jurisdiction**. Any claims or causes of action, whether legal or equitable, arising out of or based upon this Agreement or related documents, including but not limited to the interpretation and/or enforcement of this Agreement, shall be commenced in the Court. The Parties hereby consent to the jurisdiction, venue and process of the Court.

14. **Governing Law**. This Agreement is made pursuant to, and, except where specifically stated otherwise, shall be governed by the laws of the State of Utah and, where applicable, federal bankruptcy law.

15. **Construction of Agreement**. This Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with governing law. This Agreement has been negotiated by each of the Parties (or their respective counsel), and the language of the Agreement shall not be construed for or against any particular Party.

16. **Voluntary Agreement**. This Agreement has been carefully read by the Parties and has been reviewed by the Parties' respective legal counsel; the contents hereof are known and understood by the Parties; and each of the Parties acknowledges that such Party is under no duress or undue influence and that each of the Parties executes this Agreement as its own free and voluntary act.

17. **Integration and Amendments**. This Agreement shall constitute the entire agreement and understanding of and between the Parties in relation to matters described herein, and no statements, representations, inducements or promises other than as expressly set forth herein have been given or received by any of the Parties (nor by their respective agents, employees, attorneys or representatives) in return for the same. All negotiations, oral conversations, statements, representations and/or agreements leading up to the execution of this Agreement are merged herewith and shall not be the basis for any legal rights, claims or defenses in relation to any litigation or otherwise. No parole or extrinsic evidence may be used to contradict any of the terms of this Agreement. Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties hereto, and specifically state the intent of the Parties to amend this Agreement.

18. **Severability**. To the extent that any portion of this Agreement is held unenforceable by a court, tribunal or arbiter of competent jurisdiction, the remainder of this Agreement shall remain binding and enforceable, provided that the primary purposes of the Agreement are not frustrated.

19. **No Admission**. Signing this Agreement or complying with its terms does not constitute an admission on behalf of any Party.

20. **Counterparts**. This Agreement may be executed by the Parties hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the

terms of this Agreement, will be deemed an original, with all such counterparts taken together constituting one and the same instrument. Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date and year first above written.

**BSD MEDICAL CORPORATION**
**fka PERSEON CORPORATION**


By: _____
Its: _____


**B.E. CAPITAL MANAGEMENT FUND LP**


*Thomas Braziel*
By: ___Thomas Braziel_____
Its: ___Mananging Partner, B.E. Capital Management Fund LP___


**CLINTON E. CARNELL JR.**


_____

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date and year first above written.

**BSD MEDICAL CORPORATION
fka PERSEON CORPORATION**

By: _____

Its: _____

**B.E. CAPITAL MANAGEMENT FUND LP**

By: _____

Its: _____

**CLINTON E. CARNELL JR.**

_____

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date and year first above written.

**BSD MEDICAL CORPORATION**
**fka PERSEON CORPORATION**

By: _____
Its: _____

**B.E. CAPITAL MANAGEMENT FUND LP**

By: _____
Its: _____

**CLINTON E. CARNELL JR.**

_____